# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| JOAN BURKE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00335<br>Judge Rebecca Goodgame Ebinger<br>Magistrate Judge Stephen B. Jackson, Jr.<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT MEREDITH CORPORATION'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**Oral Argument Requested** |
| ADELE HETZEL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00341 |
| MARIBEL RAMIREZ, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00344 |
| BELINDA POWERS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00350 |

SHARON MCKINNEY, individually
and on behalf of all others similarly
situated,

                  *Plaintiff,*

     v.

MEREDITH CORPORATION,

                  *Defendant.*

Case No. 4:21-cv-00360

---

CANDYCE MARTO-MAEDEL,
individually and on behalf of all others
similarly situated,

                  *Plaintiff,*

     v.

MEREDITH CORPORATION,

                  *Defendant.*

Case No. 4:21-cv-00366

---

NORMA GOLDBERGER, individually
and on behalf of all others similarly
situated,

                  *Plaintiff,*

     v.

MEREDITH CORPORATION,

                  *Defendant.*

Case No. 4:21-cv-00367

---

JULIE BEACH, individually and on behalf
of all others similarly situated,

                  *Plaintiff,*

     v.

MEREDITH CORPORATION,

                  *Defendant.*

Case No. 4:21-cv-00376

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

LEGAL STANDARD............................................................................................ 5

I.     DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER
JURISDICTION ............................................................................................ 5

II.    DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ............. 5

ARGUMENT ........................................................................................................ 6

I.     PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEY DO NOT
ALLEGE A CONCRETE INJURY.................................................................. 6

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE RIGHT-OF-
PUBLICITY LAWS ...................................................................................... 9

     A.    Right-of-Publicity Laws Protect Property Rights in Limited Commercial
Contexts, Not the Mere Use of a Name ................................................ 10

     B.    The Private Sale of Mailing Lists Does Not Violate the ROP Laws .................. 15

     C.    Meredith Did Not Publicly Use Plaintiffs' Names ............................... 20

     D.    Plaintiffs Have Not Alleged an Injury Within the "Zone of Interests" of
the ROP Laws and Therefore Lack Statutory Standing....................... 24

     E.    Any Alleged Use of Plaintiffs' Names Is a Non-Actionable Incidental Use....... 29

III.    THE FIRST AMENDMENT BARS PLAINTIFFS' PROPOSED APPLICATION
OF THE ROP LAWS.................................................................................... 33

CONCLUSION.................................................................................................... 36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul-Jabbar v. Gen. Motors Corp.*,
    85 F.3d 407 (9th Cir. 1996) ........................................................................18, 26

*Aligo v. Time-Life Books, Inc.*,
    No. C 94-20707 JW, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994)............................30, 31, 32

*Amalgamated Transit Union, AFL-CIO, Loc. 697 v. Toledo Area Reg'l Transit*
    *Auth.*, 164 N.E.3d 569 (Ohio Ct. App. 2020) ............................................................21

*Aronson v. Dog Eat Dog Films, Inc.*,
    738 F. Supp. 2d 1104 (W.D. Wash. 2010)..................................................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................5, 6, 14

*Asoc. Medica de P.R. v. Cruz Azul*,
    18 P.R. Offic. Trans. 772 (P.R. 1987)........................................................................21

*Ayala Otero v. Rivera Nevis*,
    2016 WL 5369286 (P.R. Ct. App. 2016) ....................................................................20

*Balsley v. LFP, Inc.*,
    No. 1:08 CV 491, 2010 WL 11561844 (N.D. Ohio Jan. 26, 2010)....................................30, 31

*Bank of Am. Corp. v. City of Miami, Fla.*,
    137 S. Ct. 1296 (2017)................................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................5, 14

*Berry v. National Broadcasting Co., Inc.*,
    480 F.2d 428 (8th Cir. 1973) ............................................................................27

*Bravado Int'l Grp. Merch. Servs., Inc. v. Gearlaunch, Inc.*,
    CV 16-8657-MWF(CWX), 2018 WL 6017035 (C.D. Cal. Feb. 9, 2018)..............................14

*Brooks v. Thomson Reuters Corp.*,
    No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ................................ *passim*

*C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*,
    505 F.3d 818 (8th Cir. 2007) ........................................................................33, 34, 35

*Callahan v. Ancestry.com, Inc.*,
    No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ................................7, 8

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Callahan v. Ancestry.com Inc.*,
   No. 20-CV-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .......................................7

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
   95 F.3d 959 (10th Cir. 1996) ................................................................................33, 34

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
   447 U.S. 557 (1980)..........................................................................................................33

*Clapper v. Amnesty Int'l, USA*,
   568 U.S. 398 (2013)......................................................................................................5, 9

*Clark v. Martinez*,
   543 U.S. 371 (2005)..........................................................................................................36

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) .........................................................................26

*Cohen v. Facebook, Inc.*,
   No. C 10-5282 RS, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011)................................7, 9

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   21 P.3d 797 (Cal. 2001) ........................................................................................12, 25, 33

*Dex Media West, Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ...........................................................................................35

*Dobrowolski v. Intelius, Inc.*,
   No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)...........................15, 16, 19, 20

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ...........................................................................................18

*Dwyer v. American Express Co.*,
   652 N.E.2d 1351 (Ill. App. Ct. 1995) ....................................................................19, 29, 33

*Eastwood v. Superior Court*,
   198 Cal. Rptr. 342 (Cal. Ct. App. 1983)..........................................................................18

*Espinosa v. Whitepage, Inc.*,
   2015 WL 5813873 (E.D. Cal. 2015).................................................................................20

*ETW Corp. v. Jireh Pub., Inc.*,
   332 F.3d 915 (6th Cir. 2003) .....................................................................................13, 33

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767,
 781 (N.D. Cal. 2019) ..........................................................................................23, 28

*Fraley v. Facebook*,
 830 F. Supp. 2d 785 (N.D. Cal. 2011) .........................................................................8

*Haelan Labs., Inc., v. Topps Chewing Gum, Inc.*,
 202 F.2d 866 (2d Cir. 1953)........................................................................................11

*Hamilton v. Palm*,
 621 F.3d 816 (8th Cir. 2010) ........................................................................................6

*Hart v. Elec. Arts, Inc.*,
 717 F.3d 141 (3d Cir. 2013)...........................................................................11, 13, 33

*Harvey v. Sys. Effect, LLC*,
 154 N.E.3d 293 (Ohio Ct. App. 2020).................................................................27, 31

*Hillstrand v. Catch Planet, LLC*,
 2013 WL 12114785 (W.D. Wash. 2013) ...................................................................20

*Hilton v. Hallmark Cards*,
 599 F.3d 894 (9th Cir. 2010) ...........................................................................13, 18, 33

*Hooker v. Columbia Pictures Indus., Inc.*,
 551 F. Supp. 1060 (N.D. Ill. 1982) ...........................................................................26

*Huston v. Hearst Commc'ns, Inc.*,
 No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb 7, 2022) .........................2, 15, 16

*J.R. v. Walgreens Boots Alliance, Inc.*,
 470 F. Supp. 3d 534 (D.S.C. 2020)......................................................................21, 23

*Kelley v. Iowa State Univ. of Sci. & Tech.*,
 311 F. Supp. 3d 1051 (S.D. Iowa 2018) ...................................................................24

*Knapke v. PeopleConnect Inc.*,
 C21-262 MJP, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021).............................23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014)................................................................................................24, 25

*Luis Bonilla Medina v. New Progressive Party*,
 140 D.P.R. 294, 302–04 (P.R. 1996) ........................................................................31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Maremont v. Susan Fredman Design Grp., Ltd.*,
   No. 10 C 7811, 2011 WL 6101949 (N.D. Ill. Dec. 7, 2011) ..................................................26

*Mayor of Baltimore v. Actelion Pharm. Ltd.*,
   995 F.3d 123 (4th Cir. 2021) ......................................................................................24

*McDonough v. Anoka County*,
   799 F.3d 931 (8th Cir. 2015) .......................................................................................5

*MetLife Investors USA Ins. Co. v. Zeidman*,
   734 F. Supp. 2d 304 (E.D.N.Y. 2010), *aff'd sub nom. MetLife Investors USA
   Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011)...................................................23

*Metz v. Titanium Metals Corp.*,
   2011 WL 13186529 (S.D. Ohio 2011).......................................................................20

*Michaels v. Internet Entm't Grp.*,
   5 F. Supp. 2d 823 (C.D. Cal. 1998) ..........................................................................12

*Miller v. Collectors Universe, Inc.*,
   159 Cal. App. 4th 988 (2008) ....................................................................................26

*Missouri Broadcasters Ass'n v. Schmitt*,
   946 F.3d 453 (8th Cir. 2020) .....................................................................................35

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   724 F.3d 1268 (9th Cir. 2013) ...................................................................................33

*Nelson v. Harrah's Entm't Inc.*,
   No. 07 C 7227, 2008 WL 2444675 (N.D. Ill. June 13, 2008) ...................................25

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) .....................................................................................18

*Pavesich v. New England Life Ins. Co.*,
   50 S.E. 68 (Ga. 1905)................................................................................................10

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal 2014) .........................................................................8

*Preston v. Martin Bregman Prods., Inc.*,
   765 F. Supp. 116 (S.D.N.Y. 1991)............................................................................31

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015)...................................................................................................33

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Roberson v. Rochester Folding Box Co.*,
    64 N.E. 442 (N.Y. 1902) ........................................................................................................10

*Robertson v. Rodriguez*,
    36 Cal. App. 4th 347 (1995) ...............................................................................................21

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ...............................................................................................33

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ............................................................................................................35

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) .......................................................................................33, 35

*Shibley v. Time, Inc.*,
    341 N.E.2d 337 (Ohio Ct. App. 1975) .........................................................................11, 18

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) .............................................................................................18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................................5, 6, 8

*State v. French*,
    509 N.W.2d 693 (S.D. 1993) ..............................................................................................21

*State v. Villanueva*,
    177 Wash. App. 251 (Wash. Ct. App. 2013) ......................................................................21

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967) ............................................................................................................10

*Tovar v. Essentia Health*,
    857 F.3d 771 (8th Cir. 2017) ..............................................................................................24

*In re Trans Union Corp. Privacy Litig.*,
    326 F. Supp. 2d 893 (N.D. Ill. 2004) .....................................................................28, 29, 32

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................................. *passim*

*U.S. News & World Report, Inc. v. Avrahami*,
    95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996) ...................................... *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United Labs., Inc. v. Savaiano*,
   No. 06 C 1442, 2007 WL 4557095 (N.D. Ill. Dec. 21, 2007) ..................................................22

*United States v. Katz*,
   271 U.S. 354 (1926). Case ...................................................................................................21

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976)............................................................................................................35

*Verde v. Confi-Chek, Inc.*,
   No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021)............................................8, 9

*Vinci v. Am. Can Co.*,
   591 N.E.2d 793 (Ohio Ct. App. 1990).............................................................................30, 32

*Vrdolyak v. Avvo, Inc.*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................................................34

*Wendt v. Host Int'l, Inc.*,
   125 F.3d 806 (9th Cir. 1997) ................................................................................................18

*White v. Samsung Elecs. Am., Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ..............................................................................................18

*Zacchini v. Scripps-Howard Broad. Co.*,
   433 U.S. 562 (1977)................................................................................12, 25, 33, 34

**Statutes**

32 L.P.R.A. § 3153 ....................................................................................................................13

Cal. Civ. Code
   § 3344.................................................................................................................. *passim*
   § 3344(a)...........................................................................................................13, 36
   § 3344.1(b)........................................................................................................14, 25

N.Y. Civ. Rights Law
   § 50...........................................................................................................................11
   § 51...........................................................................................................................10

# TABLE OF AUTHORITIES
(continued)

Page(s)

Ohio Rev. Code Ann.
    § 2741 ...............................................................................................................20
    §2741.01 & 2741.02 .........................................................................................13
    §§ 2741.01, 2741.04........................................................................................14
    §§ 2741.01(D) & 2741.04 ................................................................................25
    §§ 2741.02.........................................................................................................33
    § 2741.07(a) ......................................................................................................13
    § 2741.07(D)(1) ................................................................................................36

P.R. Laws Ann. Title 32
    §§ 3151(g), 3157(d) ...................................................................................30, 32
    § 3154.....................................................................................................14, 25, 27

S.D. Codified Laws
    §§ 21-64-1 & 21-64-4 ...............................................................................15, 25
    § 21-64-5 (2) ....................................................................................................13

South Dakota Codified Laws §§ 21-64-1 & 21-64-2 ....................................................14

Wash. Rev. Code
    § 63.60.010................................................................................................14, 25, 27
    § 63.60.050................................................................................................14, 20
    § 63.60.060................................................................................................13, 36
    § 63.60.070(3)...................................................................................................14

## Other Authorities

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §
    28:7.50 (4th ed. 2014).......................................................................................29

William Prosser, Law of Torts § 117 (4th ed. 1971) ....................................................19

*Publicity,* WEBSTER'S DICTIONARY
    https://www.merriam-webster.com/dictionary/public (last visited Mar. 28,
    2022) .................................................................................................................22

*Publish*, WEBSTER'S DICTIONARY, https://www.merriam-
    webster.com/dictionary/publish (last visited Mar. 28, 2022) .................................22

Restatement (Second) of Torts.............................................................11, 12, 22, 27, 29

Restatement (Third) of Unfair Competition ..................................................................12

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Defendant Meredith Corporation ("Meredith") respectfully submits this memorandum of law in

support of its motion to dismiss with prejudice Plaintiffs' amended consolidated complaint (the

"Complaint" or "Compl.," ECF No. 19) for lack of standing and failure to state a claim.[1]

## INTRODUCTION

Eight plaintiffs seek to break new ground by suing Meredith for millions of dollars under

five similar right-of-publicity statutes ("ROP Laws") for engaging in the age-old direct mail

industry practice of *privately* selling subscriber lists to contractual counterparties. There are at

least two fatal flaws in Plaintiffs' novel theory. First, the ROP Laws all require the

nonconsensual *public* appropriation of a person's identity, and here there is no dispute that any

subscriber list sales are private. Indeed, Plaintiffs do not claim Meredith shared their names with

anyone. Second, the ROP laws require the appropriation of a person's identity to sell or advertise

a *separate* product or service, such as putting an athlete's face on a cereal box without

permission. Here, Plaintiffs do not and cannot allege that Meredith publicly used their identities

to sell or advertise anything, let alone a product or service separate from the person's identity.

Plaintiffs seek to expand the ROP Laws to cover conduct they were never intended to prohibit:

the private exchange of truthful information in subscriber lists. Unsurprisingly, there is not a

single case where a court has permitted such a claim to proceed.

Every court to consider whether the private sale of mailing lists violates right-of-publicity

laws has held it does not. Just recently, a district court dismissed a nearly identical right-of-

---

[1] As explained in Meredith's Corporate Disclosure Statement, ECF No. 9, in December 2021, the assets of Meredith Corporation relevant to this litigation were transferred to Meredith Operations Corporation, a wholly owned subsidiary of Meredith Holdings Corporation. Dotdash Media, Inc., a wholly owned subsidiary of IAC/InterActiveCorp, then acquired Meredith Holdings Corporation. Meredith now does business as "Dotdash Meredith."

publicity claim involving mailing lists because the subscriber's identity was not used to promote or advertise another product, i.e., it was not used for a "commercial purpose," as required under the Illinois right-of-publicity law. *See Huston v. Hearst Commc'ns, Inc.,* No. 21-cv-1196, 2022 WL 385176, at *3 (C.D. Ill. Feb 7, 2022). Each of the ROP Laws involved in this action has the same core "commercial purpose" requirement as the statute in *Huston*, and the same result— dismissal—is mandated here.

The Court need not reach the merits of these claims, however, as Plaintiffs fail to allege a concrete injury and therefore lack Article III standing. Plaintiffs allege bare statutory violations of the ROP Laws, without more. This is not a concrete injury for purposes of Article III. Plaintiffs attempt to elude this requirement by urging the Court to indulge a series of speculative inferences to arrive at the mere possibility of a future, hypothetical injury, namely that: (1) Plaintiffs' names *might* be on subscriber mailing lists; (2) Meredith *might* sell the mailing lists to direct mail marketers; and (3) the direct mail marketers *might* then share the mailing lists with "malevolent actors with the tools needed to target particular members of society." (Compl. ¶¶ 1–5.)  Plaintiffs do not claim to have been targeted—whatever that means—by malevolent actors, and their conjectural allegations of possible future harm fall far short of a concrete injury.

Beyond the fatal standing defect, Plaintiffs fail to state a claim under the ROP Laws, all of which have the same core requirements: (1) the nonconsensual use of a person's identity for a "commercial purpose," i.e., to sell, market, or advertise a *separate* product, good, or service; (2) the nonconsensual use must be public; and (3) it must deprive the person of a property interest in the value of his or her identity. Plaintiffs do not allege that Meredith used their names to sell a separate product, that Meredith publicly used their names, or that Meredith somehow deprived Plaintiffs of the value of their names. Nor do Plaintiffs claim to have suffered any

injury that the ROP Laws were intended to remediate, and thus they lack statutory standing as well.

In short, Plaintiffs' novel claims are far wide of the mark.  Their overreaching interpretation of the ROP Laws would effectively bar the distribution of truthful subscriber information—akin to the lists found in telephone books, professional directories, and other informational compilations—without first obtaining the consent of every person whose name is included therein. Any such interpretation would convert the otherwise salutary ROP Laws into unconstitutional restrictions on speech protected by the First Amendment.

For all o these reasons, the Court should dismiss the complaint with prejudice.

## BACKGROUND

Meredith is a media company based in Iowa that, among other things, publishes print magazines focused on entertainment, food, lifestyle, parenting, and home. (Compl. ¶ 1.) Plaintiffs are residents of California, Ohio, Puerto Rico, South Dakota, and Washington who allegedly subscribed to the following Meredith magazines at some unspecified "time period relevant to this action" (Compl. ¶¶ 26–33):

| Name | Magazine(s) | State of Residence |
|---|---|---|
| Joan Burke | *Better Homes & Gardens ("BHG"), Southern Living* | California |
| Sharon McKinney | *BHG* | California |
| Candyce Marto-Maedel | *BHG, Entertainment Weekly, InStyle* | California |
| Adele Hetzel | *BHG* | Ohio |
| Norma Goldberger | *BHG* | Ohio |
| Maribel Ramirez | *Allrecipes, Real Simple* | Puerto Rico |

| Belinda Powers | *BHG* | South Dakota |
| Julie Beach | *People* | Washington |

Plaintiffs allege that Meredith violated ROP Laws in each of these jurisdictions by:
(1) tracking its subscribers' names, addresses, and subscription history in a "vast digital
database" (Compl. ¶ 40); (2) disclosing this information to "data aggregators and appenders,"
which then provide to Meredith unspecified "supplemental information"[2] about the subscribers
(*id.* at ¶¶ 3, 41); and (3) selling the resulting subscriber lists (which Plaintiffs term "Data
Brokerage Products") to unnamed direct mail marketers (described as "Data Brokerage Clients")
(*id.* at ¶¶ 2, 42).  Plaintiffs speculate that, because they subscribed to Meredith magazines, their
names and addresses might have been sold to such marketers without their consent. (*Id.* at ¶¶ 62–
129.)  Plaintiffs further hypothesize that their names and addresses could wind up in the hands of
"malevolent actors with the tools needed to target particular members of society." (*Id.* at ¶ 5.)

Plaintiffs do not allege that their own names or addresses were actually sold to anyone. In
fact, Plaintiffs aver that "customers remain unaware that their identities are being trafficked in
the open market in this way." (Compl. ¶ 47.)  Similarly, Plaintiffs do not allege that any specific
entity purchased subscriber lists containing *Plaintiffs' names*. Nor do Plaintiffs allege to have
seen their own names (or the name of any other Meredith subscriber) on any subscriber list,
despite alleging that such lists are "offered for sale in, and . . . ultimately sold and entered into
commerce throughout . . . the United States." (Compl. ¶ 43.)  Plaintiffs claim to have been
injured solely from alleged statutory "violations of their rights of publicity that they suffered as a

---

[2] With zero factual support, Plaintiffs speculate that the "supplemental information" may include
gender, ethnicity, religion, age, income, political party, and charitable donation history. (Compl.
¶¶ 3, 67, 96, 112.)

result of Defendant's nonconsensual use of their names and likenesses," for which they seek statutory damages. (*Id.* at ¶¶ 73–74, 86–87, 103–104, 119, 129.)

## LEGAL STANDARD

### I.   DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION

Article III requires a plaintiff to have suffered "an injury [that is] concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013) (citation and quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). A "concrete" injury "must actually exist" and be "'real' and not 'abstract.'" *Id.* A future, "threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury' are not sufficient" to confer standing. *Clapper*, 568 U.S. at 409 (citation omitted) (emphases in original).  Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citations omitted).

### II.   DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) requires that a complaint set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). *"*Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). When stripped of "conclusory statement[s]," a complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must raise the right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945–46 (8th Cir. 2015) (same). A complaint that "pleads 'labels and conclusions,' or a 'formulaic

recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancements will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677–79).

## ARGUMENT

## I. PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEY DO NOT ALLEGE A CONCRETE INJURY

"No concrete harm, no standing." *TransUnion*, 141 S. Ct. at 2201–02. That is how the Supreme Court recently summarized its injury-in-fact jurisprudence. Plaintiffs' allegations fail this requirement because the only "harms" they allege are bare violations of the ROP Laws themselves, which, without more, are insufficient to constitute Article III injury as a matter of law. Searching for more, Plaintiffs stack a pile of unsupported inferences like a house of cards and ask the Court to arrive at the wholly speculative conclusion that Plaintiffs *may* in the future be harmed *if* their subscriber information falls into the wrong hands. This is exactly the sort of speculative future harm rejected by *TransUnion.*

As for Plaintiffs' first theory of harm—bare statutory violation—the Supreme Court has repeatedly rejected the idea that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right to sue and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. That is because "under Article III, an injury in law is not an injury in fact[,]" and "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over the violation in federal court." *TransUnion*, 141 S. Ct. at 2205 (emphasis in original).

In *TransUnion*, plaintiffs alleged that TransUnion's internal credit database incorrectly indicated that certain class members were on an OFAC list of persons deemed threats to national security, an error that violated the Fair Credit Reporting Act and almost certainly would have

6

jeopardized their ability to obtain credit. *Id.* at 2201–02. TransUnion had not disclosed these erroneous credit reports to any potential creditors. *Id.* at 2209. The Court held that the alleged injury was insufficiently concrete because "[t]he mere presence of an inaccuracy in [a] credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2209–10. Comparing the inaccurate reports to a letter stored in a desk drawer, the Court explained: "[a] letter that is not sent does not harm anyone, no matter how insulting the letter is." *Id.* at 2210.

The same reasoning applies with equal force here, where Plaintiffs "remain unaware that their identities are being trafficked in the open market . . . ." (Compl. ¶ 47.) Indeed, Plaintiffs do not claim that they ever saw their names on a Meredith subscriber list, that their identities were ever publicized (as required to come within the scope of the ROP Laws), or that a list containing their names was ever sold to a particular third party. (Compl. ¶¶ 38–49.) Here, as in *TransUnion*, the subscriber lists—which may not even contain Plaintiffs' names—are functionally in a desk drawer. *See TransUnion*, 141 S. Ct. at 2210.

Numerous courts have dismissed statutory right-of-publicity claims for lack of concrete injury where, as here, plaintiffs alleged only a bare statutory violation. In *Callahan v. Ancestry.com, Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *1 (N.D. Cal. Jun. 15, 2021), the plaintiffs alleged that Ancestry had violated California's right-of-publicity law, Cal. Civ. Code § 3344—one of the ROP Laws at issue here—by including plaintiffs' names, yearbook photographs, and other biographical information in promotional emails to solicit paying subscribers. *Id.*[3] The court dismissed the case for lack of standing, holding that using plaintiffs' public information to solicit customers, "standing alone, does not establish injury, even though

---

[3] An earlier decision in the case, *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021), details the type of information at issue.

Ancestry profits from the use. There *needs to be more than the statutory injury*." *Id.* at *3 (emphasis added).

In rejecting the plaintiffs' argument that an alleged § 3344 violation could be sufficient for Article III standing, the court analyzed, consistent with *Spokeo* and *TransUnion* (which was decided 10 days after *Callahan*), whether § 3344 protects "fundamental" privacy rights, such that a statutory violation alone could establish standing, even absent additional injury. *Id.* at *4. The court distinguished § 3344 from statutes that protect fundamental, Fourth Amendment-like interests—including the California Invasion of Privacy Act, the Wiretap Act, and the Stored Communications Act, all of which guard the right to be free from unreasonable government intrusion—and held that "the rights protected by [§ 3344] are not analogous to the fundamental and historical privacy rights . . . ." *Id.* The same analysis holds true in this case, which involves ROP Laws that plainly do not implicate fundamental, Fourth Amendment-like interests.[4]

Likewise, the court in *Verde v. Confi-Chek, Inc.,* No. 21 C 50092, 2021 WL 4264674, at *2 (N.D. Ill. Sept. 20, 2021), recently dismissed the plaintiff's claims under the Illinois Right of Publicity Act ("IRPA")—which is substantially similar to the ROP Laws here—for failure to plead a concrete injury. In *Verde*, the plaintiff alleged that the owner of the website peoplefinders.com had violated the IRPA by displaying a free "preview page" containing the plaintiff's name and other biographical information, along with a link through which a more

---

[4] The pre-*Spokeo* decisions *Fraley v. Facebook*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), and *Perkins v. LinkedIn Corp*., 53 F. Supp. 3d 1190 (N.D. Cal. 2014), do not establish that an alleged violation of § 3344, by itself, satisfies Article III's injury-in-fact requirement. Both cases are readily distinguishable on the Article III issue, as the plaintiffs alleged the use of their names or likenesses to endorse separate products or services, a quintessential common-law right-of-publicity injury not at issue here. *See Perkins*, 53 F. Supp. 3d at 1211; *Fraley*, 830 F. Supp. 2d at 790, 797. Further, both cases were decided before *Spokeo* established the more stringent injury-in-fact requirements in cases where, as here, a plaintiff alleges a bare statutory violation—thus calling into question whether they remain good law. *See* 578 U.S. at 341.

detailed background report could be purchased. *Id.* at *1, *3. Noting that the plaintiff did not

"allege that any third party ever searched her name or viewed her 'free preview,'" i.e., there was

no pleaded "injury" separate from the mere statutory violation, the court dismissed the case for

lack of standing. *Id.* at *5.

Plaintiffs' fallback theory of injury—risk of future harm—is equally defective. The

Supreme Court has held time and again that speculative allegations of future harm are

insufficient to establish concrete injury. *See, e.g., Clapper,* 568 U.S. at 411 (plaintiffs lacked

standing where they "merely speculate and make assumptions about whether their

communications with their foreign contacts will be acquired"); *TransUnion,* 141 S. Ct. at 2211

("[I]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a

concrete harm.").

Here, Plaintiffs ask the Court to speculate that: (1) their names and addresses *may* appear

on Meredith's subscriber mailing lists; (2) these lists *could* be sold to direct mail marketers;

(3) the direct mail marketers *might* provide Plaintiffs' subscriber information to "malevolent

actors with the tools needed to target particular members of society"; and (4) those "malevolent

actors" *might* then engage in some form of unspecified "target[ing]" against Plaintiffs. (Compl.

¶¶ 1–5.)  This "highly attenuated chain of possibilities," *Clapper*, 568 U.S. at 410, is far too

conjectural and hypothetical to confer Article III standing.

For these reasons, the Court should dismiss the Complaint for lack of standing.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE RIGHT-OF-PUBLICITY LAWS

All five of the ROP Laws at issue contain the same core requirements, which Plaintiffs

fail to meet. **First**, the plaintiff's identity must be used without consent for a *commercial*

*purpose*, i.e., to sell, advertise, or solicit the purchase of a product that is separate from the

identity itself. **Second**, there must be a *public* use of the plaintiff's unique identity. **Third**, the

nonconsensual commercial use must *deprive* the plaintiff of a *property right* in the *value of her identity*. Plaintiffs' allegations must satisfy each one of these requirements to avoid dismissal. The allegations here fail to satisfy any of them. Accordingly, the Complaint must be dismissed for failure to state a claim.

### A.   Right-of-Publicity Laws Protect Property Rights in Limited Commercial Contexts, Not the Mere Use of a Name

The concept of a "right of publicity" is of relatively recent origin in American jurisprudence. The phrase "right of publicity" first appeared in *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905). In that case, the plaintiff sued a life insurance company and others for publishing his photo without his consent in an advertisement for life insurance. *Id.* at 68. The Georgia Supreme Court surveyed the law at the time, including *Roberson v. Rochester Folding Box Co.*, 64 N.E. 442 (N.Y. 1902), where the New York Court of Appeals had held that a woman whose likeness was used to advertise flour without her consent had no remedy in law or equity because there was no property right in the use of one's image, absent libel. *Pavesich*, 50 S.E. at 77. Acutely aware of the controversy created by the *Roberson* decision, *Pavesich* adopted the *Roberson* dissent's view and held:

> [T]he law recognizes, within proper limits, as a legal right, the right of privacy, and the publication of one's picture without his consent as an advertisement, for the mere purpose of increasing the profits and gain to the advertiser, is an invasion of this right.

*Id.* at 80–81.[5]

---

[5] New York's legislature swiftly reacted to *Roberson* by passing the first statutory right-of-publicity law in 1903, N.Y. Civ. Rights Law §§ 50–51, which is still in effect. *See Time, Inc. v. Hill*, 385 U.S. 374, 380 (1967). Though titled "right of privacy," the term "privacy" appears nowhere in the statute's text, which "appears to proscribe only the conduct . . . involved in *Roberson*, that is, the appropriation and use in advertising or to promote the sale of goods, of another's name, portrait or picture without his consent." *Id.* at 381. The law provides: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name,

The right of privacy was limited, however; it was not an assignable property right, and it did not provide a basis to control the sale of one's name or likeness in the celebrity context. *Hart v. Elec. Arts, Inc.,* 717 F.3d 141, 150 (3d Cir. 2013). The first case to formally distinguish the right of publicity from the right of privacy, *Haelan Labs.*, *Inc., v. Topps Chewing Gum, Inc.*, involved the right to use a famous baseball player's photograph to sell gum. 202 F.2d 866, 867 (2d Cir. 1953). The Second Circuit held that "independent of [the] right of privacy," an individual has "the right to grant the exclusive privilege of *publishing* his picture." *Id.* at 868 (emphasis added). And, unlike the purely "personal" right to privacy that protects a plaintiff's "feelings," the right of publicity protects the "publicity *value* of [plaintiff's] photograph." *Id.* (emphasis added). In other words, the right to publicity, as distinguished from a right of privacy, is a property right that is protected in narrow commercial contexts.

The independent right of publicity was explicitly recognized in William Prosser's treatise defining the four privacy torts, with the right of publicity defined as the "appropriation or exploitation of one's personality," and as "refer[ring] to those situations where the plaintiff's name or likeness is displayed to the public to indicate that the plaintiff endorses the defendant's product or business." *Shibley v. Time, Inc.*, 341 N.E.2d 337, 339 (Ohio Ct. App. 1975) (citing W. Prosser, Law of Torts § 117 (4th ed. 1971) and dismissing plaintiff's claim that selling subscription lists to direct mail advertisers was an invasion of privacy). *See also* Restatement (Second) of Torts § 652C cmt. d (Am. Law Inst. 1977) ("It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated

---

portrait or picture of any living person without having first the written consent of such person . . . is guilty of a misdemeanor." N.Y. Civ. Rights Law § 50.

with the name or the likeness that the right of privacy is invaded.").[6] *Zacchini v. Scripps-Howard Broad. Co.*, one of the few Supreme Court cases on the right of publicity, grounded the rationale for protecting this right in "provid[ing] an economic incentive for [the holder] to make the investment required to produce a performance of interest to the public." 433 U.S. 562, 576 (1977).

Because the underlying purpose of the right of publicity is to protect a valuable *property right* from misappropriation, the most typical cases involve "the appropriation of a celebrity likeness [to] create[] a false and misleading impression that the celebrity is endorsing a product." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 802 (Cal. 2001) (collecting cases). These cases recognize that "a celebrity's property interest in his name and likeness is unique," *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823, 837 (C.D. Cal. 1998), as celebrities "have invested years of effort in establishing their public personae, and their ability to exploit their investments will be irreparably harmed by exploitation of their names and likeness in connection with marketing of" products they did not endorse. *Id.* at 838 (enjoining adult entertainment company from using celebrity-plaintiffs' names or likenesses to sell a sex tape depicting them).

While today's right-of-publicity laws are not confined to public figures, the right remains "in the nature of a property right" to exploit one's unique identity in narrow commercial contexts. Restatement (Third) of Unfair Competition § 46 cmt. g (1995) ("The interest in the commercial value of a person's identity is in the nature of a property right," and "an assignment

---

[6] Courts relied on the Restatement (Second) of Torts § 652C in initially recognizing the right of publicity. However, in 1995, in recognition of the right's primary focus on the value of one's ability to market one's persona for commercial purposes, the American Law Institute relocated the right of publicity to Chapter 4 of the Restatement (Third) of Unfair Competition. Restatement (Third) of Unfair Competition § 46 (Am. Law Inst. 1995).

of the right of publicity transfers only the right to exploit the commercial value of the assignor's identity[.]"). The purpose of the right to publicity "is to protect the property interest that an individual gains and enjoys in his identity through his labor and effort," and "as with protections for intellectual property, [it] is designed to encourage further development of this property interest." *Hart*, 717 F.3d at 151.[7]

All the ROP Laws at issue here contain these three core components: (1) an infringing (i.e., nonconsensual) use of a property right in a unique identity for the nonconsensual "commercial purpose" of selling, advertising, or promoting a separate product; (2) that is public; and (3) that deprives a person of her property right in the value of her unique identity.

The statutes Plaintiffs invoke provide, in relevant part:

- **California Civ. Code § 3344**: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable . . . . "

- **Ohio Rev. Code. Ann. §§ 2741.01 & 2741.02**: "[A] person shall not use any aspect of an individual's persona for a commercial purpose . . ."; "'Persona' means an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value"; "'Commercial purpose' means the use of or reference to an individual's persona . . .": "(1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities . . .; (2) For advertising or soliciting [a]

---

[7] Courts in the relevant jurisdictions for the ROP Laws have looked to the law of intellectual property to delineate the rights protected by the right of publicity. *See, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 909 (9th Cir. 2010) (applying copyright's transformative use test to balance the First Amendment against the California common-law right of publicity); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 938 (6th Cir. 2003) (applying the same test to the Ohio common-law right of publicity). Similarly, the principles that justify awarding a plaintiff the profits from a defendant's infringing use in copyright and trademark law are analogous to the theory that grants plaintiffs the right to recover profits from an infringer in right-of-publicity cases. *See* 2 J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 11:34 (2d ed. 2021); *see also* Cal. Civ. Code § 3344(a); Ohio. Rev. Code Ann. § 2741.07(a); S.D. Codified Laws § 21-64-5 (2); Wash. Rev. Code § 63.60.060(2); P.R. Laws Ann. tit. 32, § 3153.

purchase . . .; (3) For the purpose of promoting travel to a place; (4) For the purpose of fundraising."

- **Puerto Rico Laws Ann. tit. 32, §§ 3151 & 3152**: "Any . . . person who uses another's likeness for commercial, trade, or advertising purposes without . . . previous consent . . . shall be liable"; "Likeness" means the "[n]ame, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique"; "Commercial purpose" means "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market."

- **South Dakota Codified Laws §§ 21-64-1 & 21-64-2**: "No person may use any aspect of a personality's right of publicity for a commercial purpose . . . without [] express written consent"; "Personality" means a person "whose name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism identifies a specific person and has commercial value"; "'Commercial purpose' [means] the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity; for advertising or soliciting purchases of a product, merchandise, goods, service, or for promoting a commercial activity; or for the purpose of fund-raising."

- **Washington Rev. Code §§ 63.60.010 & 63.60.050**: "Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services" without consent "has infringed such right."[8]

All the ROP Laws describe the right of publicity—the right to protect one's unique

identity from being misappropriated in commercial contexts to advertise or sell products—as a

---

[8] The Washington Personality Rights Act ("WPRA") also requires that the goods, merchandise, or products on which the identity are used must have "entered into commerce in this state." Wash. Rev. Code § 63.60.050. Plaintiff Beach makes only a single-sentence, conclusory allegation that Meredith "ultimately sold and entered into commerce" its subscriber lists in the state of Washington. (Compl. ¶ 43.) The Complaint alleges that Meredith is headquartered in Iowa and maintains its principal place of business there but does not allege where any of the alleged mailing list purchasers are located. (Compl. ¶ 34.) There is therefore no basis to assert that the mailing lists entered into commerce in Washington, and Plaintiffs' "'naked assertion' devoid of 'further factual enhancement'" is insufficient to state a WPRA claim. *Bravado Int'l Grp. Merch. Servs., Inc. v. Gearlaunch, Inc.*, CV 16-8657-MWF(CWX), 2018 WL 6017035, at *2, *10 (C.D. Cal. Feb. 9, 2018) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555). Plaintiffs also may not pursue WPRA claims on a class-wide basis. Wash. Rev. Code § 63.60.070(3) (plaintiffs "shall not bring their cause of action as a class action").

property right. *See* Cal. Civ. Code § 3344.1(b) ("The rights recognized under this section are property rights, freely transferable or descendible . . ."); Ohio Rev. Code Ann. §§ 2741.01, 2741.04 (same); Wash. Rev. Code § 63.60.010 (same); P.R. Laws Ann. tit. 32, § 3154 (same); S.D. Codified Laws §§ 21-64-1 & 21-64-4 (same). Importantly, the scope of this property right is limited to the use of a person's identity for a covered commercial purpose: advertising, merchandising, marketing, endorsing, or promoting other products or services. None of the ROP Laws purports to grant an all-purpose right to prohibit any use of a name in all, or even most, circumstances; they prohibit only infringing commercial uses. As discussed below, each court that has considered whether the private sale of subscriber lists violates the right of publicity has held it does not. For this and other reasons, Plaintiffs' claims must be dismissed.

**B.      The Private Sale of Mailing Lists Does Not Violate the ROP Laws**

Despite its use of opaque labels like "Data Brokerage Products" and "Data Brokerage Clients," the Complaint merely alleges, in conclusory fashion, the private sale of subscriber mailing lists to direct mail marketers. This long-standing practice does not violate the ROP Laws, as multiple courts have held.

Just recently, Judge Mimh in the Central District of Illinois dismissed a nearly identical right-of-publicity claim brought by a subscriber (represented by some of the same plaintiffs' counsel here) against Hearst, a magazine publisher. *Huston*, 2022 WL 385176, at *1. The *Huston* plaintiff alleged that Hearst impermissibly used her identity for a "commercial purpose"[9] by selling mailing lists containing her name and address to unspecified direct mail marketers. *Id.* at *1–2. The court dismissed the complaint for failure to state a claim because even assuming that

---

[9] The IRPA defines "commercial purpose" as, *inter alia*, "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services . . . ." 765 ILCS 1075/5. As noted *supra* at pp. 12–14, the ROP Laws contain substantially the same "commercial purpose" requirement.

"Hearst made mailing lists of its subscribers available for others to purchase so they can send advertisements to the subscribers, this alone does not meet the 'commercial purpose[]' requirement under the IRPA." *Id.* at *5 (citing *Dobrowolski v. Intelius, Inc.,* No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale. And this is not a commercial purpose as defined by the statute.")). The *Huston* court noted that the "purchase of mailing lists of subscribers has been a standard practice in the direct mail industry," and the plaintiff "failed to cite any case law to support [an] interpretation of the IRPA" that would prohibit the sale of mailing lists without prior subscriber consent. *Id.* at *3 (citing *U.S. News & World Report, Inc. v. Avrahami*, 95-1318, 1996 WL 1065557, at *7 (Va. Cir. Ct. Jun. 13, 1996)). The same reasoning applies to each of the ROP Laws, which contain substantially the same definition of "commercial purpose."

In *Avrahami*, an analogous case cited in *Huston*, the court dismissed after trial a magazine subscriber's claim against U.S. News & World Report under Virginia's right-of-publicity statute, where the subscriber's name was on a larger mailing list that was "exchanged, rented, or sold" to specific direct mail marketers, including Smithsonian Magazine. *Avrahami,* 1996 WL 1065557, at *7. In delineating the limited scope of the right of publicity, the court held that the subscriber had "no property right in [his] name" for purposes of its inclusion on "mailing lists . . . comprised of individual names and addresses," even where the lists were sold to specific entities for direct marketing purposes. *Id.* at *6–7. The court explained that "the inclusion of a name as part of a larger mailing list for purposes of a direct mail solicitation *does not constitute use of that name in the promotion of an actual product or service itself*." *Id.* at 7 (emphasis added). Nor was the inclusion of the subscriber's name on a mailing list "a use for an advertising

16

purpose nor a use for the purpose of trade, as defined by the statute." *Id.*

The *Avrahami* court also held that the subscriber's name, of itself, lacked "any commercial value," *id.* at *6, because "[i]t is not possible to rent only one name on a mailing list," and the mailing lists at issue typically contained "at least 100,000 names and addresses." *Id.* at *2. Rather, "the value of a list comes not from the individual names contained on the list, but entirely from the list's association with a particular organization or group." *Id.* Thus, the court noted:

> [W]hen the . . . list was exchanged, neither U.S. News nor the Smithsonian knew the specific names contained on the magnetic computer strip, U.S. News did not identify any individual name that would be contained on the magnetic computer strip, and U.S. News did not promote or advertise its list as containing any particular name.

*Id.* at *4.

The same analysis holds true here. Plaintiffs do not claim that any of the unnamed direct mail marketers—or "Data Brokerage Clients," as Plaintiffs call them—seek subscriber lists from Meredith because the lists contain any particular names, much less their own. (Compl. ¶¶ 40–45.) Quite the opposite; the marketers allegedly seek the lists because of their association with *Meredith* and its "vast digital database." (*Id.* at ¶¶ 39, 42.) Nor is there any allegation that the direct mail marketers have any way of knowing what names are on the lists prior to receipt. And Plaintiffs do not claim that they have seen their own names in any "database" or on any mailing list maintained by Meredith. Here, as in *Avrahami*, there is no right-of-publicity violation because Plaintiffs' names are not used "in the promotion of an actual product or service itself." *Avrahami*, 1996 WL 1065557, at *7.

The Northern District of California reached the same result in *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), where the plaintiffs

alleged that Thompson Reuters had violated their rights of publicity under California Civil Code § 3344 by collecting their public and private information (including their "criminal history," "employment information," and live "location data") in dossiers and then selling the dossiers to customers. *Id.* at *2. Thompson Reuters argued that it did not "appropriate Plaintiffs' name, likeness, or personal information for a commercial advantage because it was not using that information 'for purposes of publicity.'" *Id.* at *3. Observing that "[v]irtually all right of publicity cases involve the use of a person's name or likeness to advertise a *separate product or service*," the court held that plaintiffs did not state a claim under § 3344 or the common law because the dossiers containing their information "were sent only to . . . subscribers who deliberately paid Thomson Reuters to receive information about them." *Id.* at *4–5 (emphasis added). [10] In other words, Thompson Reuters was "not using Plaintiffs' name or likeness 'for promotional purposes.'" *Id.* at *4.

Similarly, in *Shibley*, 341 N.E.2d at 338, the court affirmed the dismissal of the plaintiffs' Ohio common-law claims that magazine publishers had "appropriated or exploit[ed]" their "personalit[ies]" by renting and selling subscriber lists containing their names to direct mail

---

[10] As the *Brooks* court noted, "[v]irtually all right of publicity claims involve the use of a person's name or likeness to advertise a separate product or service." 2021 WL 3621837, at *4. *See, e.g., Hilton*, 599 F.3d at 899–900 (use of reality TV star's image and signature phrase on greeting cards); *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1081–82 (9th Cir. 2002) (use of famous actor's photograph on cover of adult magazine); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 999–1000 (9th Cir. 2001) (use of notable surfer's photograph from surfing competition on clothing catalogue); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 689 (9th Cir. 1998) (use of drawing depicting major league baseball pitcher on beer advertisement); *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 808 (9th Cir. 1997) (use of robots resembling famous actors from TV show *Cheers* to promote airport bars); *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (use of Hall of Fame basketball player's identity in car advertisement); *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992) (use of robot resembling nationally televised game-show host in electronics advertisement); *Eastwood v. Superior Court*, 198 Cal. Rptr. 342, 347 (Cal. Ct. App. 1983) (use of famous actor's name and photograph on magazine cover).

advertisers. Relying on Prosser, the court observed that the tort of "appropriation or exploitation of one's personality" "refers to those situations where the plaintiff's name or likeness is displayed to the public to indicate that the plaintiff indorses the defendant's product or business." *Id.* (citing Prosser, Law of Torts § 117 (4th ed. 1971)). The court held that the sale of subscriber mailing lists "does not fit into that classification," as there was no public display and no implied endorsement.

In yet another right-of-publicity case involving subscriber lists, *Dwyer v. American Express Co.*, the court affirmed the dismissal of an Illinois common-law right-of-publicity claim because there was no "appropriation . . . of one's name or likeness for another's use or benefit." 652 N.E.2d 1351, 1356 (Ill. App. Ct. 1995). There, as here, the plaintiffs alleged that the defendant had sold mailing lists containing their "personalities, including their names and perceived lifestyles." *Id.* And there, as here, the plaintiffs were not "deprive[d] . . . of any value their individual names may possess." *Id.* That is because "a single, random cardholder's name has little or no intrinsic value to defendants (or a merchant). Rather, an individual name has value only when it is associated with one of defendants' lists." *Id.*

All the above right-of-publicity mailing list cases have a common thread: the inclusion of a name in a mailing list does not implicate a "commercial purpose" because the names are not used to sell or endorse anything. And because the names are not used to sell anything, their value is not misappropriated. Plaintiffs' claims simply do not implicate the right of publicity and should be dismissed.

Plaintiffs do not even allege that their identities were used to sell or advertise a separate product or service. This alone is fatal to their claim because the case law demonstrates that the "separate product" requirement is integral to the "commercial purpose" limitation. As the *Brooks*

court held: "The use of a person's name and likeness to promote a product (other than which pertains to the person themselves) is the essence of an 'appropriation' of one's name or likeness." 2021 WL 3621837, at *5. *See also Dobrowolski*, 2018 WL 11185289, at *3 (an identity that is not used "to promote a separate product" but rather is itself "the product offered for sale" is "not [used for] a commercial purpose").

Here, all the ROP Laws require a commercial use such as advertising, selling a product or service, or promoting a commercial activity. *See Espinosa v. Whitepage, Inc.*, 2015 WL 5813873, at *3 (E.D. Cal. 2015) (dismissing plaintiff's claims under Cal. Civ. Code § 3344 because plaintiffs did not sufficiently allege a direct connection between the alleged use of plaintiff's identity and a commercial purpose); *Metz v. Titanium Metals Corp.*, 2011 WL 13186529, at *19 (S.D. Ohio 2011) (dismissing claim under Ohio Rev. Code § 2741 because plaintiff did not show how defendant used plaintiff's outgoing voicemail message "in connection with services for a commercial purpose"); *see also Hillstrand v. Catch Planet, LLC*, 2013 WL 12114785, at *2 (W.D. Wash. 2013) (denying motion to dismiss because plaintiffs properly alleged under Wash. Rev. Code § 63.60.050 that defendants were using their likenesses in advertising or fundraising); *Ayala Otero v. Rivera Nevis*, 2016 WL 5369286, at *20 (P.R. Ct. App. 2016) (Declaration of Joseph D. Mornin, Exh. B) ("It is also stated that the unauthorized use of a person's image for *commercial purposes* . . . gives rise to . . . the violation of the affected person's right to publicity.") (emphasis added).

Because Plaintiffs have not alleged the commercial use of their identities in connection with the advertising or sale of a separate product or service, their claims must be dismissed.

## C.    Meredith Did Not Publicly Use Plaintiffs' Names

Despite bringing right of *publicity* claims, Plaintiffs do not plausibly allege that Meredith *publicly* used their names. Instead, Plaintiffs merely claim that Meredith "*discloses* its magazine

subscribers' names and other identifying information" to "data aggregators," and then "licenses" mailing lists to unspecified "clients." (Compl. ¶¶ 5–6, 41–42 (emphasis added).) On its face, this does not describe a *public* use of plaintiffs' identities but, rather, a *private* use in a transaction between contractual counterparties, which falls entirely outside the ROP Laws.

In construing statutes, laws are to "be given sensible construction; and a literal application of a statute which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose." *United States v. Katz*, 271 U.S. 354, 357 (1926). Case law in the five jurisdictions at issue also instructs courts to interpret statutes to effectuate the legislature's intention and avoid absurd results.[11] It would produce an "absurd result" if, as Plaintiffs urge, claims brought under right of *publicity* statutes did not require any publicity, such as the public use of Plaintiffs' names. Plaintiffs' unsupported interpretation of the ROP Laws to dispense with any requirement of publicity ignores well-established doctrines of statutory analysis and contradicts the purpose of the statutes.

As one court recently explained, even where "publicity is not explicitly stated as an element *per se*, it is still a fundamental requirement of the cause of action of wrongful

---

[11] *See Amalgamated Transit Union, AFL-CIO, Loc. 697 v. Toledo Area Reg'l Transit Auth.*, 164 N.E.3d 569, 576 (Ohio Ct. App. 2020) ("We construe a statute to determine the legislative intent, looking to the language used and the purpose to be accomplished. . . . Interpretations that lead to absurd or obviously unintended results are not consistent with determining legislative intent.") (citations omitted); *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 361 (1995) ("The rules of statutory construction also require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences.") (citations omitted); *State v. Villanueva*, 177 Wash. App. 251, 256–57 (Wash. Ct. App. 2013) ("We construe a statute to effectuate its purpose while avoiding absurd, strained, or unlikely consequences."); *Asoc. Medica de P.R. v. Cruz Azul*, 18 P.R. Offic. Trans. 772, 778–79 (P.R. 1987) (When a statute "is not clear or free from ambiguity," courts should construe it "in the manner most in keeping with the legislative intent."); *State v. French*, 509 N.W.2d 693, 695 (S.D. 1993) ("The purpose of the rules of statutory construction is to discover the true intention of law, and that intention must be ascertained primarily from the language expressed in the statute." (citations omitted)).

appropriation of personality." *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534, 551 (D.S.C. 2020) (dismissing right-of-publicity claim under South Carolina law where plaintiff's name was not made public, even though statute did not specify "publicity" as an element of the claim). The publicity requirement is, of course, inherent in the very definitions of "publicity": "the quality or state of being public;"[12] "public": "exposed to general view;"[13] and "publish": "to disseminate to the public."[14] *See also United Labs., Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4557095, at *10 (N.D. Ill. Dec. 21, 2007) ("[P]ublicity" means "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." (citing Restatement (Second) of Torts § 652D cmt. a).

Here, Plaintiffs do not allege that Meredith made their names public or publicized their names. Indeed, the Complaint is bereft of any allegation that even *Plaintiffs* have seen their own names on any mailing list, which certainly would be expected had Meredith in fact publicized their names. Nor have Plaintiffs identified any other specific person—much less the "public" at large—who viewed their names or any other information about them on a mailing list or anywhere else. As a matter of definition and logic, without a plausible allegation that Plaintiffs' names were exposed to general view or disseminated to the public, there can be no right-of-publicity claim.

Not surprisingly, Plaintiffs' reading of the ROP Laws to permit right-of-publicity claims

---

[12] *Publicity*, WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/publicity (last visited Mar. 28, 2022).

[13] *Public,* WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/public (last visited Mar. 28, 2022).

[14] *Publish*, WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/publish (last visited Mar. 28, 2022).

without any publicity finds no support in the case law. In *Brooks*, 2021 WL 3621837, at *2, the court pointedly found no § 3344 violation because the dossiers containing the plaintiffs' information were sent only to a limited number of "subscribers who deliberately paid Thomson Reuters to receive information about [plaintiffs]," rendering the use "categorically different from the type of conduct made unlawful by this tort[.]" *Id.* at *5; *see also MetLife Investors USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 312 (E.D.N.Y. 2010) (use of plaintiff's identity in private contract, though connected to sale of a product, could not support alleged violation of right of publicity), *aff'd sub nom. MetLife Investors USA Ins. Co. v. Pratt*, 442 F. App'x 589 (2d Cir. 2011).

Similarly, in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, the plaintiffs brought right-of-publicity claims under California common law after learning that Facebook had disclosed their personal information without their consent in private transactions with third parties, including Cambridge Analytica, various app developers, and other businesses. 402 F. Supp. 3d 767, 781 (N.D. Cal. 2019). The court dismissed the right-of-publicity claim because the "allegations about how Facebook shared the plaintiffs' information with third parties is categorically different from the type of conduct made unlawful by this tort." *Id.* at 803. This case makes clear that the private disclosure of names and other personal information to third parties, even when the defendant benefits from the disclosure, is not a right-of-publicity violation.

Likewise, in *J.R.*, 470 F. Supp. 3d at 550–51, the plaintiffs alleged that their names and personal information had been included in a database accessible only to Walgreens employees. The court held that these allegations did not establish that Walgreens was "publicizing plaintiffs' PII [personally identifiable information] to the public at large," and dismissed their right-of-

publicity claim.[15] *Id.* at 552.

Because Plaintiffs do not plausibly allege that Meredith publicly used their names or identities, the Court should dismiss their right-of-publicity claims.

### D.    Plaintiffs Have Not Alleged an Injury Within the "Zone of Interests" of the ROP Laws and Therefore Lack Statutory Standing

Plaintiffs' claims fail for the additional and independent reason that their alleged injuries do not fall within the zone of interests protected by the ROP Laws, and they therefore lack statutory standing.

To sue under a statute, a plaintiff must show that her asserted injuries "'fall within the zone of interests protected by the law invoked.'" *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)); *Mayor of Baltimore v. Actelion Pharm. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (applying "statutory standing" doctrine to suits brought under state statutes); *see also Lexmark*, 572 U.S. at 129 (statutory standing requirement "applies to all statutorily created causes of action"). Statutory standing is a separate inquiry from Article III standing. *See Tovar v. Essentia Health*, 857 F.3d 771, 778 (8th Cir. 2017) (distinguishing "the question of whether Tovar suffered an injury sufficient to confer Article III standing from the question of whether Tovar is a proper plaintiff under the text of the ACA"); *Kelley v. Iowa State Univ. of Sci. &*

---

[15] Plaintiff's allegations are distinguishable from the "free preview" cases where a company shows a preview of information concerning an individual's identity to entice a user to buy a subscription to services or products from the company. In those cases, the plaintiffs actually discover or see their persona or identity being exploited by the defendant. *See, e.g., Knapke v. PeopleConnect Inc.*, C21-262 MJP, 2021 WL 3510350 at *5 (W.D. Wash. Aug. 10, 2021) (plaintiff need not allege that members of the public saw the offending image when plaintiff herself discovered that defendants were using her image to market their products and services on the internet, which is available to the public at large). Nothing remotely similar is alleged in this case: Plaintiffs never "discovered" Meredith using their names to market any products nor services.

*Tech.*, 311 F. Supp. 3d 1051, 1060 (S.D. Iowa 2018) (same).

"Using traditional tools of statutory interpretation" and examining the "statute's purpose," a federal court must determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark*, 572 U.S. at 127, 131. "[W]hen a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that [the legislature] authorized that plaintiff to sue," the claim is foreclosed. *Id.* at 130–31 (citation omitted).

The text of the ROP Laws makes clear that each statute protects a specific "property right," Cal. Civ. Code § 3344.1(b); Ohio Rev. Code Ann. §§ 2741.01(D) & 2741.04; P.R. Laws Ann. tit. 32, § 3154; S.D. Codified Laws §§ 21-64-1 & 21-64-4; Wash. Rev. Code § 63.60.010, and each statute confers only a limited right to exclude others from enumerated commercial, public uses of that specific property, *i.e.*, one's identity. *See supra* Section II.B.

For example, to invoke the protection of Cal. Civil Code § 3344, the oldest statute of the five ROP Laws, a plaintiff must allege an injury to the property right the legislature intended the statute to protect. Just any "trespass" against a plaintiff does not fall within the statute's zone of interests. As the Supreme Court of California explained in *Comedy III*, § 3344 "protect[s] the fruits" of the holder's labor to create value that can be derived from her name. 21 P.3d at 808. *See Zacchini*, 433 U.S. at 576 (observing that the common-law right of publicity prevents "theft of good will"). Consequently, "[w]hat the right of publicity holder possesses is not a right of censorship, but a right to prevent others from misappropriating *the economic value generated by the [holder]*." *Comedy III*, 21 P.3d at 807 (emphasis added).

To allege the required injury to property under § 3344, it is legally insufficient simply to claim a privacy injury. *See Brooks*, 2021 WL 3621837, at *5 (dismissing plaintiff's § 3344 claim

because "the injury Plaintiffs suffered here—although deeply concerning and perhaps a violation of their privacy—is not a violation of their right of publicity because their name or likeness is not being 'appropriated' and used to advertise a separate product or service"—"the essence of an 'appropriation' of one's name or likeness"); *cf. Nelson v. Harrah's Entm't Inc.*, No. 07 C 7227, 2008 WL 2444675, at *1 (N.D. Ill. June 13, 2008) (holding that an IRPA claim "requires more than just bare invasion of the plaintiff's privacy interest in his or her name"); *Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2011 WL 6101949, at *6 (N.D. Ill. Dec. 7, 2011) ("'[I]t is not the use of the plaintiff's name which constitutes a tort but rather the appropriation of the value of his name and reputation.'") (quoting *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1062 (N.D. Ill. 1982)).

While an economic injury like the theft of valuable goodwill or interference with the value of plaintiff's future endorsements would fall within the zone of interests protected by § 3344, Plaintiffs do not allege such injuries; nor do they claim to have suffered from emotional distress, humiliation, or embarrassment. *See Abdul-Jabbar*, 85 F.3d at 416 (reversing dismissal of famous basketball player's § 3344 claim where there was evidence of both economic and emotional injury: "the ad will make it difficult for him to endorse other automobiles, and . . . people may be led to believe he has abandoned his current name and assume he has renounced his religion").[16] Where, as here, Plaintiffs do not allege that they were harmed by

---

[16] The failure to allege any sort of economic or emotional injury also dooms the California Plaintiffs' claims for statutory damages under § 3344. *See, e.g., Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008) (statutory damages are available to plaintiffs who suffer economic injuries resulting from the misappropriation of their identities); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing § 3344 claim because plaintiffs did not allege any economic injury or "mental anguish as a result of the alleged misappropriation, and a plausible supporting factual basis for any such assertion").

appropriation of the *property* right in their personas, they do not and cannot state a claim under the statute. *See Cohen v. Facebook, Inc.*, No. C 10-5282 RS, 2011 WL 5117164, at *2 (N.D. Cal. Oct. 27, 2011) (dismissing § 3344 claim where plaintiffs alleged their "names and likenesses had an economic value *to Facebook*" but failed to allege how *plaintiffs* were harmed by Facebook's use of their identities).

The Ohio, Puerto Rico, Washington, and South Dakota statutes protect the same interests as the California ROP Law. *See Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020) (observing "[Ohio St. § 2741's] primary focus is the value of a person's name, vis-à-vis [*plaintiff's*] ability to market it for commercial purposes"); P.R. Law No. 139-2011 (July 13, 2011) (codified at P.R. Laws Ann. tit. 32, § 3154) (Declaration of Joseph D. Mornin, Exh. A) (contrasting Puerto Rico's statutory "right to publicity," which "provides the individual with a proprietary right over what their identity is," with the "right to privacy," which protects "information . . . people have about that individual, their communications, body and thoughts"); *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1113 (W.D. Wash. 2010) (describing the "unauthorized use" of the "persona[]" as an infringement of the property right codified in Wash. Rev. Code § 63.60.010 *et seq.*); *Berry v. Nat'l Broad. Co., Inc.*, 480 F.2d 428, 430 (8th Cir. 1973) (noting that South Dakota recognized the "right of privacy" as defined in the Restatement (Second) of Torts, which included appropriation of another person's name or likeness). Nothing in the statutory text, case law, or legislative history of any of the ROP Laws suggests they were intended to protect the bare privacy interest in facts compiled about a person.[17]

---

[17] Consistent with the right of publicity's common-law origins, *see supra* Section II.A, the purpose of each ROP Law is to confer a limited property right protecting against misappropriation of the commercial value of the holder's identity to sell some other product.

Rather, to fall within the zone of interests of the ROP Laws, Plaintiffs must allege an injury to the *property right* in one's identity, depriving its owner of the identity's *economic value*. *Cf. Brooks*, 2021 WL 3621837, at *5 (dismissing § 3344 claim where alleged injury was "categorically different" from a right-of-publicity injury) (citing *In re Facebook*, 402 F. Supp. 3d at 803 (dismissing common-law ROP claim for the same reason and discussing economic incentives underlying the tort)). Here, Plaintiffs do not and cannot allege that their names on a subscriber list have any economic value, or that the alleged inclusion of their names in mailing lists somehow deprived them of that value. *See Avrahami*, 1996 WL 1065557, at *2, *6 (subscriber's name lacked "any commercial value," because "[i]t is not possible to rent only one name on a mailing list"). Similarly, Plaintiffs do not and cannot allege that Meredith interfered with their property right to profit from their identities (should they so choose), or that they have suffered any kind of emotional distress.[18]

Instead, Plaintiffs merely claim they "have been injured" (Compl. ¶ 73) and appear to

---

This intent is borne out by the legislative history. For instance, during the House Judiciary Committee debate concerning South Dakota's ROP statute, a proponent cited Charlie Chaplin's identity being replicated in a windup toy without consent as an example of a violation. *See Hearing on South Dakota H.B. 1225 Before the House Judiciary Committee*, 90th Leg. Sess. (S.D. 2015), available at (39:15-41:15) https://sdpb.sd.gov/sdpbpodcast/2015/hju23.mp3. In the House debate on Ohio's ROP statute, Representative Salerno cited the non-consensual sale of "tacky or defective or inferior products" representing the astronauts Neil Armstrong and John Glenn as a violation. *Hearing on Ohio S.B. 54 Before the House Session*, 123rd Gen. Assemb. (Ohio 1999), available at (1:12:14-1:16:12) https://www.ohiochannel.org/video/house-session-june-28-1999. And in the House debate on Washington's ROP statute, Representative Dyer cited the non-consensual use of a computer-enhanced photograph of himself "to sell swimsuits on Valentine's Day" as a hypothetical violation. *Hearing on Washington H.B. ESHB 1074 Before the House Floor*, 55th Leg., 1997 Reg. Sess. (Wash. 1997), available at (27:42-28:03) https://tvw.org/video/house-floor-debate-1997021231/?eventID=1997021231&startStreamAt=1524&autoStartStream=true.

[18] By the same token, Plaintiff Ramirez does not allege that Meredith interfered with her ability to determine "what [her] identity is," as required by P.R. Laws Ann. tit. 32, § 3154.

assert a privacy interest in preventing disclosure of mailing lists allegedly containing their names. (*Id.* ¶¶ 40–42, 44.) As explained in the case law, this is not an injury to the property right that is protected by the ROP Laws. *See Brooks*, 2021 WL 3621837, at *5; *Cohen*, 2011 WL 5117164, at *2. Nor is it an injury to Plaintiffs' property rights under the common-law right of publicity from which the ROP Laws emanated. *See, e.g.*, *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 895–96, 902 (N.D. Ill. 2004) (rejecting plaintiffs' theory that placement of their names and addresses on a marketing list deprived them of the value of their identities under misappropriation of likeness torts); s*ee also Dwyer*, 652 N.E.2d at 1356 (dismissing Illinois common-law right-of-publicity claim predicated on mailing lists because "defendants' practices do not deprive any of the cardholders of any value their individual names may possess").

In sum, the injury Plaintiffs assert—essentially, Meredith's compiling and privately disclosing information about them to potential contractual counterparties—plainly falls outside the "zone of interests" protected by the ROP Laws, and Plaintiffs therefore lack statutory standing to sue under these statutes.

**E.      Any Alleged Use of Plaintiffs' Names Is a Non-Actionable Incidental Use**

Plaintiffs' claims also fail because they have alleged only a *de minimis*, incidental use of their names, which is not actionable under the ROP Laws.

Under the incidental use rule, a fleeting use of a person's identity, unrelated to appropriating value that would otherwise belong to that person, is not actionable in a right-of-publicity claim. As explained in the Restatement of Torts:

> *Incidental use of name or likeness.* The value of the plaintiff's name is not appropriated by mere mention of it . . . , nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. . . . It is only when the publicity is given for the purpose of appropriating to the

> defendant's benefit the commercial or other values associated with
> the name or the likeness that the right of [publicity] is invaded.

Restatement (Second) of Torts § 652C cmt. D (1977); *see* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:7.50 (5th ed. 2022) ("The mere trivial or fleeting use of a person's name or image in an advertisement will not trigger liability when such a usage will have only a de minimis commercial implication."). The rule ensures that an incidental use that has minimal impact on commercial value does not result in liability, as "allowing anyone briefly depicted or referred to for commercial purposes [to sue] would unduly burden expressive activity." *Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994) (citations omitted).

The incidental use rule is expressed in various ways but applies to all ROP Laws, including California's, where "[i]ncidental use of a plaintiff's name or likeness does not give rise to liability under a common law claim . . . or a claim under section 3344." *Id.* So too in Ohio, where "[p]ublishing a likeness of a person does not constitute appropriation if the use of the likeness is 'for purposes other than taking advantage of his or her reputation, prestige, or other value associated with him or her for purposes of publicity.'" *Balsley v. LFP, Inc.*, No. 1:08 CV 491, 2010 WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010) (quoting *Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio Ct. App. 1990)). Washington has codified the incidental use rule, expressly providing that there is no cause of action when the use of the identity "is an insignificant, de minimis, or incidental use." Wash. Rev. Code. §63.60.070(6). Puerto Rico's statute does not apply when "[w]hen the likeness of an accessory figure"—a "person who is not the focus of a communication, but rather a part of a group or background figure"—is used for a commercial purpose. P.R. Laws Ann. tit. 32, §§ 3151(g), 3157(d).

Application of the incidental use rule "is determined by the role that the use plays with

respect to the entire publication," including "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication." *Aligo*, 1994 WL 715605, at *3 (citations omitted).

In *Aligo*, on a motion to dismiss, the court invoked the incidental use rule to dismiss California statutory and common-law right-of-publicity claims where the plaintiff alleged that his photograph appeared in a single, four-second portion of a 30-minute infomercial promoting a rock music anthology. *Id.* at *1, *3. The court held the use was "insignificant to the commercial purpose of selling the music anthology," and "too fleeting and inconsequential as a matter of law to give rise to liability for misappropriation . . . ." *Id.* at *3–4. *Accord Avrahami,* 1996 WL 1065557, at *7 ("inclusion of a name as part of a larger mailing list—where no relationship exists between the individual name and the exchange of the list—'is too fleeting and incidental to be actionable'" (citation omitted)).

Many other courts have held that a fleeting or *de minimis* use of a plaintiff's identity is not actionable. *See, e.g., Harvey*, 154 N.E.3d at 305–07 (affirming summary judgment to defendant under Ohio common-law right of publicity where plaintiff's persona appeared on only "three slides of a 200-page presentation" and the use was "incidental"); *Balsley*, 2010 WL 11561844, at *9 (publishing plaintiff's name and likeness in a magazine together with historical information about her held non-actionable incidental use of her persona under Ohio law "because the use of the photograph of [plaintiff] does not imply that she uses, supports, or promotes" the magazine); *Luis Bonilla Medina v. New Progressive Party*, 140 D.P.R. 294, 302–04 (P.R. 1996) (Declaration of Joseph D. Mornin, Exh. C) (affirming dismissal of plaintiff's claim under Puerto

Rico's common-law "right to one's own image" because plaintiff was merely an "accessory figure" in a political advertisement and imposing liability would, as applied, unduly burden freedom of expression); *Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 119 (S.D.N.Y. 1991) (dismissing New York statutory right-of-publicity claim where plaintiff was "shown in only 9 seconds of [the] full-length motion picture, for 4 ½ seconds of which her face is visible, in the opening title scenes before the plot begins or any of the characters appear"); *Vinci*, 591 N.E.2d at 794 (publishing Olympic athletes' "names, likenesses, and identities" on a series of Dixie Cups held not actionable because "reference to the athletes and their accomplishments was purely informational" and "incidental to the promotion" of the product).

The incidental use rule squarely applies here, where Plaintiffs' names—assuming they appeared on mailing lists at all, which Plaintiffs admittedly do not know—would have comprised a miniscule percentage of the names on subscriber lists compiled from a "vast digital database." (Compl. ¶¶ 40–42). Plaintiffs do not allege that their names were selected for their "unique quality or value," *Aligo*, 1994 WL 715605, at *3; they claim Meredith indiscriminately included "*each* of Meredith's subscribers" on the mailing lists. (Compl. ¶ 42 (emphasis added).) Nor is there any allegation as to the "duration, prominence or repetition" of their names "relative to the rest of the publication," i.e., the other names on the list. *Aligo*, 1994 WL 715605, at *3. Plaintiffs likewise do not allege that their names were the "focus of [the] communication," versus merely a very small part of a very large group. P.R. Laws Ann. tit. 32, §§ 3151(g), 3157(d). Nor do Plaintiffs allege that their individual names enhanced Meredith's ability to sell the lists relative to Meredith's efforts in compiling the lists. (Compl. ¶¶ 40–42); *see In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d at 903 ("[T]he allegedly appropriated value of each plaintiff's name is actually created by its placement on the list. Absent the list, there is no value to

appropriate."); *Dwyer*, 652 N.E.2d at 1356 ("[A]n individual name has value only when it is associated with one of defendants' lists. Defendants create value by categorizing and aggregating these names.").

In sum, the alleged use of Plaintiffs' names on Meredith's mailing lists is "is 'too fleeting and incidental' to be actionable" under the ROP Laws. *Avrahami*, 1996 WL 1065557, at *7.

## III. THE FIRST AMENDMENT BARS PLAINTIFFS' PROPOSED APPLICATION OF THE ROP LAWS

The Complaint must be dismissed for the separate reason that Plaintiffs' proposed application of the ROP Laws would violate the First Amendment.

Right-of-publicity statutes, which target speech "based on its communicative content" and the identity of the speaker, are subject to First Amendment scrutiny.[19] *See Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (citing *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)). The Eighth Circuit recognizes that "state law rights of publicity must be balanced against First Amendment considerations," and "the former must give way to the latter." *C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823 (8th Cir. 2007) (citing *Zacchini*, 433 U.S. at 562).[20] That case involved allegations that CBC's fantasy

---

[19] *See, e.g.*, Ohio Rev. Code § 2741.02 (prohibiting speech based on "use [of] any aspect of an individual's persona for a commercial purpose," where "persona" includes particular attributes of an individual and "commercial purpose" depends on the content of the communication).

[20] All federal Courts of Appeals (including the Eighth Circuit) to explicitly adopt a test for whether the First Amendment bars a state right-of-publicity claim have employed First Amendment balancing instead of the "commercial speech" inquiry under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564 (1980). *See Major League*, 505 F.3d at 823; *Hart*, 717 F.3d at 163 (applying the "transformative use test" in *Comedy III*, 21 P.3d at 806, which balances "the state law interest and the interest in free expression," instead of the commercial speech test); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013) (endorsing the application of the *Comedy III* balancing test based on transformative use); *ETW Corp.*, 332 F.3d at 938 (applying a balancing test and the transformative use test from *Comedy III* instead of the commercial speech test); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 972 (10th Cir. 1996) ("directly

baseball products—which incorporated the names, biographical data and performance statistics of MLB players—violated those players' rights of publicity, which MLB had licensed to another company. *Id.* at 820–23. The Eighth Circuit affirmed a grant of summary judgment to CBC because dissemination of the player names and data deserved the same First Amendment protection as "informational" speech. *Id.* at 823 (citing *Cardtoons*, 95 F.3d at 969. Noting that the players' names were public information, the court found "it would be strange law that a person would not have a First Amendment right to use information that is available to everyone." *Id.* at 823. Balancing the right to speak against the right to be free from publicity, the Eighth Circuit held that the First Amendment interests outweighed the state's interests because the "case barely, if at all, implicate[d] the interests that states typically intend to vindicate by providing rights of publicity to individuals," *e.g.*, "economic interests" like the "rewards of [the individual's] endeavors," "an individual's right to earn a living," and "provid[ing] incentives to encourage a person's productive activities." *Id.* at 824 (citing, *inter alia*, *Zacchini*, 433 U.S. at 573 (explaining the rationale as the "right of the individual to reap the reward of his endeavors")).[21]

The same reasoning applies here, where Plaintiffs allege their names, addresses, and

---

balanc[ing] the magnitude of the [ROP] speech restriction against the asserted governmental interest in protecting the intellectual property right"); *Rogers v. Grimaldi*, 875 F.2d 994, 1004 (2d Cir. 1989) (applying a "relatedness" inquiry and not the commercial speech test to a ROP claim). *See also Sarver*, 813 F.3d at 906 (suggesting that, in an as-applied challenge, strict scrutiny may apply to ROP claims and dismissing such a claim as "presumptively unconstitutional" under California's anti-SLAPP statute); *Hilton*, 599 F.3d at 905 n.7 (holding that appropriation of socialite's likeness on Hallmark card is not "commercial speech for First Amendment purposes" because it "is not advertising the product; it is the product").

[21] The court explicitly did not consider noneconomic harms like "mental anguish" as countervailing interests in a right-of-publicity case because noneconomic harms are "more directly served by so-called rights of privacy." *Id.* at 824 (citing *Cardtoons*, 95 F.3d at 967, 973).

other inherently public information is included on Meredith's mailing lists. (Compl. ¶ 40–42.) This is fully protected speech. *See Major League*, 505 F.3d at 823–24; *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) (holding that "publications like yellow pages directories" receive full First Amendment protection); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1387 (N.D. Ill. 2016) (holding that Avvo's online attorney directory is "more akin to the yellow pages directory, which receives First Amendment protection," than to an advertisement "appropriating" a celebrity's persona); *see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 764 (1976) (noting the "strong" First Amendment "interest in the free flow of commercial information").

As in *Major League*, where publicly available information was used, there are no legitimate right-of-publicity interests to countervail Meredith's First Amendment rights here.[22] Plaintiffs allege no economic injury from Meredith's products, nor could they: it is difficult to fathom how the private sale of a subscriber mailing list would impact Plaintiffs' ability to make a living or discourage them from doing so. *See Major League*, 505 F.3d at 824; *Sarver*, 813 F.3d at

---

[22] Even were the Court to conclude that Meredith's compilation and sale of subscriber mailing lists is "commercial speech" subject to less robust First Amendment protection, to survive First Amendment scrutiny, Plaintiffs still must show that each ROP Law "advances [a] substantial [government] interest 'in a direct and material way.'" *Missouri Broadcasters Ass'n v. Schmitt*, 946 F.3d 453, 457, 459-61 (8th Cir. 2020) (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)) (affirming judgment in favor of defendant on First Amendment grounds where plaintiff failed to show how a Missouri statute "prohibit[ing] [alcohol] producers and distributors from retail advertising," as applied, "directly and materially advance[d] [plaintiff's] interest of preventing undue influence" in the retail alcohol market). As explained in this Section and in Section II.D above, the ROP Laws, as plaintiffs seek to apply them, do nothing to advance the property interests animating them. *See, e.g.*, *Major League*, 505 F.3d at 824. For the same reason, Plaintiffs cannot show "that [each] Statute's speech restriction as applied is not more extensive than necessary to serve its interest," as would be required for any commercial speech restriction to survive scrutiny. *Missouri Broadcasters*, 946 F.3d at 461. Consequently, the ROP Laws fail the First Amendment test, whether the standard in *Major League* or in *Missouri Broadcasters* applies.

905–06 (affirming grant of anti-SLAPP motion after holding the First Amendment foreclosed a California right-of-publicity claim where plaintiff did not allege he "invest[ed] time and money to build up economic value in a marketable performance or identity" and "expressly disavowed the notion that he sought to attract public attention to himself"—"[t]he state has no interest in giving Sarver an economic incentive to live his life as he otherwise would").

Because the manner in which Plaintiffs seek to apply the ROP Laws does not advance or align with the state interests underlying the statutes, the First Amendment would bar the expansive right-of-publicity claims Plaintiffs seek to assert here.[23]

## CONCLUSION

For the reasons stated above, the Court should dismiss the case, with prejudice, for lack of subject-matter jurisdiction under Rule 12(b)(1), for failure to state a claim under Rule 12(b)(6), and because Plaintiffs' claims are barred by the First Amendment.  The Court should also award Meredith attorney's fees, costs, and expenses under Cal. Civ. Code § 3344(a), Ohio Rev. Code Ann. § 2741.07(D)(1), and Wash. Rev. Code § 63.60.060(5). To facilitate the Court's understanding of the numerous state law and constitutional issues raised herein, Meredith respectfully requests oral argument of this Motion pursuant to L.R. 7(c).

---

[23] Of course, the Court can avoid the need to reach this constitutional question by construing the ROP Laws to exclude Meredith's truthful, lawful, private speech that does not implicate the core interests of these right-of-publicity statutes. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail . . . .").

Dated: March 28, 2022                    Respectfully submitted,

**COOLEY LLP**

By:      */s/ Tiana A. Demas*
Tiana A. Demas (*pro hac vice*)
444 W Lake Street, Suite 1700
Chicago, IL 60606
Tel: (312) 881-6500
tdemas@cooley.com

David E. Mills (*pro hac vice*)
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 842-7800
dmills@cooley.com

Joseph D. Mornin (*pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: (415) 693-2000
jmornin@cooley.com


**BELIN MCCORMICK, P.C.**

David L. Charles (Bar No. AT0001440)
666 Walnut Street
Suite 2000
Des Moines, IA 50309
Tel: (515) 243-7100
dlcharles@belinmccormick.com

*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 28th day of March, 2022, I caused a true and correct copy of the foregoing **Memorandum in Support of Defendant Meredith Corporation's Motion to Dismiss the Consolidated Class Action Complaint** to be filed through the Court's CM/ECF System and served the below Counsel of Record via electronic mail:

| | |
|---|---|
| J. Barton Goplerud<br>goplerud@sagwlaw.com<br>Gary W. Kendall<br>kendell@sagwlaw.com<br>SHINDLER, ANDERSON, GOPLERUD &<br>WEESE P.C.<br>5015 Grand Ridge Drive<br>Suite 100<br>West Des Moines, IA 50265<br><br>Frank S. Hedin<br>fhedin@hedinhall.com<br>Arun G. Ravindran<br>aravindran@hedinhall.com<br>HEDIN HALL LLP<br>1395 Brickell Avenue, Suite 1140<br>Miami, Florida 33131 | Michael W. Ovca<br>movca@edelson.com<br>EDELSON PC<br>350 N. LaSalle St.<br>Suite 1400<br>Chicago, IL 60654<br><br>Philip L. Fraietta<br>pfraietta@bursor.com<br>BURSOR & FISHER, P.A.<br>888 7th Avenue, 3rd Floor<br>New York, NY 10019<br><br>Carey Alexander<br>calexander@scott-scott.com<br>Joseph P. Guglielmo<br>jguglielmo@scott-scott.com<br>Sean Masson<br>smasson@scott-scott.com<br>SCOTT & SCOTT ATTORNEYS AT LAW<br>LLP<br>The Hemsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br><br>Erin Green Comite<br>ecomite@scott-scott.com<br>SCOTT + SCOTT ATTORNEYS AT LAW<br>LLP<br>156 S. Main Street<br>P.O. Box 192<br>Colchester, CT 06415 |

*/s/ Tiana A. Demas*
Tiana A. Demas