## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| JOAN BURKE, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-00335 |
| | Judge Rebecca Goodgame Ebinger |
| | Magistrate Judge Stephen B. Jackson, Jr. |
| *Plaintiff,* | |
| v. | **PLAINTIFFS' MEMORANDUM IN** |
| | **OPPOSITION TO DEFENDANT'S** |
| MEREDITH CORPORATION, | **MOTION TO DISMISS THE** |
| | **CONSOLIDATED CLASS ACTION** |
| *Defendant.* | **COMPLAINT** |
| ADELE HETZEL, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-00341 |
| *Plaintiff,* | |
| v. | |
| MEREDITH CORPORATION, | |
| *Defendant.* | |
| MARIBEL RAMIREZ, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-00344 |
| *Plaintiff,* | |
| v. | |
| MEREDITH CORPORATION, | |
| *Defendant.* | |
| BELINDA POWERS, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-00350 |
| *Plaintiff,* | |
| v. | |
| MEREDITH CORPORATION, | |
| *Defendant.* | |

| | |
|---|---|
| SHARON MCKINNEY, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff*,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant*. | Case No. 4:21-cv-00360 |
| NORMA GOLDBERGER, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff*,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant*. | Case No. 4:21-cv-00367 |
| CANDYCE MARTO-MAEDEL, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff*,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant*. | Case No. 4:21-cv-00366 |
| JULIE BEACH, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff*,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant*. | Case No. 4:21-cv-00376 |

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................ 2

PERTINENT STATUTORY SCHEMES............................................................. 3

MOTION TO DISMISS STANDARD.................................................................. 4

ARGUMENT ........................................................................................................ 5

I.  PLAINTIFFS HAVE ARTICLE III STANDING .............................................. 5

II.  PLAINTIFFS STATE COGNIZABLE CLAIMS UNDER THE
     MISAPPROPRIATION STATUTES ................................................................ 11

    A.  The Misappropriation Statutes Explicitly Prohibit the Use of a
         Person's Name and Other Indicia of Identity "On or In" a Product
         or Service Without Consent .................................................................... 11

    B.  Illinois and Virginia Right of Publicity Statutes Are Materially
         Distinguishable from the Misappropriation Statutes At Issue Here ...... 14

    C.  The Misappropriation Statutes Prohibit More Conduct than the
         Common Law........................................................................................... 18

III.  PUBLIC USE IS NOT AN ELEMENT OF THE MISAPPROPRIATION
      STATUES ........................................................................................................ 21

IV.  PLAINTIFFS HAVE STATUTORY STANDING TO ASSERT CLAIMS
     UNDER THE MISAPPROPRIATION STATUTES ......................................... 25

V.  THE COMPLAINT'S ALLEGATIONS DEFEAT MEREDITH'S
     INCIDENTAL USE DEFENSE AT THE PLEADING STAGE ..................... 31

VI.  THE FIRST AMENDMENT DOES NOT PROTECT MEREDITH'S
     CONDUCT ...................................................................................................... 34

    A.  Plaintiffs' Claims Concern Purely Commercial Speech Warranting
         Only Intermediate Scrutiny.................................................................... 34

    B.  The Misappropriation Statutes Survive Meredith's As-Applied
         Challenge ................................................................................................ 38

CONCLUSION.................................................................................................... 40

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Boelter v. Hearst Communications, Inc.,*
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ............................................................................... passim

*Abdul-Jabbar v. Gen. Motors Corp.,*
   85 F.3d 407 (9th Cir. 1996) .............................................................................................. 27

*Aligo v. Time-Life Books, Inc.,*
   1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ..................................................................... 33

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................................................... 4

*Ayala Otero v. Rivera Nevis,*
   2016 WL 5369286 (P.R. Ct. App. 2016) ............................................................................ 16

*Balsley v. LFP, Inc.,*
   2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) ................................................................ 32

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................................. 4, 5, 25, 27

*Berger v. Capitol Color Mail, Inc.,*
   38 Va. Cir. 261 (1995) ..................................................................................................... 18

*Biscanin  v. Merrill Lynch & Co., Inc.,*
   407 F.3d 905 (8th Cir.2005) ............................................................................................. 4

*Boelter v. Advance Magazine Publishers Inc.,*
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) ............................................................................ 35, 36

*Boelter v. Hearst Commc'ns, Inc.,*
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ................................................................................ 17

*Bosley v. Wildwett.com,*
   310 F. Supp. 2d 914 (N.D. Ohio 2004) .................................................................. 13, 15, 19

*Brooks v. Thomson Reuters Corp.,*
   2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......................................................... 20, 21, 30

*C.B.C. Dist. and Mkt'g, Inc. v. Major League Baseball Advanced Media, L.P.,*
   505 F.3d 818 (8th Cir. 2007) ....................................................................................... 37, 38

*California Outdoor Equity Partners v. City of Corona,*
   2015 WL 4163346 (C.D. Cal. July 9, 2015) ....................................................................... 38

*Callahan v. Ancestry.com, Inc.*,
   2021 WL 2433893 (N.D. Cal. Jun. 15, 2021) ........................................................ 9

*Callahan v. PeopleConnect, Inc.*,
   2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ................................................... passim

*Canessa v. J. I. Kislak, Inc.*,
   235 A.2d 62 (N.J. Super. Ct. Law. Div. 1967) ...................................................... 30

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ................................................................................ 34, 35, 39

*Chapman v. Yellow Cab Coop.*,
   875 F.3d 846 (7th Cir. 2017) ................................................................................ 25

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
   2015 WL 4365439 (N.D. Cal. July 16, 2015) ........................................................ 38

*Cohen v. Facebook, Inc.*,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................................ 30

*Collection Bureau of San Jose v. Rumsey*,
   6 P. 3d 713 (2000) ................................................................................................ 20

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   21 P.3d 797 (Cal. 2001) ................................................................................. passim

*Conn. Bar. Ass'n v. Uni*,
   ted States, 620 F.3d 81 (2d Cir. 2010) ................................................................. 35

*Contest Promotions, LLC v. City & Cnty. of San Francisco*,
   2015 WL 4571564 (N.D. Cal. July 28, 2015) ........................................................ 38

*Cook v. George's, Inc.*,
   952 F.3d 935 (8th Cir. 2020) .................................................................................. 5

*Coulter-Owens v. Time Inc.*,
   695 F. App'x 117 (6th Cir. 2017) ................................................................... 10, 26

*Daniels v. FanDuel, Inc.*,
   109 N.E.3d 390 (Ind. 2018) .................................................................................... 4

*Davis v. Elec. Arts Inc.*,
   775 F.3d 1172 (9th Cir. 2015) .............................................................................. 33

*Davis v. Facebook, Inc.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................ 29

*Del Amo v. Baccash,*
   2008 WL 4414514 (C.D. Cal. Sept. 16, 2008) ....................................................... 28

*Dex Media W., Inc. v. City of Seattle,*
   696 F.3d 952 (9th Cir. 2012) ............................................................................ 37

*Dobrowolski v. Intelius, Inc.,*
   2018 WL 11185289 (N.D. Ill. May 21, 2018) .................................................... 17

*Doe v. Darien Lake Theme Park & Camping Resort, Inc.,*
   715 N.Y.S.2d 825 (N.Y. App. Div. 2000) .......................................................... 34

*Douglass v. Hustler Mag., Inc.,*
   769 F.2d 1128 (7th Cir. 1985) ............................................................................ 7

*Downing v. Abercrombie & Fitch,*
   265 F.3d 994 (9th Cir. 2001) ............................................................................. 7

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
   472 U.S. 749 (1985) ................................................................................... 36, 37

*Dwyer v. American Express Co.,*
   652 N.E.2d 1351 (Ill. App. Ct. 1995) ................................................................ 19

*ETW Corp. v. Jireh Pub., Inc.,*
   332 F.3d 915 (6th Cir. 2003) ............................................................................ 33

*Florida Bar v. Went For It, Inc.,*
   515 U.S. 618 (1995) ....................................................................................... 34

*Fraley v. Facebook, Inc.,*
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ....................................................... passim

*Gaylor v. Vill. Of Ringwood,*
   363 Ill. App. 3d 543 (2006) .............................................................................. 16

*Harvey v. Systems Effect, LLC,*
   154 N.E. 3d 293 (Ohio App. 2020) .................................................................. 32

*Hillstrand v. Catch Planet, LLC,*
   2013 WL 12114785 (W.D. Wash. 2013) ........................................................... 11

*Huston v. Hearst Commc'ns, Inc.,*
   2022 WL 385176 (C.D. Ill. Feb. 7, 2022) ............................................... 2, 16, 17

*In re Clearview AI, Inc., Consumer Privacy Litig.,*
   2022 WL 444135 (N.D. Ill. Feb. 14, 2022) ............................................ 12, 13, 15

*In re: Facebook Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................ 19, 23

*J.R. v. Walgreens Boots Alliance, Inc.*,
470 F. Supp. 3d 534 (D.S.C. 2020) ...................................................................... 23

*King v. Gen. Info. Svcs., Inc.*,
903 F. Supp. 2d 303 (E.D. Pa. 2012) .................................................................... 36

*Knapke v. PeopleConnect Inc.*,
2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) ................................... 9, 23, 24, 32

*KNB Enterprises v. Matthews*,
92 Cal. Rptr. 2d 713 (Cal. Ct. App. 2000) ............................................................. 6

*Kolebuck-Utz v. Whitepages, Inc.*,
2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ...................................................... 9

*Krause v. RocketReach, LLC*,
2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) ......................................................... 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .............................................................................................. 26

*Live Nation, Inc. v. Ill. Nat. Ins. Co.*,
2007 WL 9725132 (C.D. Cal. Sept. 28, 2007) ......................................................... 8

*Lukis v. Whitepages Inc.*,
549 F. Supp. 3d 798 (N.D. Ill. 2021) ................................................................. 9, 10

*Lukis v. Whitepages Inc.*,
542 F.Supp.3d 831 (N.D. Ill. 2020) ...................................................................... 17

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) .............................................................................. 36

*Martinez v. ZoomInfo Tech's., Inc.*,
2022 WL 1078630 (W.D. Wash. April 11, 2022) ................................... 8, 9, 29, 30

*Miller v. Collectors Universe, Inc.*,
159 Cal. App. 4th 988 (2008) .......................................................................... 22, 30

*Motchenbacher v. R.J. Reynolds, Tobacco Co.*,
498 F.2d 821 (9th Cir. 1974) ......................................................................... 29, 30

*Nieman v. Versuslaw, Inc.*,
2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ..................................................... 16, 17

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................. 9

*Perkins v. Linkedin Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ................................................................ 33

*Radio Today, Inc. v. Westwood One, Inc.*,
  684 F. Supp. 68 (S.D.N.Y. 1988) ........................................................................ 32

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ........................................................................................ 38

*Seigel v. ZoomInfo Tech's.*,
  Inc., 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ............................................ 9, 25

*Sessa v. Ancestry.com Operations, Inc.*,
  2021 WL 4245359 (D. Nev. Sept. 16, 2021) ................................................. passim

*Shibley v. Time, Inc.*,
  341 N.E.2d 337 (Ohio Ct. App. 1975) ............................................................ 18, 19

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011) ............................................................................................ 34

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................................... 5, 7, 9

*Stayart v. Google, Inc.*,
  710 F. 3d 719 (7th Cir. 2013) ............................................................................ 31

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................. 9

*Thompson v. Getty Images (US), Inc.*,
  2013 WL 3321612 (N.D. Ill. July 1, 2013) ........................................................ 17

*Titus v. Sullivan*,
  4 F.3d 590 (8th Cir. 1993) ................................................................................... 4

*Trans Union Corp. v. F.T.C.*,
  267 F.3d 1138 (D.C. Cir. 2001) .......................................................................... 36

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ..................................................................................... 6, 7

*U.S. News & World Report, Inc. v. Avrahami*,
  1996 WL 1065557 (Va. Cir. Ct. June 13 ,1996) ............................................. 17, 18

vi

*United Reporting Pub. Corp. v. Cal. Highway Patrol*,
  146 F.3d 1133 (9th Cir. 1998) ................................................................. 36

*United States v. Turkette*,
  452 U.S. 576 (1981) ................................................................................ 23

*Upper Deck Co. v. Panini Am., Inc.*,
  469 F. Supp. 3d 963 (S.D. Cal. 2020) ..................................................... 32

*Verde v. Confi-Chek, Inc.*,
  2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) .......................................... 10

*Vrodolyak v. Avvo*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) .................................................... 37

*Vugo, Inc. v. City of New York*,
  931 F.3d 42 (2d Cir. 2019) ..................................................................... 35

*Zacchini v. Scripps-Howard Broad. Co.*,
  433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977)............................ 39

*Zoll v. Jordache Enterprises Inc.*,
  2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ......................................... 34

**STATUTES**

765 Ill. Comp. Stat. Ann. 1075/1 ................................................................. 2

765 Ill. Comp. Stat. Ann. 1075/10 ............................................................... 6

765 Ill. Comp. Stat. Ann. 1075/5 ..................................................... 15, 16, 23

765 Ill. Comp. Stat. Ann. 1075/30(a) ........................................................ 14

Cal. Civ. Code § 3344 ..................................................................... 3, 11, 29, 30

Cal Civ. Code § 3344(a) ...................................................................... passim

Mich. Comp. Laws § 445.1712 ................................................................. 27

Ohio Rev. Code § 2741.02(A)-(B) ............................................................... 3

Ohio Rev. Code § 2741.01 ................................................................... passim

Ohio Rev. Code § 2741.01(A) ..................................................................... 4

Ohio Rev. Code § 2741.01(B)(1) ................................................................. 1

Ohio Rev. Code § 2741.02 .................................................................. 25, 26

Ohio Rev. Code § 2741.02(B)(1) .................................................................................................... 19

Ohio Rev. Code § 2741.06 ............................................................................................................. 26

RCW 63.60.010 ................................................................................................................... 4, 21, 39

RCW 63.60.040 ................................................................................................................................ 6

RCW 63.60.050 ................................................................................................................................ 1

RCW 63.60.060 .............................................................................................................................. 26

S.D. Codified Laws § 21-64-1 ........................................................................................................ 4

S.D. Codified Laws § 21-64-1(1) .............................................................................................. 1, 3, 4

S.D. Codified Laws § 26-64-1(3) .................................................................................................. 22

S.D. Codified Laws § 21-64-5 ...................................................................................................... 26

Va. Code. Ann. § 8.01-40 .............................................................................................................. 18

## RULES

Fed. R. Civ. Pro. 12(b)(1) ............................................................................................................... 4

Fed. R. Civ. Pro. 12(b)(6) ............................................................................................................... 4

## OTHER AUTHORITIES

2011 Puerto Rico Laws Act 139 (S.B. 1750) .................................................................................. 8

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:7 (5th ed. 2021) 27

Plaintiffs in this consolidated action submit the following response in opposition to the motion to dismiss (ECF No. 24 (the "Motion" or "Mot.")) filed by Defendant Meredith Corporation ("Defendant" or "Meredith").

## **INTRODUCTION**

Plaintiffs and the proposed Class members subscribed to magazines like *Better Homes & Gardens, Entertainment Weekly, People* and *InStyle*, which are published by Meredith.  After a subscriber gives Meredith her name and home address to receive her publication in the mail, Meredith packages the subscriber's identity into a valuable product comprised of data that, *inter alia*, identifies the person's (and each of its other subscriber's) age, race, religion, politics, and other highly sensitive personal attributes ("Data Brokerage Products") – without consent. Meredith then sells, rents, and exchanges these products with its "Data Brokerage Clients." Meredith earns a hefty profit monetizing its customers' identities into Data Brokerage Products in this way.

This conduct, however, violates the laws of California, Ohio, South Dakota, Puerto Rico, and Washington (collectively the "Misappropriation Statutes").  With the exception of Puerto Rico's, each statute explicitly prohibits the use of the indicia of identity of a person, "<u>on or in</u> products, merchandise, or goods . . . ."  *See, e.g.*, Cal Civ. Code § 3344(a) (emphasis added).[1]

The Motion fails to recognize that Plaintiffs' claims arise from Meredith's "use" of their identities "on or in" the Data Brokerage Products, and instead focuses on a separate, independent

---

[1] *See* Cal. Civ. Code § 3344(a) (holding liable "[a]ny person who knowingly uses another's name . . . in any manner, on or in products, merchandise, or goods. . . ."); S.D. Codified Laws § 21-64-1(1) (prohibiting use of one's name "in connection with a product, merchandise, goods, service, or commercial activity" without consent); Ohio Rev. Code § 2741.01(B)(1) (defining "commercial purpose" as "the use of or reference to an aspect of an individual's persona in any of the following manners: (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities . . . ."); RCW 63.60.050 (prohibiting "the use of a living or deceased individual's or personality's name . . . on or in goods, merchandise, or products. . . .").  Puerto Rico uses different phrasing, defining "commercial purpose" as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market."  32 L.P.R. § 3151(h).

prong of the statutes that prohibit the use of one's likeness for the purpose of endorsing, advertising, or promoting a product. But that is not the prong that Plaintiffs' theory of liability is premised on. This is not a false advertising or apparent endorsement case. Rather, this matter is a misappropriation case. Thus, Meredith's arguments for dismissal completely miss the mark, and the legal authority to which it cites is plainly inapposite. In addition to citing one irrelevant decision after another concerning the endorsement prong (rather than the misappropriation prong) of the Misappropriation Statutes, Meredith relies on decisions addressing statutory language that is also not at issue here (such as the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et. seq.*, as discussed in *Huston v. Hearst Commc'ns, Inc.*, 2022 WL 385176, at *3 (C.D. Ill. Feb. 7, 2022)), and attempts to further muddy the water by focusing on non-statutory common law publicity claims, which likewise have no bearing on this case.

The Complaint alleges that Meredith has systematically and flagrantly commercialized its subscribers' names and addresses by selling them to its Data Brokerage Clients without consent, in violation of the Misappropriation Statutes, causing them each to suffer a concrete harm. Plaintiffs' factual allegations adequately state claims for relief under each of the Misappropriation Statutes. Accordingly, the Motion should be denied.

## FACTUAL ALLEGATIONS

Meredith is an international media conglomerate and publishes some of the most widely circulated magazines in the United States, including *Better Homes & Gardens, Entertainment Weekly, People* and *InStyle.* (Comp. ¶ 1). As such, Meredith maintains a vast digital database comprised of its customers' names, basic demographic information (*e.g.*, home address), and magazine subscription histories and preferences. (Comp. ¶ 40).

Meredith discloses its magazine subscribers' names and other identifying information, including but not limited to those subscribers' home addresses, to data aggregators and appenders,

which then provide Meredith with supplemental information including a subscriber's sex, age, race, and political party, among other data points.  (Comp. ¶ 41).  Meredith then packages this composite identity information into its Data Brokerage Products, which it sells, licenses, rents to, and exchanges with, Data Brokerage Clients.  (Comp. ¶ 42).  On a per record basis, the information includes identifying information about each of Meredith's subscribers (name, address, magazines subscribed to, among other such details) and the additional information received from the data aggregators and appenders discussed above.  *Id.*

These Data Brokerage Products are offered for sale in, and, on information and belief, ultimately are sold and entered into commerce throughout, California, Ohio, South Dakota, Puerto Rico, and Washington, as well as elsewhere in the United States.  (Comp. ¶ 43).  Meredith also discloses its Data Brokerage Products to data cooperatives, which in turn give Meredith access to their own subscription list databases. (Comp. ¶ 44).  Meredith does not seek its subscribers' consent, written or otherwise, prior to using their names and likenesses on or in connection with its Data Brokerage Products.  (Comp. ¶ 47).  Its customers remain unaware that their identities are being trafficked on the open market in this way.  *Id.*

## PERTINENT STATUTORY SCHEMES

As the Complaint details, each of the Misappropriation Statutes prohibits the non-consensual use of indicia of a person's identity for "commercial purposes," which is defined to include, *inter alia*, the use of an identity "on or in products, goods, merchandise, or services." Compl. ¶¶ 7-25.[2]  This "use" prohibition arises under a prong of the Misappropriation Statutes that is distinct from another prong of the Misappropriation Statutes that prohibit the use of an identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise,

---

[2]      Cal. Civ. Code § 3344; Ohio Rev. Code §2741.02(A)-(B); 32 L.P.R.; S.D. CODIFIED LAWS § 21-64-1(1);  § 3152RCW 63.60.050.

or services."[3]  *See*, *e.g.*, *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 802 (Cal. 2001) (explaining that the "plain meaning" of the California statute prohibits the use, without consent, of a likeness "either (1) 'on or in' a product, *or* (2) in 'advertising or selling' a product," and that "[t]he two uses are not synonymous") (emphasis in original).  The Misappropriation Statutes explicitly provide that an individual's name is a protected aspect of identity (also variously referred to as an "aspect of personality," "persona," or "likeness").[4]

The Misappropriation Statutes exempt use of a likeness in art, news reporting, sports broadcasting, and political campaigns from the scope of regulated conduct to avoid First Amendment violations.  *See*, *e.g.*, *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 396 (Ind. 2018) ("These enumerated exceptions, including 'material with newsworthy value,' represent an obvious attempt to avoid constitutional issues with the statute.").

## MOTION TO DISMISS STANDARD

For the Court to dismiss a claim under Federal Rule of Civil Procedure 12(b)(1), the opposing party must successfully challenge the claim "on its face or the factual truthfulness of its averments." *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir. 1993). Facial challenges are limited to analyzing the face of the complaint. *Biscanin  v. Merrill Lynch & Co., Inc.,* 407 F.3d 905, 907 (8th Cir.2005).  Thus, the moving party's motion can be "successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A plaintiff's

---

[3]      *Id.*
[4]      Cal. Civ. Code § 3344(a); Ohio Rev. Code §2741.01(A); 32 L.P.R. § 315(c); S.D. CODIFIED LAWS § 21-64-1 RCW 63.60.010.

"[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020).

## ARGUMENT

### I.    PLAINTIFFS HAVE ARTICLE III STANDING

Meredith's data brokerage business is illegal and Plaintiffs, along with every other one of its magazine subscribers from California, Ohio, Puerto Rico, South Dakota, and Washington, are victims. A host of recent decisions applying the Supreme Court's standing jurisprudence to misappropriation claims such as the ones at issue here, find that plaintiffs have standing to bring suit in federal courts.

Defendant first contends that Plaintiffs have not suffered a concrete injury sufficient to confer Article III standing, self-servingly styling Plaintiffs' allegations as "bare violations of the ROP laws." Mot. at 6. This argument is baseless. The Complaint plainly alleges that Defendant maintains a database of its subscribers' personal and demographic information, which it aggregates, packages, and sells, trades, and licenses to others. This commercialization of subscribers' (including Plaintiffs') identities occurs without their consent. These allegations present ample constitutional mooring for purposes of Article III.

Indeed, to have standing to sue, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 339.

Here, Plaintiffs allege Meredith publicly used and held out their identities for commercial purposes by selling and/or renting mailing lists that identified, by name, address and other personal attributes, every subscriber to its magazine publications, and that this conduct violated Plaintiffs' and the other Class members' rights under the Misappropriation Statutes. (*See* Comp. ¶¶ 1-3, 8-10, 75-77.)   The Misappropriation Statutes serve to safeguard an individual's exclusive control over the commercial exploitation of her or his name and likeness.   *See e.g., KNB Enterprises v. Matthews*, 92 Cal. Rptr. 2d 713, 717 (Cal. Ct. App. 2000) ("What may have originated as a concern for the right to be left alone has become a tool to control the commercial use and, thus, protect the economic value of one's name…or likeness"); Ohio Rev. Code § 2741.01 ("'Right of publicity' means the property right in an individual's persona to use the individual's persona for a commercial purpose."); RCW 63.60.040 (personality rights "exclusive to the individual" to the extent not assigned or licensed.); *see also* 765 ILCS 1075/10   ("The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity").   Meredith's conduct, as alleged, is a clear infringement upon Plaintiffs' and class members' exclusive property rights in the commercialization of their names and identities, plain and simple, which the Misappropriation Statutes exist to redress.

Meredith goes to lengths to twist Plaintiffs' claims into those akin to the Fair Credit Report Act ("FCRA") violations at issue in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). But Meredith's efforts are unavailing.   In *TransUnion*, the plaintiffs alleged FCRA violations based on incorrect entries in the credit reports showing OFAC alerts.   *Id.* at 2202.   The Court concluded that where these incorrect reports had been disseminated, Plaintiffs suffered an injury sufficiently concrete to meet Article III's standing requirements, but where the reports had not been disseminated, notwithstanding that the OFAC entry was incorrect and therefore technically

violated the FCRA, the bare technical violation alone could not imbue the claims with Article III standing. *Id.* at 2214. Trying to fit a square peg through a round hole, Meredith claims that its subscriber lists "are functionally in a desk drawer" (Mot. at 7), akin to the non-disseminated credit reports described in *TransUnion* (*Id.* at 2210), but as alleged in the Complaint, Meredith *has sold* its Data Brokerage Products *on the open market*, and Plaintiffs' names were included in these Data Brokerage Products without Plaintiffs' consent. Thus, Plaintiffs are not suing for a hypothetical future injury, but rather one that has already occurred. These allegations alone completely undermine Meredith's contention that its subscriber lists "are functionally in a desk drawer."

Moreover, Meredith's claim that such conduct is a "bare violation" misapprehends the distinction between tangible and intangible harms. *See Spokeo*, 578 U.S. at 340-41. An "intangible harm" constitutes an injury in fact if it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. An intangible harm, like the violations of the Misappropriation Statutes alleged here, constitutes an injury in fact where plaintiffs have identified a close historical or common-law analogue for their asserted injury. Meredith's failure to address this critical distinction anywhere in the Motion speaks volumes. A violation of the Misappropriation Statute clearly constitutes an injury-in-fact sufficient to satisfy Article III standing. The common law recognized "the commercial-appropriation branch of the right of privacy—what is sometimes called the 'right of publicity,'" meaning "the right to prevent others from using one's name or picture for commercial purposes without consent." *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (finding California Misappropriation Statute is a complement to the common law tort of misappropriation of name or likeness); *See also Sessa v. Ancestry.com Operations, Inc.*, 2021 WL 4245359, at *6 (D. Nev. Sept. 16, 2021) ("Right of

publicity claims, which are often by codified state statute, have their origins at common law.").[5]

In *TransUnion*, however, the Supreme Court found that because the common law traditionally <u>did not</u> recognize a claim for the mere existance of inaccurate information in a report, even if the inaccuracies in the non-disseminated reports violated the FCRA, they were insufficiently concrete to confer Article III standing.  This is in sharp contrast to the harms that accrue for violations of the Misappropriation Statutes, the same harms traditionally recognized in privacy torts alleging commercial appropriation.  *See Live Nation, Inc. v. Ill. Nat. Ins. Co.*, 2007 WL 9725132, at *7 (C.D. Cal. Sept. 28, 2007) (citing *Prosser* and noting the four traditional forms of invasion of privacy – intrusion, public disclosure of private facts, false light in the public eye, and appropriation, which "has come to be known as the right of publicity").

Recognizing the centrality of the common-law analogue inquiry, courts have explicitly rejected the standing argument Meredith advances here.  For example, in *Sessa v. Ancestry.com Operations Inc*., the court noted: "Plaintiffs have standing to sue under the Nevada Right of Publicity Act.  The Act did not create unrecognized claims by legislative fiat.  Rather, the right of publicity has existed at common law, and the legislature codified the right."  2021 WL 4245359, at *5.   Other recent decisions are in accord, explicitly rejecting standing challenges to Misappropriation Statutes and other right of publicity laws.  *See e.g.*, *Martinez v. ZoomInfo Tech's*., *Inc.*, 2022 WL 1078630, at *4 (W.D. Wash. April 11, 2022) (finding Article III standing over plaintiffs California Misappropriation Statute claim); *Fraley v. Facebook*, Inc., 830 F. Supp.

---

[5]        Further, to explain the contours of the Misappropriation Statutes, legislatures have expressly invoked the statutes' common law foundations.  For example, the preamble to Puerto Rico's Misappropriation Statute states: "The current prevailing tendency both in civil statutory law and U.S. common law is the acknowledgement of the protection of one's likeness or right of publicity as an independent right….Case law has established that every person has the right to control where, when, and how his/her picture can be taken or how that person's likeness may be reproduced, if the same is not an accessory figure.  PR Legis. 139 (2011), 2011 Puerto Rico Laws Act 139 (S.B. 1750).  *See also* H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24, 1997) (sponsor of IRPA stated upon introducing bill "what this legislation does is it codifies the common law right of publicity in Illinois.").

2d 785, 796 (N.D. Cal. 2011) (same); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal.

2014) (California common law misappropriation claim) [6]; *Lukis v. Whitepages Inc.*, 549 F. Supp.

3d 798, 804–05 (N.D. Ill. 2021) (holding that IRPA violations confer Art. III standing).[7]

Defendant claims "numerous courts" have dismissed misappropriation claims on standing

grounds, but only cites to two cases in support.  Mot. at 7-8.  Neither is instructive.  Defendant's

main authority, *Callahan v. Ancestry.com, Inc.*, 2021 WL 2433893 (N.D. Cal. Jun. 15, 2021)

("*Ancestry*") has been repeatedly criticized for its insufficient *TransUnion* analysis, and regardless,

ignores the fact that Plaintiffs' claims here present injuries traditionally compensable at common

law, thereby satisfying the Article III standing requirements.  *See Sessa*, 2021 WL 4245359, at *5-

6 ("The Court declines to follow [*Ancestry's*] conclusion because its order did not address whether

the plaintiffs' statutory injury had a common law analogue."); *Martinez,* 2022 WL 1078630, at *5

(finding *Ancestry* "fails to convince," is inconsistent with California law, "without reasoning", and

"unpersuasive."); *Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, at *15 (N.D. Cal. Nov. 1,

---

[6]     Defendant attempts to diminish *Fraley* and *Perkins'* applicability by arguing that these were "endorsement" cases and not "use" cases, and asserting that the cases pre-dated the *Spokeo* decision.  (Mot., fn. 4).  Neither is a meaningful distinction.  First, as set forth in Section II, *infra*, violations of the Misappropriation Statutes may occur either by the non-consensual use of an identity "on or in" products (as here) or by use of an identity to endorse a separate product.  The means by which a defendant violates the statute – use or endorsement – are unimportant; for standing inquiry purposes under *TransUnion*, the injuries are the same – akin to the injuries compensable under common law misappropriation torts, regardless of the form of the violation.  *See Martinez,* 2022 WL 1078630 at *5 (W.D. Wash. April 11, 2022) (rejecting contention that non-celebrities only have standing to bring claims based on non-consensual endorsements as "not track[ing] with California law.")  Second, both *Fraley* and *Perkins* considered the plaintiffs' standing under the rubric of "concrete and particularized" and "actual and imminent" injuries.  *Fraley*, 830 F. Supp. 2d at 797 (N.D. Cal. 2011); *Perkins*, 53 F. Supp. 3d at 1207 (N.D. Cal. 2014).  Neither case equated Article III standing with the allegation of a bare statutory violation and as such, both are in accord with *Spokeo* and *TransUnion*.

[7]     There is also a legion of federal authority addressing the claims under the Misappropriation Statues and other statutes – including many of the cases Defendant cites in the Motion – where courts have addressed various aspects of the statutes, defenses, and how to calculate damages, but *not* Article III standing.  The fact that these decisions do not discuss Article III standing can only be understood to mean that the courts were convinced that there was standing over the claims.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties."); *see e.g.*, *Seigel v. ZoomInfo Tech's., Inc.*, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) (IRPA); *Knapke v. PeopleConnect Inc.*, No. 21-cv-262, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) (Ohio Misappropriation Statute); *Krause v. RocketReach, LLC*, No. 21-cv-1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) (IRPA), *Kolebuck-Utz v. Whitepages, Inc.*, No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) (Ohio Misappropriation Statute).

2021) (explicitly rejecting *Ancestry's* standing determination).   And, Defendant's second case, *Verde v. Confi-Chek, Inc.*, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021), is inapposite because, unlike there, here Plaintiffs specifically pled that Meredith sold, rented, and traded mailing lists containing indicia of identities to other participants in the data brokerage industry without their consent.   *See id.* at 5 (plaintiff did not plead that background reports containing her information were disclosed to a third party, failing to establish a sufficiently concrete injury for Article III standing).   *See, e.g.*, *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (holding that the unauthorized disclosure of magazine subscriber lists confers Article III standing).   As such, Plaintiffs have adequately stated a concrete injury for Article III standing.[8]

Finally, Meredith says that Plaintiffs lack Article III standing on the grounds that their allegations are "conjectural" and "hypothetical."   Mot. at 8. Defendant advances this argument only by incorrectly casting Plaintiffs' pleaded allegations as mere possibilities, *e.g.* that Plaintiffs have pled that their "names and addresses *may* appear on Meredith's subscriber lists" and the like. (Mot. at 9, emphasis original).   Again, Plaintiffs' allegations speak for themselves. (*See e.g.*, Comp. ¶ 48 ("By using Plaintiffs' and the Class members' names and likenesses on and in connection with its Data Brokerage Products, without their prior consent, Defendant has directly violated (and continues to direct violate) the California Statute, the Ohio Statute, the Puerto Rico Statute, the South Dakota Statue and the Washington Statute."); Comp. ¶ 49 ("Plaintiffs are informed and believe that, during the time period relevant to this action, Defendant…directed and oversaw the ... use of the names and likenesses of Plaintiffs and the members of the Classes…and

---

[8]          Plaintiffs also submit that *Verde* was wrongly decided.   As explained in *Lukis v. Whitepages Inc.*, well-pleaded violations of the IRPA are sufficient to confer Article III standing.   549 F. Supp. 3d at 804.   This is because, as *Lukis* recognized, in promulgating the IRPA the Illinois Legislature codified the common law tort of invasion of privacy such that the statute specifically provides that "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity."   *Id.* at 805.   Thus, the *Lukis* court found "violations of IRPA are an easy case under the governing [standing] test."   *Id.*

the advertising and sales of such Data Brokerage Products[.]".) There is nothing speculative about Meredith's commercial use, trafficking, and monetization of Plaintiffs' identities through its sales of mailing lists or the way Plaintiffs have pleaded their claims.

Plaintiffs' pleadings plainly establish that Plaintiffs have suffered concrete, traceable, redressable injuries. Plaintiffs therefore have Article III standing to bring these claims to this court and the Court should deny Defendant's Motion as to its lack of standing claim.

## II.   PLAINTIFFS STATE COGNIZABLE CLAIMS UNDER THE MISAPPROPRIATION STATUTES

The Misappropriation Statutes explicitly prohibit the nonconsensual use of a person's name or other indicia of identity "on or in" a product or service. The Misappropriation Statutes do not, as Meredith would have the Court believe, additionally require that the use of the person's name or other indicia of identity occur in connection with advertising or endorsing a separate product. Thus, the Complaint states claims under each of the Misappropriation Statutes, and the Motion should be denied.

### A.   The Misappropriation Statutes Explicitly Prohibit the Use of a Person's Name and Other Indicia of Identity "On or In" a Product or Service Without Consent

Each of the Misappropriation Statutes prohibits at least two things: the use of a person's name "on or in" a product, *and* the use of a person's name "for purposes of advertising or selling, or soliciting purchase of" a product. *See*, *e.g.*, Cal. Civ. Code § 3344 (the "California Statute"); *see also* note 1, *supra*. Meredith's Motion focuses almost exclusively on the separate, independent, and for purposes of this case, irrelevant, prong of these statutes that prohibits false or apparent endorsements, entirely ignoring the first prong (prohibiting the misappropriation of one's likeness), which is squarely at issue here. *See e.g.*, *Hillstrand v. Catch Planet, LLC*, 2013

11

WL 12114785, at *2 (W.D. Wash. 2013) (Mot. at 20) (considering misappropriation claim brought exclusively under the endorsement prong, not the use prong, of the Washington Statute).

The California Supreme Court's decision in *Comedy III* illustrates the distinction. In *Comedy III*, the defendant argued that the plaintiff had not established a violation of the California Statute because the defendant did not use the plaintiff's likeness "for the purpose of advertising, selling, or soliciting the purchase of, products or services." 21 P.3d at 801. But the California Supreme Court rejected that argument, explaining that the California Statute "makes liable any person who, without consent, uses [a plaintiff's likeness], either (1) 'on or in' a product, *or* (2) 'in advertising or selling' a product." *Id.* at 802 (emphasis in original). "The two uses are not synonymous: in the apt example given by the Court of Appeal, there is an obvious difference between 'placing a celebrity's name on a 'special edition' of a vehicle, and using that name in a commercial to endorse or tout the same or another vehicle.'" *Id.*

The same logic applies here. While it is conceivable that Meredith *could* use Plaintiffs' names and identities to advertise its products or services, *this* case is about its use of their identities "on or in" the Data Brokerage Products themselves, which the company sells and rents. Thus, contrary to Meredith's assertion, the Misappropriation Statutes are not "limited to the use of a person's identity for a covered commercial purpose: advertising, merchandising, marketing, endorsing, or promoting other products or services." Mot. at 15. Rather, using Plaintiffs' likenesses *on* or *in* the product or service – in this case, the Data Brokerage Products that Meredith sells and rents – is itself violative of the California statute. *See*, *e.g.*, *In re Clearview AI, Inc., Consumer Privacy Litig.*, 2022 WL 444135 at *11 (N.D. Ill. Feb. 14, 2022) (holding that under the California Statute, "plaintiffs need not allege that defendants used their photos or likenesses for purposes of advertising, selling, or soliciting"); *Callahan*, 2021 WL 5050079 at *16 ("Nothing

in the text of the [California Statute] suggests that an endorsement is required – only that the name or likeness be used.").

The same is true of the other Misappropriation Statutes, all of which (except Puerto Rico's, as explained below) by their plain text, independently prohibit the use of a person's name "on" or "in" a product or service, and *additionally* prohibit (in a separate prong of the disjunctively written "commercial purpose" definitions of each of the statutes) the use of a person's name to promote or advertise a product or service. *See*, *e.g.*, *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 922-23 (N.D. Ohio 2004) (agreeing that the sale of video containing plaintiff's image in it violated Ohio Statute "even if [the video] does not reference Defendants' other wares" for advertising purposes).

Meredith asserts that "the long-standing practice" of "the private sale of subscriber mailing lists to direct mail marketers" does not violate the Misappropriation Statutes. Mot. at 15. But that argument fails for several reasons. For one, as previously discussed, each of the statutes specifically defines "commercial purpose" to include the use of names "on or in" a product, without requiring an additional use of the name for advertising or endorsement purposes (uses which are prohibited in a separate, independent prong of the definition). *See* note 1, *supra*. Thus, the Court should reject Meredith's attempts to conflate these two independent, disjunctively written prongs of the Misappropriation Statutes' "commercial purpose" definitions. Second, Meredith includes its subscribers' names "on or in" lists that are sold, licensed, rented, exchanged, and otherwise disclosed to its various Data Brokerage Clients. These lists themselves plainly constitute products or goods (and the rentals of such lists plainly constitute services) that are sold for profit. As such, Meredith indisputably uses its subscribers' names and other identifying information "on or *in* products, goods, merchandise, or services," a "commercial purpose" specifically delineated in each of the Misappropriation Statutes. *See In re Clearview AI*, 2022 WL

444135 at *11 (plaintiffs stated a claim for commercial use of their photographs by alleging "the Clearview defendants knowingly used their photos by accessing the Clearview database for a profit").  Because it uses its subscribers' names in a product without their consent, Meredith violates the letter of the Misappropriation Statutes.

Since Plaintiffs' claims for relief are based entirely in the unambiguous plain language of the "use" prong of the Misappropriation Statutes, the cases cited by Meredith, which, in contrast, concern the "advertising" or "endorsement" prong (discussed at length below), are inapposite and have no bearing on Plaintiffs' claims.

### B.    Illinois and Virginia Right of Publicity Statutes Are Materially Distinguishable from the Misappropriation Statutes At Issue Here

Defendant's principal authority for its ill-founded contention that its data business does not violate the Misappropriation Statutes is *Huston v. Hearst Communications, Inc*., a recent decision in which a district court held that magazine publisher Hearst Communication, Inc.'s ("Hearst"), use of subscriber information on mailing lists was not a "commercial purpose" covered by the Illinois Right of Publicity Act ("IRPA").  Mot. at 15-16.  But *Huston* dealt with a different statute containing different statutory language.  It has no bearing here.

As detailed above, the Misappropriation Statutes (aside from Puerto Rico's) *specifically* prohibit the unconsented use of a person's identity "on or in connection with a … product."  Ohio Revised Code § 2741.01; *see also* note 1, *supra* and FAC ¶¶ 7-25 (detailing relevant portions of the California, South Dakota, and Washington Statutes (same)).  In contrast, IRPA does *not* contain this specific prohibition.  *See* 765 Ill. Comp. Stat. Ann. 1075/30(a).  Rather, IRPA defines "commercial purpose" as including three things—i.e., "the public use or holding out of an individual's identity (i) on or in connection with *the offering for sale or sale* of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products,

14

merchandise, goods, or services; or (iii) for the purpose of fundraising."  765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added).  In contrast, the Misappropriation Statutes (except for Puerto Rico's) do not contain language limiting the "use" prong to the "offering for sale or sale" of a product.

As explained below, Plaintiffs respectfully disagree with *Huston*'s holding under IRPA and, to the extent the Court finds it has any relevance here, believe the decision was wrongly decided.[9]  But regardless of whether *Huston*'s statutory analysis was right (as Defendant obviously believes) or wrong (as Plaintiffs would argue), the debate has no bearing here because the Misappropriation Statutes at issue here, outside of Puerto Rico's, *explicitly* forbid the unconsented use of a person's identity "on or in connection with a … product," without any requirement that said use be connected to advertising, endorsement, or promotion of a product.  *See*, *e.g.*, *Comedy III*, 21 P.3d at 801-02; *In re Clearview AI*, 2022 WL 444135; *Bosley*, 310 F. Supp. 2d at 922-23.

While the analysis is admittedly slightly different with respect to the Puerto Rico statute, which, in contrast to the other Misappropriation Statutes, defines "commercial purpose" as "[t]he use of a person's likeness *in connection with* an advertisement, offer, or *sale* of a product, merchandise, good or service in the market,"  32 L.P.R. § 3151(h) (emphasis added), the ultimate outcome is the same.  Arguably—and unlike any of the other Misappropriation Statutes—Puerto Rico's statute bears some resemblance to the language in IRPA, which defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or *in connection with the* offering for sale or *sale* of a product, merchandise, goods, or services."  765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added).  Thus, at best, a textual analysis of the IRPA could have some bearing to the claim brought under the Puerto Rico statute—but *not* to claims brought under the other Misappropriation Statutes, each of which specifically prohibits the use of identities "on or

---

[9]        *Huston* is currently on appeal to the U.S. Court of Appeals for the Seventh Circuit.

in" products.  In any event, under *both* the IRPA and Puerto Rico statute, it should be straightforward that Plaintiffs' names and identity information are being used "in connection with" the "sale" of the Data Brokerage Products because Meredith is *actually selling* their names and identity information to its Data Brokerage Clients.  *See Ayala Otero v. Rivera Nevis*, 2016 WL 5369286, at *20 (P.R. Ct. App. 2016) (Mot., Ex. C) ("if it is shown that the defendant used the image of a person for any lucrative or commercial purpose the aforementioned legislation grants the injured party…[a] statutory remedy.)  How much more "connected" to a "sale" could their identities possibly be?

Despite IRPA's plain language, the *Huston* court interpreted the statute as prohibiting only the use of another's identity "in connection with the *offer for sale* of any product or service to a third party."  *Huston*, 2022 WL 385176, at *3 (emphasis added).  The court in *Huston* appears to have ignored the statute's separate prohibition on uses of one's identity "on or in connection with the offering for sale *or* sale" of a product, good, or service.  Ill. Comp. Stat. Ann. 1075/5 (emphasis added).  The court's failure to appreciate the first prong of the IRPA's "commercial purpose" definition (concerning the use of a name in connection with the "sale" of a product) as separate and distinct from the second prong (concerning the use of identities in "advertising or promoting" goods or services) contravenes the principle that Illinois statutes should be interpreted "[i]n order that no part of the statute be rendered superfluous or meaningless."  *Gaylor v. Vill. Of Ringwood*, 363 Ill. App. 3d 543 (2006).  Instead of a robust statutory analysis, the *Huston* court simply relied on decisions addressing the second prong of the IRPA's "commercial purpose" definition (in cases where the litigants had not briefed the distinction between the two prongs) to broadly conclude that the IRPA in its entirety only "prohibits the use of an individual's identity to promote or entice the purchase of some other product."  *Huston*, 2022 WL 385176, at *2 (citing *Nieman v.*

*Versuslaw, Inc.*, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012))[10]. *See also id.* (citing and discussing *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018); *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013), *Lukis v. Whitepages Inc.*, 542 F.Supp.3d 831, 837-38 (N.D. Ill. 2020).[11]

But even if the Court were to follow *Huston* (which, for the reasons discussed herein, it should not), then—at best—it would arguably apply only to the claim brought under the Puerto Rico statute. Not the other Misappropriation Statutes, which specifically prohibit the use of identities "on or in" products.

For similar reasons, Meredith's reliance on *U.S. News & World Report, Inc. v. Avrahami*, 1996 WL 1065557 (Va. Cir. Ct. June 13,1996), concerning Virginia's Right of Publicity Statute, is likewise unavailing. (Mot. at 16-17.) Like the Illinois statute discussed in *Huston*, Virginia's publicity statute is materially different than the Misappropriation Statutes at issue here. Whereas the Misappropriation Statues explicitly prohibit the non-consensual use of an individual's name "on or in" a product, good, or service, the Virginia statute contains no such prohibition. Instead, the Virginia statute merely prohibits the non-consensual use of a name "for purposes of trade."

---

[10]     Notably, in *Nieman v. Versulaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), the court dismissed an IRPA claim finding the claim was non-cognizable over IRPA's express news and public account exceptions codified at 765 ILCS 35(b)(2). Meredith does not (and cannot) make a newsworthiness contention here.
[11]     The remainder of the *Huston* opinion is equally unpersuasive. For example, *Huston* suggests that Hearst's alleged conduct was "a standard practice in the direct mail industry." 2022 WL 385176, at * 3 (C.D. Ill. Feb. 7, 2022), citing *U.S. News & World Report, Inc. v. Avrahami*, 1996 WL 1065557 (Va. Cir. Ct. June 13 ,1996). But the fact that a practice is standard does not mean it is lawful; indeed, another court recently found that Hearst's so-called standard practices violate Michigan privacy law. *See Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 201-02, 206-07 (S.D.N.Y. 2017) (granting plaintiff's motion for summary judgment based on disclosures of same alleged Data Brokerage Products). Here, regardless of whether a publisher's conduct is a "standard practice," that conduct falls within the plain letter of the Misappropriation Statutes, including the Puerto Rico statute, and is illegal.

Va. Code. Ann. § 8.01-40;[12] *Berger v. Capitol Color Mail, Inc.*, 38 Va. Cir. 261 (1995) ("What constitutes use of a picture for 'purposes of trade' is not expressly defined by the statute."). *Avrahami* is thus of no value to interpreting the Misappropriation Statutes.  Moreover, there is no reason to assign any weight to the *Avrahami* opinion because it engages in no statutory analysis to support its "conclusion[] of law" that "[t]he inclusion of an individual name as part of a mailing list constitutes neither a use for an advertising purpose nor a use for the purpose of trade, as defined by the statute." *Id.* at *7.  Indeed, the *Avrahami* court—like the *Huston* opinion—conflates the "advertising" and "purpose of trade" prongs of the statute as both covering advertising and nothing else. *See id.* at *7 (citation omitted) ("The inclusion of a name as part of a larger mailing list for purposes of a direct mail solicitation does not constitute use of that name in the promotion of an actual product or service itself.").  Thus, *Avrahami* does not speak to whether Plaintiffs have stated claims under the Misappropriation Statutes.

### C.     The Misappropriation Statutes Prohibit More Conduct than the Common Law

Defendant also seeks to analogize the Complaint's claims to a litany of decisions involving common law publicity claims, most of which (again) involve "endorsement" claims rather than "use" claims.  These too are fundamentally inapposite.  For example, *Shibley v. Time, Inc*., 341 N.E.2d 337, 339 (Ohio Ct. App. 1975) (Mot. at 11, 18-19) involved an inherently dissimilar

---

[12]         In relevant part the Virginia Statutes states as follows:

> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. And if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award punitive damages.

Va. Code Ann. § 8.01-40 (West).

common law claim for invasion of privacy, which the court, citing *Prosser*, explained was limited to "public" displays indicating endorsement.   But, as explained below in Section III, the Ohio Statute, like all the Misappropriation Statutes on which Plaintiffs claims are based (a) has no "public display" requirement, and (b) sweeps far more broadly than just endorsement claims, encompassing use of an individual's persona "on or in connection with a place, product, merchandise, goods, services, or other commercial activities" as well.   Ohio Rev. Code § 2741.02(B)(1).   *See also Bosley*, 310 F. Supp. 2d at 922-23 (agreeing that the sale of video containing plaintiff's image violated Ohio Statute "even if [the video] does not reference Defendants' other wares" for advertising purposes).

The factual allegations of the Complaint present clear-cut, statutorily based entitlements to relief arising from Meredith's *non-consensual* inclusion of Plaintiffs' and the respective classes' identifying information "on or in" Meredith's Data Brokerage Products.   By contrast, cases like *Shibley* turn on the unique limitations of common law claims that are irrelevant to this case.   *See Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995) (cited in Mot. at 12-13) (finding plaintiff failed to state a claim for Illinois common law intrusion upon seclusion without any reference a statutory claim under IRPA) (Mot. at 19); *In re: Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (cited in Mot. at 23) (granting motion to dismiss California common law right of publicity claim without discussion of California Statute). The Misappropriation Statutes, enacted after extensive deliberations and input from industry experts and the like, reflect the judgment of these states to proscribe exactly the sort of conduct that Meredith is alleged to have committed in this case.   That certain common law requirements like those at issue in *Shibley* were left behind in the legislative process is unsurprising – but their omission matters. The plain statutory text must control.   This Court should decline Meredith's

invitation to second-guess the considered judgment of these legislative bodies by reading unwritten requirements into these statutory schemes.

For many of the same reasons stated above, Defendant's reliance on *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), where a court rejected a California right of publicity claim that involved the defendant's unconsented, direct sale of the plaintiff's personal information to third parties (Mot. at 17-18), misses the mark. There, the court found that the defendant did not "appropriate" the plaintiffs' identities because it did not use them either as "endorsements" of its product or for "promotional purposes, *i.e.*, to advertise or promote a separate product or service." *Brooks*, 2021 WL 3621837, at *4. Again, the court did not acknowledge the California right of publicity statute's language prohibiting the use of persons' identities "*on or in* products, merchandise, or goods" without consent. Cal. Civ. Code §3344(a) (emphasis added)*; see also Collection Bureau of San Jose v. Rumsey*, 6 P. 3d 713, 719 (2000) (a court must "give effect to the plain and express language of a statute"). Further, the court did not cite or discuss the California Supreme Court's decision in *Comedy III*, which expressly held that the two prongs "are not synonymous," and which confirmed that selling t-shirts with a likeness printed on them constituted a prohibited use of a likeness "'on . . . products, merchandise, or goods' within the meaning of the statute," even though there was no advertisement or promotion. *Comedy III*, 21 P.3d at 802. To compound that flaw, the *Brooks* court appears to have given dispositive, substantive weight to the fact that, historically, right of publicity claims—whether brought under state statutes or common law—address false endorsement or "promotion" claims. *Brooks*, 2021 WL 3621837, at *4 (collecting cases) ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service."). But just because "virtually all" cases address false endorsements or promotions does not give the court leeway to ignore the

express statutory language—*i.e.*, prohibiting the use of identities "on or in" commercial products— on which Plaintiffs' claims are based.  This Court should therefore follow the California Supreme Court's binding interpretation of the California Statute in *Comedy III*, not the *Brooks* court's non-binding interpretation.

## III.    PUBLIC USE IS NOT AN ELEMENT OF THE MISAPPROPRIATION STATUES

Defendant asserts that Plaintiffs have not stated claims under the Misappropriation Statutes because the statutes require that Plaintiffs allege a "public" use, which, according to Defendant, Plaintiffs have not done.  Mot. at 20-21.  Defendant is wrong – both about the pleading requirements and the facts pled.  To state a claim under the Misappropriation Statutes, a plaintiff need only allege the non-consensual use of her identity for a commercial purpose.  *See* fn. 1.  There is no public use requirement.  *See id.*; *see also Fraley*, 830 F. Supp. 2d at 806 (under the California statute "a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is "injured as a result thereof.").  Plaintiffs have plausibly stated violations of the Misappropriation Statutes by alleging Defendant used their names and other identity information in Defendant's Data Brokerage Products.

Defendant argues that because Plaintiffs' claims are "publicity" claims that it would be absurd not to require an element of public use under the Misappropriation Statutes.  (Mot. at 20-21.)  The argument is not well taken.  Regardless of how Defendant styles Plaintiffs' claims, the statutes under which they accrue have no public use element.

The California Statute does not once utter the term "publicity."  *See* Cal. Civ. Code 3344(a).  Neither does the Washington Statute.  *See* Wash. Rev. Code Ann. § 63.60.010, *et. seq.*  The Ohio and South Dakota statutes define the term "Right of Publicity", but without any reference to a

public use.  Ohio Rev. Code. Ann. § 2741.01; S.D. CODIFIED LAWS 26-64-1(3).[13]  Puerto Rico's

Statute considers publication of an individual's persona only as a factor the court considers in

determining damages.   *See* 32 L.P.R. § 3151 ("The court may award damages taking into

account…the value of the detrimental effect that the defendant act would have caused to the

plaintiff[.]").  However, even then, the Puerto Rico statute separately provides liquidated damages

as an alternative basis without regard to the fact of publication.  *Id.*  In short, none of these statutes

has any requirement that a defendant's non-consensual use of a plaintiff's identity be "public" to

be actionable.

Tellingly, Defendant does not even acknowledge these facts.  Instead, Defendant proffers

its self-serving public use requirement based on the bald assertion that the enforcement of the

Misappropriation Statutes against Defendant would be an "absurd result."   There is nothing

"absurd" about enforcing the letter of the law.  The legislatures of California, Ohio, Puerto Rico,

South Dakota and Washington have all deliberately determined that their residents have a right to

control the non-consensual use of their indicia of identity in products and merchandise.  These

legislatures drafted the use prongs of the 'commercial purpose' definitions of their

Misappropriation Statutes without any reference to a 'public use'.  This reflects a deliberate policy

choice by those jurisdictions' legislatures.  For example, the California Statute was promulgated

to broaden the scope of common law misappropriation claims to cover non-celebrities who

otherwise would not be able to prove damages at common law.  *See Callahan*, 2021 WL 5050079,

at *15 (Section 3344(a) "established a concrete remedy for the little man with a minimum of $300

payment.") (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008)).  The

---

[13]    The Ohio Statute defines the "Right of Publicity" as "the property right in an individual's persona to use
the individual's persona for a commercial purpose."   South Dakota defines the term as a "personality's property
interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or
mannerism."

fact that the legislatures opted not to impose a public use requirement is consistent with the Statutes' broad application and Defendant offers no ground to second-guess those legislative judgments. *See United States v. Turkette*, 452 U.S. 576, 580 (1981) (internal quotations omitted) ("If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."). If the legislatures had intended to add a public use requirement, they surely would have. *See e.g.,* IRPA, 765 Ill. Comp. Stat. Ann 1075/5 (defining "commercial purpose" as "the public use or holding out of an individual's identity (i) on or in connection with *the offering for sale or sale* of a product, merchandise, goods, or services…" (emphasis added)). Regardless of how Defendant characterizes it, Plaintiffs' claims assert exactly the rights provided for under the Misappropriation Statues.

Lacking any support within the plain language of the Misappropriation Statutes, Defendant yet again cites to cases construing common law claims which have no bearing on the statutes at issue. For example, Defendant cites to *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534, 551 (D.S.C. 2020) for the proposition that as to South Carolina's common law wrongful appropriation of personality tort, the non-consensual use of the plaintiff's name must be "public" to be actionable. The approach in *J.R.* was consistent with the South Carolina precedent on which it exclusively relied. *See id.* This is of no moment. Neither is Defendant's citation to *In re: Facebook, Inc.,* 402 F. Supp. 3d at 781, which involved a common law claim and did not discuss the California Statute.

Here, Plaintiffs' claims do not arise under the common law. Thus, the more apt decision is *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021). In *Knapke*, the defendant asserted that based on Ohio's common law, the plaintiff failed to state an Ohio Statute

claim because she had not alleged anyone saw her name and photo which she claimed were appropriated for a commercial purpose.  Noting that the use element was not part of the Ohio Statute, the Court stated "[Defendant] fails to explain why this element from common law false light claims should be imputed into [the Ohio Statute]. While courts may look to common law claims to help understand the [the Ohio Statute], none has imputed a new element into the [Statute] from common law tort.  The Court finds no valid basis to write a new provision into the [Ohio Statute]." *Id.*

The *Knapke* decision is instructive here.  The Misappropriation Statutes, as drafted, reflect the reasoned judgment of the California, South Dakota, Ohio, Puerto Rico, and Washington legislatures.  And as set forth above, it is no accident that these legislatures did not include a "public use" requirement.  Enforcement of these statutes as promulgated is, therefore, not absurd, but warranted.

Notwithstanding, even if a public use element were required—and it is not—the Complaint's well-pleaded allegations make clear that Defendant sold, rented, licensed, and otherwise distributed its Data Brokerage Products on the open market and to its downstream Data Brokerage Clients.  Plaintiffs specifically alleged that Defendant "sells, licenses, rents, exchanges, and otherwise discloses" to its Data Brokerage Clients its Data Brokerage Products, in which Plaintiffs names and other indicia of identity appear.  Comp. ¶3.  Further, Plaintiffs pled that these Data Brokerage Products were "offered for sale in…sold….and entered into commerce" (Comp. ¶43) and sold and trafficked "on the open market". (Comp. ¶¶47, 69, 94, 114).  Plaintiffs further alleged by these efforts to commercialize Plaintiffs' indicia of identity as included in the Data Brokerage Products, Defendant has reaped "significant profits" (Comp. ¶49), *e.g.* that Defendant has successfully monetized Plaintiffs' identity information that it offered on the open market.  It

is clear beyond dispute that, if required, Plaintiffs have alleged Defendant's "public use" of their identities in myriad ways. *See Siegel v. Zoominfo Techs., LLC*, No. 21 C 2032, 2021 WL 4306148, at *4 (N.D. Ill. Sept. 22, 2021) (analyzing under IRPA, finding allegations that defendant used plaintiff's identity "to advertise, promote, and offer for sale its monthly subscription for its database" satisfied the "holding out" aspect of "commercial purpose"). Therefore, even if Defendant's formulation of the Misappropriation Statutes at issue here were correct, which it is not, Plaintiffs have plausibly alleged claims for relief. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("To the extent the district court demanded that complaints plead facts—not only facts that bear on the statutory elements of a claim, but also facts that bear on judicially established standards—it was mistaken…It is enough to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint[.]'") (quoting *Twombly*, 550 U.S. at 563).

## IV.   PLAINTIFFS HAVE STATUTORY STANDING TO ASSERT CLAIMS UNDER THE MISAPPROPRIATION STATUTES

Defendant next asserts that Plaintiffs cannot state claims under the Misappropriation Statute because their claims fall outside of the "zone of interest" of these statutes and therefore Plaintiffs lack statutory standing. That argument strains credulity. Defendant's statutory standing argument is completely divorced from the relevant statutory text. Indeed, review of the statutes' plain language makes clear that Plaintiffs' claims are cognizable under the statutes.

The Misappropriation Statutes each recognize that individuals have an exclusive property right to use their personas for commercial purposes. *See e.g.*, Ohio Rev. Code § 2741.01 (defining "right of publicity"); Comp. ¶¶7-25. As such, the statutes establish a consent regime for the commercial use of an individual's persona. *E.g.*, Ohio Rev. Code § 2741.02. Where an individual's persona is appropriated for a commercial purpose without her consent, the

Misappropriation Statutes entitle individuals to actual and liquidated damages. *Id.* Further, each of the Misappropriation Statutes specifically provides individuals with a private right of action to enforce their rights under the Misappropriation Statutes. Ohio Rev. Code § 2741.06; Cal Civ. Code 3344(a); 32 L.P.R. § 3153; S.D. CODIFIED LAWS § 21-64-5; RCW 63.60.060.

A plaintiff may pursue a cause of action where the plaintiff's interests fall "within the zone of interests protected by the law." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014). In *Lexmark*, the Supreme Court looked to the Lanham Act's statutory text to determine the statute's zone of interest. *Id.* Based on the statute's stated purpose of safeguarding marks in trade and commerce, the Court deemed that a plaintiff advancing claims under the Lanham Act which "allege an injury to commercial reputation or sales" fall within the statute's zone of interest. *Id* at 131-32. Ultimately, the *Lexmark* plaintiffs were deemed to have statutory standing. *Id.* at 137.

Similar attention to the Misappropriation Statutes text compels the same finding. Plaintiffs here are individuals who allege they were aggrieved by Meredith's non-consensual use of their personas in Data Brokerage Products which it sold, rented, licensed, and otherwise distributed to others in the open market. Plaintiffs' claims as alleged seek to vindicate rights directly provided for by the plain text of the Misappropriation Statutes – Plaintiffs seek redress for the non-consensual appropriation of their personality rights by defendant for a commercial purpose, and do so under private rights of action authorized by the Misappropriation Statutes. As such, Plaintiffs are squarely within the Misappropriation Statutes' zone of interest. *See Coulter-Owens*, 695 F. App'x at 121 ("given that the [Michigan Preservation of Personal Privacy Act] contains an express private right to sue, it confers statutory standing on a person whose information was disclosed in

violation of it.")[14]

Unable to push Plaintiffs out of the Misappropriation Statutes' zone of interest by reference to the Misappropriation Statutes' text, Defendant essentially argues that Plaintiffs cannot state a claim under the Misappropriation Statutes because they have not alleged prejudice to their economic rights.  The argument is specious.  Since Plaintiffs have plausibly pleaded an entitlement to relief under the Misappropriation Statutes, they have adequately stated a claim.

Meredith cites *Comedy III* in support of its contention that the California Statute serves to safeguard a narrow economic interest.  (Mot. at 25).[15]  While that may be true as to celebrities such as the Three Stooges – *Comedy III* specifically mentions that the statute serves to "protect the fruits of a performing artist's labor" (*id.* at 803) – it is inaccurate as to non-celebrity plaintiffs.[16] Defendant essentially argues that a claim cannot be stated under the Misappropriation Statutes unless there is a provable nexus between a defendant's non-consensual use of a plaintiff's identity and the monetary damages suffered by a plaintiff.  But as discussed in Section II above, the California Statute purposefully encompasses claims of non-celebrity individuals whose monetary damages would be difficult, if not impossible to quantify when their likenesses are appropriated without their consent.  Indeed, "at common law, even individuals whose likenesses did not have inherent value could assert a property interest in their likeness."  *Sessa*, 2021 WL 4245359, *6 (citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:7 (5th ed. 2021).  As such, the California Statute (and indeed all the Misappropriation Statutes) sweep more

---

[14]     The Michigan Perseveration of Personal Privacy Act, also known as the Michigan's Video Rental Privacy Act ("VRPA"), prohibits sellers of written materials – like Defendant – from disclosing readers' identities to third-parties.  Mich. Comp. Laws § 445.1712.

[15]     Defendant primarily relies on California authorities to advance its argument, stating that the remaining jurisdictions' statutes protect the same economic interest.  Mot. at 27

[16]     Similarly, Meredith's citation to *Abdul-Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 416 (9th Cir. 1996) is not instructive because it involved a basketball's star claim of wrongful endorsement, not the rights of non-celebrities.

broadly than just compensating plaintiffs for the economic injury sustained by a wrongful appropriation of their personas on a dollar-for-dollar basis.

Under California law, a plaintiff states a claim under § 3344(a) by alleging (1) that the defendant used the plaintiff's identity; (2) the appropriation of the plaintiff's name for the defendant's advantage; (3) lack of consent; (4) that the plaintiff was harmed; (5) a knowing use by the defendant; and (6) a direct connection between the use and commercial purpose. *Fraley*, 830 F. Supp. 2d at 803. Here, though it is framed as a "statutory standing challenge," Defendant is essentially alleging that Plaintiffs have not alleged an actual injury, the fourth element of a statutory cause of action. Mot. at 29 ("In the sum, the injury Plaintiffs assert – essentially, Meredith's compiling and privately disclosing information about them to potential contractual counterparties – plainly falls outside the 'zone of interests' protected by the ROP Laws, and Plaintiffs therefore lack statutory standing.").

In *Fraley*, Judge Koh recognized that based on the plain language of § 3344(a) a plaintiff meets the burden to allege injury simply by alleging the first three elements of the statutory cause of action. 830 F. Supp. 2d 785, 807-808 (N.D. Cal. 2011). In relevant part, Judge Koh wrote:

> The statutory text … can be read to presume that a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is 'injured as a result thereof.' Consistent with this reading, at least one court has suggested, after surveying California court decisions, that 'courts generally presume that the fourth element of the applicable test has been established if there is sufficient evidence to prove the first three elements.'

*Id.* (quoting *Del Amo v. Baccash*, 2008 WL 4414514, at *6 (C.D. Cal. Sept. 16, 2008)). Indeed, *Del Amo* made clear that under the California Statute "so long as a plaintiff has demonstrated (1) use of plaintiff's identity, (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise, and (3) a lack of consent, a plaintiff need not demonstrate injury." 2008 WL 4414514, *6. It is beyond dispute that Plaintiffs have made these threshold

allegations with respects to all claims under each of the five misappropriation statutes and thus, as to each, have plausibly stated a claim for relief. But Plaintiffs' pleading goes further, and regardless of any applicable legal presumptions, Plaintiffs' entitlement to relief is adequately supported by well-pled facts.

Again, the allegations speak for themselves. In addition to pleading lack of consent to Meredith's inclusion of their personas in Meredith's Data Brokerage Products, each Plaintiff specifically alleges that their personas have "significant commercial value" (Comp. ¶ 46, ¶ 109, ¶ 128); and alleges that Meredith "reaped significant profits from its non-consensual sales of Data Brokerage Products" (Comp. ¶ 49); *see also* (Comp. ¶ 4). Further, each of the Plaintiffs specifically avers that Meredith's actions caused his or her injuries, and consequently seeks liquidated, actual, and other damages. Comp. ¶¶ 73-74, 86-87, 103-104, 118-19, 129.

Similar allegations were deemed sufficient to survive a comparable challenge to the sufficiency of a plaintiff's pleading an injury in *Martinez*, 2022 WL 1078630, at *4. In *Martinez*, the Court determined the plaintiff had sufficiently pled an economic injury by alleging, as Plaintiffs do here, that the plaintiff's personality rights had inherent value and that the defendant reaped profits through its appropriation. *Id.*; *See also Fraley*, 830 F. Supp. 2d at 810 ("At this stage, however, the Court finds [plaintiffs'] allegations of provable commercial value sufficient to survive a motion to dismiss and accordingly denies Defendant's 12(b)(6) motion with respect to the § 3344 claim"); *c.f. Motchenbacher v. R.J. Reynolds, Tobacco Co.*, 498 F.2d 821, 825-827, n. 11 (9th Cir. 1974) ("the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless."); *cf. Davis v. Facebook, Inc.*, 956 F.3d 589, 600 (9th Cir. 2020) (recognizing that under California law a claim

that defendant profited from unauthorized use of plaintiffs' personal data was sufficient injury to confer Article III standing, even where no economic loss has been suffered).[17]

Neither *Cohen v. Facebook*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) nor *Brooks*, 2021 WL 3621837, at *5 (cited in Mot. at 26 -29) address *Davis* or *Mochenbacher*, the key Ninth Circuit non-celebrity wrongful appropriation cases. These cases firmly establish that a non-celebrity may plead a cause of action for appropriation of likeness by pointing to a defendant's pecuniary gain from the appropriation. *See Mochenbacher*, 498 F.2d 821, 825 n.11 (9th Cir. 1974) (citing *Canessa v. J. I. Kislak, Inc.*, 235 A.2d 62, 75 (N.J. Super. Ct. Law. Div. 1967)); *see also Canessa*, 235 A.2d at 75 ("In the case of one not a public figure … we have a situation where there is no pecuniary or market value in the name, likeness, etc., of such a person until the defendant, by unlawfully appropriating the property rights in these aspects of plaintiff's personality, establishes a pecuniary value and a market for them (though the plaintiff has never attempted to market them). In such a case, the damages would be measured by the value to the defendant…"). *Cohen* and *Brooks*' failure to consider these precedential authorities is yet further grounds why they should not be followed.

Plaintiffs plainly have statutory standing to assert claims under the Misappropriation Statutes by the fact they have alleged that their rights under the statutes were infringed, that they were injured as a result, and that Defendant profited.

---

[17]    Defendant further asserts in footnote 16 that "the failure to allege …emotional injury also dooms the California Plaintiffs' claims for statutory damages under § 3344." Not so. Recent cases have completely repudiated *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011), upon which Defendant bases its argument. In *Callahan*, 2021 WL 5050079  the court characterized the notion that statutory damages under the CPRL require allegations of mental anguish as "strained on its face." *Id.* at *15; *see also Martinez*, 2022 WL 1078630 at *6 ("[T]he Court disagrees with ZoomInfo's contention that statutory damages under Section 3344 are limited to those who have alleged a mental injury."). Defendant also cites *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008) for the same proposition. However, *Callahan* agreed with the plaintiff's contention that "nothing in *Miller* or § 3344 suggests statutory damages are available *exclusively* for [mental injury]." 2021 WL 5050079, at * 16 (N.D. Cal. Nov. 1, 2021). The court in *Callahan* further observed that "Section 3344 on its face does not require that a plaintiff have suffered mental anguish in order to be awarded statutory damages." *Id.*

V.    **THE COMPLAINT'S ALLEGATIONS DEFEAT MEREDITH'S INCIDENTAL USE DEFENSE AT THE PLEADING STAGE**

Meredith next asserts that its inclusion of Plaintiffs' names and other indicia of identity in its Data Brokerage Products is merely incidental and therefore non-actionable.  The argument is at odds with Plaintiffs' well-pleaded allegations and common sense, and is therefore unavailing.  But more saliently, Meredith's incidental use claim is not well-taken at the pleading stage because it requires a factual inquiry.

Plaintiffs allege that Meredith "sold, licensed, rented, exchange[d], and otherwise disclosed to its various Data Brokerage Clients…on a per record basis… information [that] includes basic identifying information about each of Meredith subscribers (name, address, magazines subscribed to, among other such details) along with additional information received from the data aggregators and appenders," (Comp. ¶ 42) and that "as the subjects of commercial transactions, the aspects of Plaintiffs' likenesses that Defendant uses on or in connection with its products, services, or other commercial activities have significant commercial value." (Comp. ¶ 45).  Moreover, Plaintiffs plausibly allege that Meredith's use of Plaintiffs' and the proposed Class Members' names and identifying information is not incidental to Meredith's data brokerage business; rather, it is essential.  *See Stayart v. Google, Inc.*, 710 F. 3d 719, 723 (7th Cir. 2013) (evaluating privacy claim under Wisconsin statute finding plaintiffs state a cause of action where there is a "substantial rather than incidental connection between the use [of plaintiff's name, likeness, etc.] and defendant's commercial purpose.").  The Data Brokerage Products consist of Meredith's subscribers' identities, including their contact and demographic information.  The primary value these products have is the fact that they contain the identities of real individuals and a means to contact them.  Each use of Plaintiffs' names and identifying information in the Data Brokerage Products is another valuable lead to its Data Brokerage Clients. There is thus a direct relationship between the

number of individuals' information and quantity and quality of that data in the Data Brokerage Products, on the one hand, and the value that Meredith is able to extract for it on the other.[18]  The inherent commercial value of these lists is evidenced by the fact that they are bought, sold, and traded.  *See Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *2 (W.D. Wash. April 2021) ("To assert [an Ohio Misappropriation] claim, Plaintiff must only plead that there is some value in associating a good or service with her identity.") (citing *Harvey v. Systems Effect, LLC*, 154 N.E. 3d. 293, 306 (Ohio App. 2020)) (analyzing Ohio Misappropriation Statute); *see also Knapke*, 2021 WL 3510350, at *6 ("[T]here is no express element that someone in Ohio view the misappropriated likeness.").  Even the cases Defendant cites support that a claim of incidental use cannot lie where the use is tied to the commercial purpose.  *See Balsley v. LFP, Inc.*, 2010 WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010) (finding incidental use of plaintiff's photograph published in a magazine where the use did not serve the commercial purpose of endorsement stating: "the use of the photograph of Bosley does not imply that she uses, supports, or promotes Hustler magazine").

Importantly, at the pleading stage, the foregoing allegations plausibly state a claim for relief over Meredith's purported defense of incidental use.  *See Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 75 (S.D.N.Y. 1988) (denying motion to dismiss, where, upon applying Fed. R. 12(b)(6) standard and accepting a plaintiff's allegations as true, Defendant could not sustain incidental use as basis to avoid liability for violating New York Civil Rights law); *Upper Deck Co. v. Panini Am., Inc.,* 469 F. Supp. 3d 963, 986 (S.D. Cal. 2020) (denying motion to dismiss claim under California Statute noting "The Complaint alleges that the use of [Michael] Jordan's name was not incidental; therefore, the Court cannot determine as a matter of law that

---

[18]     The importance of each individual identity's use here is distinguishable from other compilations of identities, such as a picture of a crowded stadium, in which the overall photo's effect, or its value, is not impacted by the addition or any individual person.

Defendant's inclusion of Jordan's image in its trading cards was merely incidental.").[19]

Meredith's repeated claim that each individual is just "a miniscule percentage" of all names on the mailing list (Mot. at 32), does not change the analysis. The right of publicity is the "inherent right of *every human being* to control the commercial use of his or her identity." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) (emphasis added); see also *Callahan*, 2021 WL 5050079 at *14 (The statutory text makes no mention of preexisting value, and in fact can be read to presume that a person whose name, photograph, or likeness is used by another for commercial purposes without their consent is "injured as a result thereof.") (citing *Fraley*, 830 F. Supp. 2d at 808 (analyzing California Misappropriation Statute).   The basis of Plaintiffs' claims is that Meredith appropriates this valuable right from each of its subscribers by including their names and identity information in its Data Brokerage Products without consent.   That it does so on a massive scale does not excuse its conduct.   *See Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1255 (N.D. Cal. 2014) (stating "LinkedIn's alleged use of Plaintiffs' names and likenesses was critical, not incidental, to Defendant's commercial purpose" where plaintiffs' allegation was that LinkedIn sent email solicitations to subscribers' contacts and email contained subscribers' names and likenesses).

What is more, Defendant directly profited from the appropriation of Plaintiffs' personas; indeed that was the whole point.   Such use cannot be deemed incidental.   But at any rate, whether the use of a likeness is incidental is a factual question that cannot be resolved on the pleadings. *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 (9th Cir. 2015) (explaining that relevant factors

---

[19]   *Aligo v. Time-Life Books, Inc.,* 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994), upon which Meredith principally relies, changes nothing.   There the defendant claimed that the incidental inclusion of plaintiff's likeness in an infomercial was non-actionable because there was no direct connection between the use and the commercial purpose.   Here, a stark difference exists—the purposeful monetization of Plaintiffs' names and addresses in Meredith's Data Brokerage Products.

to determine incidental use include "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication.").  *See also Zoll v. Jordache Enterprises Inc.*, 2003 WL 1964054, at *20 (S.D.N.Y. Apr. 24, 2003) (finding incidental use was a jury question where unsuitable for resolution on a motion to dismiss); *Doe v. Darien Lake Theme Park & Camping Resort, Inc.*, 715 N.Y.S.2d 825, 826 (N.Y. App. Div.2000) (denying motion to dismiss finding incidental use to be a jury question).  As such, Meredith's contention turns on the as-yet-to-be-developed facts of its use of Plaintiffs' likenesses in its Data Brokerage Products and is therefore unsuited for resolution at the motion to dismiss stage.

## VI.   THE FIRST AMENDMENT DOES NOT PROTECT MEREDITH'S CONDUCT

Lastly, Meredith argues that the Misappropriation Statutes are content-based regulations that if applied to Meredith's conduct would impermissibly abridge Meredith's First Amendment rights.  (Mot. at 33).  That is wrong.  The Misappropriation Statutes regulate Meredith's commercial speech, and thus need only satisfy intermediate scrutiny, which they readily do.  As such, Meredith's 'as applied' challenge to the Misappropriation Statutes fails.

### A.    Plaintiffs' Claims Concern Purely Commercial Speech Warranting Only Intermediate Scrutiny

It is black-letter law that "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980).  *See also Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) ("[W]e engage in 'intermediate' scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in *Central Hudson*."); *Sorrell*

*v. IMS Health, Inc.*, 564 U.S. 552, 579 (2011) ("the government's interest in protecting consumers from commercial harms explains why commercial speech can be subject to greater governmental regulation than noncommercial speech.") (internal quotations omitted).   Commercial speech is "expression related solely to the economic interests of the speaker and its audience."  *Central Hudson*, 447 U.S. at 561.   Regulation of commercial speech is subject only to intermediate scrutiny, not strict scrutiny.  *See Vugo, Inc. v. City of New York*, 931 F.3d 42, 44 (2d Cir. 2019).

There can be no serious dispute that Meredith's Data Brokerage Products constitute commercial speech.   Indeed, in a comprehensive and well-reasoned decision, *Boelter v. Hearst Communications, Inc.*, the court concluded that fellow magazine publisher Hearst Communications, Inc.'s ("Hearst") transmission of its subscribers' identity information to third-parties was "commercial in nature."  192 F. Supp. 3d 427, 445 (S.D.N.Y. 2016).  *Boelter* concerned putative class action claims challenging Hearst's list brokering practices under Michigan's Video Rental Privacy Act ("VRPA"), a statute that prohibits sellers of certain written materials from disclosing readers' identities to third-parties.   The court reasoned that the speech at issue was "solely related to the economic interests of the speaker and audience," "relays an individual's economic preferences," and "facilitates the proposal of new commercial transactions."  *Id.* at 445 (internal punctuation and quotations omitted), citing *Conn. Bar. Ass'n v. United States*, 620 F.3d 81, 93 (2d Cir. 2010).   Accordingly, the *Boelter* court rejected Hearst's contention that the sale of its subscribers' identity information was non-commercial speech warranting strict scrutiny.   This same reasoning was applied by another court in *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 596-603 (S.D.N.Y. 2016).

The contours of the Misappropriation Statutes are identical to those of VRPA.   By their plain terms the Misappropriation Statutes all only cover the non-consensual use of the indicia of

identity for *commercial purposes*. *See Sessa* 2021 WL 4245359, at *14 ("[O]ur cases clarify that a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising.") (citing *Maloney v. T3Media, Inc*., 853 F.3d 1004, 1016 (9th Cir. 2017)).   Areas that historically implicate the First Amendment – newsgathering, the arts, politics, and the like – are expressly carved out of the Misappropriation Statutes' reach.   *See* Section I, *supra*. Additionally, the speech at issue is limited to identity information obtained from a commercial transaction (the subscription to a magazine), and therefore is of interest to only the subscriber, Meredith, and Meredith's Data Product Customers, not the public at large. *Cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759, 762-63 (1985) (a "credit report concerns no public issue," but rather is speech of "purely private concern" that is "solely motivated by the desire for profit" and is thus "of less First Amendment concern").   Moreover, Meredith communicates these lists for the express purpose of fostering other commercial transactions by third parties, and perhaps most saliently, for the purpose of generating a profit.  Thus, exactly as in *Boelter*, here, by every metric, "[Meredith's] disclosing consumer information is – primarily, if not entirely – an economic act." *Boelter*, 192 F. Supp. 3d at 445.

Indeed, the Misappropriation Statutes are analogous to laws that regulate how consumer information gathered in credit reports may be disseminated, which courts have uniformly analyzed under the commercial speech doctrine. *See*, *e.g*, *King v. Gen. Info. Svcs., Inc.*, 903 F. Supp. 2d 303, 307 (E.D. Pa. 2012) (in challenge to Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*., holding that "[t]he appropriate test for analyzing the reduced First Amendment protection accorded to consumer report information is the Supreme Court's commercial speech doctrine");  *Trans Union Corp. v. F.T.C.*, 267 F.3d 1138, 1141 (D.C. Cir. 2001) (FTC's restrictions on the sale of consumer reports was commercial speech subject to intermediate scrutiny); *see also United*

*Reporting Pub. Corp. v. Cal. Highway Patrol*, 146 F.3d 1133, 1137 (9th Cir. 1998). *rev'd on other grounds sub nom. Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999) ("United Reporting sells arrestee information to clients; nothing more…This is a pure economic transaction … comfortably within the core notion of commercial speech.") (internal quotations and citations omitted).

Meredith ignores this precedent and instead relies on cases involving phone books and directories which are easily distinguishable.  In *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 965 (9th Cir. 2012), for instance, the court found that phone books include both commercial speech (e.g., advertisements) as well as non-commercial speech (e.g., information of public concern about community events).  By contrast, here the alleged speech is purely commercial as set forth above, *see Vrodolyak v. Avvo*, 206 F. Supp. 3d 1384-1385-86, 1388 (N.D. Ill 2016) (describing an attorney directory as composed of "non-commercial" information) and does not convey information of public concern but rather information "of purely private concern," (*Dun*, 472 U.S. at 759) to Meredith and its Data Brokerage Clients.  *See also Boelter*, 192 F. Supp. 3d at 445.  *Dex Media* said nothing to suggest that the aggregate identity information of private individuals constitutes a matter of public concern, nor could it.

Similarly, *C.B.C. Dist. and Mkt'g, Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818 (8th Cir. 2007) bears no semblance to the claims at issue here.  *C.B.C. Dist.* involved the non-consensual use of major league baseball players' names and statistical information on a fantasy baseball game platform.  The Eighth Circuit reasoned that a plaintiff's First Amendment rights preempted the players' rights of publicity under Missouri law based on a host of obviously distinguishable factors.  That case involved speech that was for entertainment (*id.* at 823), that the court deemed was "expressive" (*id.*) and akin to a video game, and of public concern given

baseball's immense cultural significance. *Id* at 824.   The Court balanced these heightened First Amendment concerns against the fact that given that the case involved highly compensated professional baseball players and deemed the interests to be vindicated by the players' right of publicity, among them, the protection of their natural rights, were not especially compelling.  *Id.* This is obviously not the case here. Meredith's subscribers are not otherwise compensated at all for the inherent value of their names and personas.  *C.B.C. Dist.'s* holding is limited to its unique facts and thus has no application here.

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) is likewise inapt.  Meredith cites *Reed* for the proposition that strict scrutiny should apply to the Misappropriation Statutes because the restrictions are content- and speaker-based.  "However, *Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test."  *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015);  *California Outdoor Equity Partners v. City of Corona*, 2015 WL 4163346, at *10 (C.D. Cal. July 9, 2015) ("*Reed* does not concern commercial speech … The fact that *Reed* has no bearing on this case is abundantly clear from the fact that *Reed* does not even *cite Central Hudson*, let alone apply it.") (emphasis in original); *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 2015 WL 4365439, at *13 (N.D. Cal. July 16, 2015) (confirming that, despite the Supreme Court's ruling in *Reed*, commercial speech must be examined "under intermediate scrutiny, not strict scrutiny").

Accordingly, the Data Brokerage Products plainly consist of commercial speech subject to intermediate scrutiny.

**B.      The Misappropriation Statutes Survive Meredith's As-Applied Challenge**

Under *Central Hudson*, government regulation of commercial speech survives the First Amendment if: (1) the restriction seeks to further a substantial government interest; (2) the

restriction directly advances the government's interest; and (3) the restriction reaches no further than necessary to accomplish the objective. 447 U.S. at 564. Meredith's as-applied challenge fails because the Misappropriation Statutes are sufficiently proportional to advance a substantial state interest under *Central Hudson.*

There Is a Substantial Government Interest in Protecting the Individual Right of Publicity. The legislative determination that each individual has the exclusive right to control his or her likeness for commercial purposes animates each of the Misappropriation Statutes. *See*, *e.g.*, Ohio Rev. Code § 2741.01 ("'Right of publicity' means the property right in an individual's persona to use the individual's persona for a commercial purpose.") Wash Rev. Code. § 63.60.010 ("Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness."). This is a substantial state interest. *See Zacchini v. Scripps-Howard Broad. C*o., 433 U.S. 562, 573, 97 S. Ct. 2849, 2856, 53 L. Ed. 2d 965 (1977) (recognizing the state's interest in safeguarding the right of publicity is "closely analogous to the goals of patent and copyright law").

The Misappropriation Statutes Directly Advance the Interest in Protecting Individuals' Right of Publicity. The Misappropriation Statutes create a right of publicity and prohibit the commercial use of an individual's name, likeness, or identity without that individual's consent. This regime "reduces the likelihood" that a person's right of publicity will be infringed without their permission. *Boelter*, 192 F. Supp. 3d at 449. Moreover, the Misappropriation Statutes' exemptions for things like news reporting, political speech, and artistic expression are "narrow, sensible exceptions" which "do not handicap the law's ability to advance the state's goals." *Id.*

The Misappropriation Statutes Are Narrowly Drawn. The Misappropriation Statutes are sufficiently tailored to advance the aforementioned state interest without exceeding that purpose.

First, the Misappropriation Statutes are all limited to certain "commercial uses," *e.g.*, the sphere where an individual's property rights in their personality are uniquely implicated.   Second, specifically exempted from the Statute's reach are those areas that traditionally implicate heightened First Amendment protections; for example, newsworthy matters, reporting, political speech, artistic performance, and literally works among others.   By specifically including these exemptions, the legislatures that passed these statutes avoided unnecessarily regulating speech. *See Boelter*, 192 F. Supp. 3d at 449.

Nevertheless, Meredith baselessly asserts that "the [Misappropriation Statutes], as plaintiffs seeks to apply them, do nothing to advance the property interests animating them." (Mot. at fn. 35).   Meredith once again overlooks Plaintiffs' well-pled allegations and the plain language of the Misappropriation Statutes. As set forth in the Complaint, Meredith's Data Brokerage Products exploit the commercial value of Plaintiffs' identity information without Plaintiffs' consent.   Indeed, the products *only* have value because Plaintiffs' identities are in the products. The Misappropriation Statutes serve to keep actors like Meredith from commercially exploiting individuals' indicia of identity without their consent.   With consent – which, ostensibly, would come at a price – Meredith would be free to sell and share identity information in any manner otherwise consistent with the law.

As such, the Misappropriation Statutes strike an appropriate balance between the First Amendment and a valid state interest, and critically, do not violate the First Amendment.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Dated:  April 25, 2022

Respectfully submitted,

By: */s/ J. Barton Goplerud*
J. Barton Goplerud

J. Barton Goplerud, AT0002983
Gary W. Kendell, AT0004203
**SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.**
5015 Grand Ridge Drive,
West Des Moines, IA 50265
Tel: (515) 223-4567
Fax: (515) 223-8887
Goplerud@sagwlaw.com
Kendell@sagwlaw.com

Philip L. Fraietta*
Julian C. Diamond**
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com
jdiamond@bursor.com

Ari J. Scharg**
Benjamin Thomassen**
Michael W. Ovca*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
ascharg@edelson.com
bthomassen@edelson.com

Frank S. Hedin*
Arun G. Ravindran*
**HEDIN HALL LLP**
1395 Brickell Ave, Ste 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 800-2201
aravindran@hedinhall.com

41

fhedin@hedinhall.com

Thomas L. Laughlin, IV**
Joseph P. Guglielmo*
Erin G. Comite*
Sean T. Masson*
Carey Alexander*
**SCOTT+SCOTT LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
tlaughlin@scott-scott.com
jguglielmo@scott-scott.com
ecomite@scott-scott.com
smasson@scott-scott.com
calexander@scott-scott.com

*Pro Hac Vice*
**Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2022, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ J. Barton Goplerud_____

42