# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| JOAN BURKE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00335<br>Judge Rebecca Goodgame Ebinger<br>Magistrate Judge Stephen B. Jackson, Jr.<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MEREDITH CORPORATION'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Oral Argument Scheduled<br>Date: June 13, 2022<br>Time: 1:00 p.m.<br>Room: Room 160 - 1st Floor North |
| ADELE HETZEL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00341 |
| MARIBEL RAMIREZ, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00344 |
| BELINDA POWERS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>*Defendant.* | Case No. 4:21-cv-00350 |

| | |
|---|---|
| SHARON MCKINNEY, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff,*<br><br>   v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant.* | Case No. 4:21-cv-00360 |
| CANDYCE MARTO-MAEDEL, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff,*<br><br>   v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant.* | Case No. 4:21-cv-00366 |
| NORMA GOLDBERGER, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff,*<br><br>   v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant.* | Case No. 4:21-cv-00367 |
| JULIE BEACH, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff,*<br><br>   v.<br><br>MEREDITH CORPORATION,<br><br>         *Defendant.* | Case No. 4:21-cv-00376 |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      PLAINTIFFS LACK ARTICLE III STANDING ............................................................ 2

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE RIGHT-OF-PUBLICITY LAWS ......................................................................................... 7

        A.     Plaintiffs' Construction of the ROP Laws' Commercial Use Terms is Contrary to Case Law and the Plain Meaning of the Statutory Text .................... 7

        B.     Plaintiffs Fail to Explain Why the Court Should Disregard Decades of Mailing List Cases Dismissing Analogous Claims ............................................. 10

        C.     The ROP Laws Must Be Construed in Light of the Common Law, Which Requires Public Use ................................................................. 13

        D.     Plaintiffs Lack Statutory Standing ...................................................................... 16

        E.     Any Alleged Use of Plaintiffs' Names Was a Non-Actionable Incidental Use ...................................................................................................... 19

III.    THE FIRST AMENDMENT BARS PLAINTIFFS' PROPOSED APPLICATION OF THE ROP LAWS.................................................................................... 20

CONCLUSION................................................................................................................. 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aligo v. Time-Life Books, Inc.*,
    No. C 94-20707 JW, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994)..................................19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................14, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. (2007)......................................................................................................................14, 16

*Boelter v. Hearst Communications, Inc.*,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016)..................................................................................23, 26

*Bolger v. Youngs Drug Products. Corp.*,
    463 U.S. 60 (1983)................................................................................................................21, 22

*Bosley v. Wildwett.com*,
    310 F. Supp. 2d 914 (N.D. Ohio 2004).................................................................................8, 9

*Brooks v. Thomson Reuters Corp.*,
    No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ................8, 9, 14, 17

*C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media,*
    *L.P.*,
    443 F. Supp. 2d 1077 (E.D. Mo. 2006), *aff'd*, 505 F.3d 818 (8th Cir. 2007).........................22

*C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media,*
    *L.P.*,
    505 F.3d 818 (8th Cir. 2007) ...............................................................................17, 20, 21, 22

*C.H. Robinson Worldwide, Inc. v. Lobrano*,
    695 F.3d 758 (8th Cir. 2012) ...............................................................................................19, 20

*Callahan v. Ancestry.com Inc.*,
    No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ......................................7

*Callahan v. PeopleConnect, Inc.*,
    No. 20-CV-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ....................................9

*Canessa v. J. I. Kislak, Inc.*,
    235 A.2d 62 (N.J. Super. Ct. Law. Div. 1967) .......................................................................18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
    447 U.S. 557 (1980)...................................................................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chapman v. Yellow Cab Coop.*,
 875 F.3d 846 (7th Cir. 2017) ..............................................................................14

*City of Cincinnati v. Discovery Network*,
 507 U.S. 410 (1993)..........................................................................................24, 25

*Clapper v. Amnesty Int'l, USA*,
 568 U.S. 398 (2013)................................................................................................6

*In re Clearview AI, Inc., Consumer Privacy Litigation*,
 No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022)............................9, 17

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
 21 P.3d 797 (Cal. 2001) .........................................................................................8

*Coulter-Owens v. Time Inc.*,
 695 F. App'x 117 (6th Cir. 2017) .......................................................................5, 17

*Davis v. Elec. Arts Inc.*,
 775 F.3d 1172 (9th Cir. 2015) ..............................................................................20

*Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*,
 956 F.3d 589 (9th Cir. 2020) ................................................................................19

*Del Amo v. Baccash*,
 CV 07-663-PSG, 2008 WL 4414514 (C.D. Cal. Sept. 16, 2008)..........................18

*Dex Media W., Inc. v. City of Seattle*,
 696 F.3d 952 (9th Cir. 2012) ................................................................................22

*Dobrowolski v. Intelius, Inc.*,
 No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)...........................11

*Doe v. Darien Lake Theme Park & Camping Resort, Inc.*,
 715 N.Y.S.2d 825 (App. Div. 2000) ......................................................................20

*Douglas v. Hustler Magazine, Inc.*,
 769 F.2d 1128 (7th Cir. 1985) ................................................................................5

*Downing v. Abercrombie & Fitch*,
 265 F.3d 994 (9th Cir. 2001) .............................................................................5, 13

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
 472 U.S. 749 (1985).............................................................................................23

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gatlin ex Rel. Estate of Gatlin v. Green*,
   362 F.3d 1089 (8th Cir. 2004) ............................................................................16

*ETW Corp. v. Jireh Publ'g, Inc.*,
   332 F.3d 915 (6th Cir. 2003) ..............................................................................13

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ......................................................5, 17, 18

*Goodman v. Lozano*,
   223 P.3d 77 (Cal. 2010) ......................................................................................16

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
   527 U.S. 173 (1999)...............................................................................22, 24, 25

*Green Mountain Sch. Dist. No. 103 v. Durkee*,
   351 P.2d 525 (Wash. 1960)..................................................................................14

*Huston v. Hearst Commc'ns, Inc.*,
   No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb 7, 2022) .............................10, 11

*J.R. v. Walgreens Boots Alliance, Inc.*,
   470 F. Supp. 3d 534 (D.S.C. 2020).....................................................................14

*Johnson v. Rapid City Softball Ass'n*,
   514 N.W.2d 693 (S.D. 1994) ...............................................................................13

*King v. Gen. Info. Servs., Inc.*,
   903 F. Supp. 2d 303 (E.D. Pa. 2012) ..................................................................23

*Knapke v. PeopleConnect Inc.*,
   553 F. Supp. 3d 865 (W.D. Wash. 2021)..............................................................15

*L.A. Police Dep't v. United Reporting Publ'g Corp.*,
   528 U.S. 32 (1999)...............................................................................................23

*Leider v. Lewis*,
   394 P.3d 1055 (Cal. 2017) ..................................................................................13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).............................................................................................16

*A.L. ex rel. Limkemann v. Jake's Fireworks, Inc.*,
   456 F. Supp. 3d 1074 (S.D. Iowa 2020) ................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lukis v. Whitepages Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ...................................................................5

*Martin v. Struthers*,
319 U.S. 141 (1943) ...........................................................................................23

*Martinez v. ZoomInfo Tech. Inc.*,
No. C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ............5, 18

*Missouri Broadcasters Ass'n v. Schmitt*,
946 F.3d 453 (8th Cir. 2020) ........................................................................24, 25

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
498 F.2d 821 (9th Cir. 1974) ..............................................................................18

*In re Parentage of L.B.*,
122 P.3d 161 (Wash. 2005) ................................................................................13

*People v. Escambrón Beach Club*,
63 P.R. Dec. 761 (1944) ......................................................................................14

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................5

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1222 (N.D. Cal. 2014) ................................................................19

*Porous Media Corp. v. Pall Corp.*,
173 F.3d 1109 (8th Cir. 1999) ............................................................................22

*Radio Today, Inc. v. Westwood One, Inc.*,
684 F. Supp. 68 (S.D.N.Y. 1988) .......................................................................19

*Revolutionar, Inc. v. Gravity Jack, Inc.*,
13 Wash. App. 2d 1044 (2020) ...........................................................................13

*Roberson v. Rochester Folding Box Co.*,
171 N.Y. 538, 64 N.E. 442 (N.Y. Ct. App. 1902) ................................................4

*Safeco Ins. Co. of America v. Burr*,
551 U.S. 47 (2007) .............................................................................................23

*Sarver v. Chartier*,
813 F.3d 891 (9th Cir. 2016) ..............................................................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sessa v. Ancestry.com Operations Inc.*,
   No. 220CV02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021).........................5, 18

*Shaw v. Railroad Co.*,
   101 U.S. 557 (1879)..................................................................................................13

*Shibley v. Time, Inc.*,
   341 N.E.2d 337 (Ohio Ct. App. 1975)......................................................................4

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)....................................................................................25, 26, 27

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)............................................................................................2, 3, 7

*Stanley v. Georgia*,
   394 U.S. 557 (1969)..................................................................................................23

*State v. Tolliver*,
   19 N.E. 3d 870 (Ohio 2014)....................................................................................15

*State v. Vorys*,
   56 Ohio St. 2d 107 (1978)........................................................................................13

*Stayart v. Google Inc.*,
   710 F.3d 719 (7th Cir. 2013) ..................................................................................19

*Tovar v. Essentia Health*,
   857 F.3d 771 (8th Cir. 2017) ..................................................................................18

*Trans Union Corp. v. FTC*,
   267 F.3d 1138 (D.C. Cir. 2001) ..............................................................................23

*TransUnion v. Ramirez*,
   141 S. Ct. 2190 (2021)....................................................................................2, 3, 4, 5

*U.S. News & World Report, Inc. v. Avrahami*,
   No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996).........................10, 12

*United Reporting Publishing Corp. v. California Highway Patrol*,
   146 F.3d 1133 (9th Cir. 1998) ................................................................................23

*Upper Deck Co. v. Panini Am., Inc.*,
   469 F. Supp. 3d 963 (S.D. Cal. 2020)......................................................................19

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Van Nuys Pub. Co. v. City of Thousand Oaks,*
 5 Cal.3d 817 (Cal. 1971)..........................................................................................23

*Verde v. Confi-Chek, Inc.,*
 No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021)...........................6, 7

*Vinci v. Am. Can Co.,*
 591 N.E.2d 793 (Ohio Ct. App. 1990)..................................................................20

*Vt. Agency of Natural Res. v. United States ex rel. Stevens,*
 529 U.S. 765 (2000)................................................................................................3

*Zoll v. Jordache Enterprises Inc.,*
 No. 01 CIV. 1339 (CSH), 2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ...............20

**Statutes**

765 Ill. Comp. Stat. 1075/5 ............................................................................................11

Cal. Civ. Code
 § 3344........................................................................................................ *passim*
 § 3344(a) ...............................................................................................11, 27
 § 3344(d) ....................................................................................................25
 § 3344(f).....................................................................................................25

Mich. Comp. Laws § 445.1712.................................................................................5, 6, 17

Ohio Rev. Code Ann. § 2741.07(D)(1)..............................................................................27

Ohio Rev. Code
 § 2741.01..................................................................................................10
 § 2741.01(B)(1)..........................................................................................11
 § 2741.02(D)(1)..........................................................................................25
 § 2741.02(E) ..............................................................................................25
 § 2741.07(D)(1)..........................................................................................27
 § 2741.09(A)(1)(a)......................................................................................25
 § 2741.09(A)(1)(c)......................................................................................25
 § 2741.09(A)(1)(d)......................................................................................25
 § 2741.09(A)(5) .........................................................................................25

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

P.R. Laws Ann. tit. 32
§ 3151...........................................................................................................10
§ 3151(d).......................................................................................................20
§ 3151(h).......................................................................................................12
§ 3154...........................................................................................................13
§ 3157(a).......................................................................................................25
§ 3157(b).......................................................................................................25
§ 3157(c).......................................................................................................25
§ 3157(g).......................................................................................................20

S.D. Codified Laws
§ 20-9-12.......................................................................................................13
§ 20-9-13.......................................................................................................13
§ 21-64-1.......................................................................................................10
§ 21-64-1(1)..................................................................................................12
§ 21-64-6(1)..................................................................................................25
§ 21-64-6(3)..................................................................................................25
§ 21-64-6(4)–(5)...........................................................................................25

Va. Code Ann. § 8.01-40.....................................................................................12

Wash. Rev. Code
§ 63.60 *et seq.* ...........................................................................................13
§ 63.60.050...................................................................................................12
§ 63.60.060(5)...............................................................................................27
§ 63.60.070(1)...............................................................................................25
§ 63.60.070(2)(a)..........................................................................................25
§ 63.60.070(2)(b)..........................................................................................25
§ 63.60.070(2)(d)..........................................................................................25
§ 63.60.070(4)...............................................................................................25
§ 63.60.070(6)...............................................................................................20

**Other Authorities**

Hearing on South Dakota H.B. 1225 Before the House Judiciary Committee at
41:48–42:23, 90th Leg. Sess. (S.D. 2015),
https://sdpb.sd.gov/sdpbpodcast/2015/hju23.mp3 .............................................13

Restatement 3d of Unfair Competition § 47 cmt. b (1995) ............................22, 24, 27

Rule 12(b)(1).........................................................................................................27

Rule 12(b)(6).....................................................................................................19, 27

"*In*," prep., Lexico.com, https://www.lexico.com/en/definition/in (last visited
May 11, 2022)...................................................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*"On,"* prep., Lexico.com, https://www.lexico.com/en/definition/on (last visited
   May 11, 2022) ....................................................................................................................10

*"Connection,"* n., Lexico.com, https://www.lexico.com/en/definition/connection
   (last visited May 11, 2022) .................................................................................................10

*"Product,"* n., Lexico.com, https://www.lexico.com/en/definition/product (last
   visited May 11, 2022) ..........................................................................................................12

## INTRODUCTION

The right-of-publicity statutes at issue here ("ROP Laws") all require *publicity* in connection with the sale of a separate product or service; in Plaintiffs' words, their identities must be "publicly used and held out . . . for commercial purposes." *See* Opp'n at 6. Plaintiffs nevertheless urge the Court to ignore this fundamental precept and stretch the ROP Laws beyond their breaking point to find they outlaw the private sale of magazine subscriber lists. This interpretation is not supported by the plain text of the statutes, their legislative history, the caselaw, or common sense. That is why Plaintiffs have not identified a single case where a court has permitted a right-of-publicity claim involving mailing lists to proceed. Plaintiffs' failure to allege publicity or the separate product requirement requires dismissal of their claims.

There is no need to reach the merits of Plaintiffs' claims, however, as they lack standing. On this point, Plaintiffs do not deny that they allege bare statutory violations, without more. They contend that alleging bare violations of the ROP Laws should suffice to establish an "intangible harm" for purposes of Article III. *See* Opp'n at 7. This argument misses the mark. It ignores that the standing inquiry must be individualized as to each plaintiff, and it wrongly assumes that the ROP Laws—the earliest of which dates to 1971, and for which a common law analogue did not exist until the early 20th century—protect against harms traditionally recognized by English or American courts. Plaintiffs' standing argument also is defective because it rests on numerous speculative inferences. Indeed, Plaintiffs' failure to allege that they themselves have seen their names on any Meredith subscriber list dooms their ability to assert a concrete injury.

Plaintiffs' opposition also fails to meaningfully address Meredith's affirmative defenses, which foreclose Plaintiffs' expansive interpretation of the ROP Laws. Contrary to the basic principles of the incidental use doctrine, Plaintiffs urge the Court to consider the aggregate use of

subscriber names in general rather than the use of Plaintiffs' names specifically, as required.

Plaintiffs' treatment of Meredith's First Amendment defense is equally faulty, jumping straight

to the erroneous conclusion that mailing lists are "commercial speech" and that, as applied, the

ROP Laws breeze through the constitutional inquiry. Both defenses bar Plaintiffs' claims.

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs' opposition fails to explain how the Complaint plausibly alleges a concrete

harm that is individualized to *them*. Nor does it explain how the ROP violations alleged *here* are

analogous to the sort of intangible reputational harm recognized in *TransUnion v. Ramirez*, 141

S. Ct. 2190 (2021). Plaintiffs have failed to demonstrate standing, and their claims should be

dismissed.

Plaintiffs argue they have plausibly pleaded an injury in fact simply by alleging

violations of the ROP Laws. They assert that because courts have held that plaintiffs in other

statutory ROP cases sufficiently alleged injury, Plaintiffs here need only plead violations of ROP

Laws and need not plead individual concrete harm. *See* Opp'n at 5–6. This generalized theory of

injury is foreclosed by controlling Supreme Court authority holding that the Article III inquiry

must be individualized. *See, e.g., TransUnion*, 141 S. Ct. at 2203 ("Requiring a plaintiff to

demonstrate a concrete and particularized injury caused by the defendant and redressable by the

court ensures that federal courts decide only 'the rights of individuals.'") (citation omitted);

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (no Article III injury where plaintiff alleged his

statutory rights were violated but the violation was "divorced from any concrete harm" to that

plaintiff).

Plaintiffs misstate Meredith's argument about why *TransUnion* bars standing in this case.

The question is not—as Plaintiffs misconstrue it—whether an alleged violation of an ROP Law

could *ever* be sufficient to confer standing. *See* Opp'n at 5–10. The question is whether the harm

Plaintiffs allege *in this case* is enough to clear the Article III hurdle. It is not. That is because

Plaintiffs concededly do not know and therefore have not alleged that their names appear on any

list *actually sold* to a third party. *See* Opp'n at 3; Mot. at 6–9; Compl. ¶ 47 ("[Meredith's]

customers remain unaware that their identities are being trafficked in the open market in this

way."). As in *TransUnion*, without specific allegations that *these Plaintiffs'* names were on a list

that was actually publicized, the Court cannot infer that such a disclosure was made or that injury

to an individual Plaintiff could have resulted. *See* Mot. at 6–9; *TransUnion*, 141 S. Ct. at 2211–

12 (no injury where plaintiffs could not "demonstrate that the risk of future harm materialized—

that is, that the inaccurate OFAC alerts in *their* . . . credit files were ever provided to third

parties") (emphasis added).

    Plaintiffs also argue that merely alleging statutory ROP violations is enough to establish a

concrete injury because those laws have "a close relationship to a harm that has traditionally

been regarded as providing a basis for a lawsuit in English or American courts." Opp'n at 7

(citing *Spokeo*, 578 U.S. at 341). This, too, is incorrect. *Spokeo* said nothing about whether the

ROP Laws (or the common-law right of publicity) has a "close relationship" to traditional harms.

578 U.S. at 341–42. The case on which *Spokeo* relied for the concept of a "traditional" harm, *Vt.*

*Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774–77 (2000), involved

*qui tam* actions, which "originated around the end of the 13th century" and existed in "England

and the American Colonies." *Id.* at 774. The same cannot be said for the ROP Laws, the earliest

of which became law in 1971, or even the common-law right of publicity, which was first

recognized in this country in the twentieth century. *See* Mot. at 10–11. And, in any event,

*TransUnion* cautions that "history and tradition" are "not an open-ended invitation for federal

courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." 141 S. Ct. at 2204. There is no basis to loosen Article III here.

Furthermore, an intangible harm can qualify as an injury in fact only where there is a close historical analogue for an injury *that Plaintiffs have actually experienced*. *See id*. at 2205. Thus, in *TransUnion*, the Supreme Court found that only those plaintiffs whose credit reports both labeled them as potential terrorists *and* were disclosed to third-party creditors, had alleged the type of historically accepted intangible harm—defamation—sufficient to confer standing. *Id.*

By contrast, here, Plaintiffs argue that they experienced intangible harm to their "exclusive property rights in the commercialization of their names and identities, plain and simple." Opp'n at 6. But Plaintiffs cite no authority for a close historical or common-law analogue to such a broad "anti-commercialization" right. Opp'n at 6.[1] The history of the common law right of publicity shows that it is most accurately characterized as a right to control (and be compensated for) when and how one's identity is publicized to draw attention to a product, like using a baseball player's image to sell gum. *See* Mot. at 10–13. Plaintiffs do not allege they were denied this right; instead, they claim their names might appear on privately exchanged mailing lists along with hundreds of thousands of other names. *See* Compl. ¶¶ 38–49, 56, 62–129. Plaintiffs cite no authority for the proposition that there is a historical property right to keep one's name off a subscriber list, Opp'n at 7, and courts have uniformly rejected this as a cognizable injury. *See* Mot. at 15–20 (*citing, e.g., Shibley v. Time, Inc*., 341 N.E.2d 337, 339 (Ohio Ct. App. 1975)).

---

[1] The absence of a close historical or common-law analogue is apparent from *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538, 556, 64 N.E. 442 (N.Y. Ct. App. 1902), where the New York Court of Appeals surveyed both U.S. and English law to find no remedy at law or in equity where a plaintiff's likeness was affixed to flour sacks without her consent.

None of the cases Plaintiffs cite confer standing based on the type of purported harm alleged here. *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), and *Douglas v. Hustler Magazine, Inc.*, 769 F.2d 1128 (7th Cir. 1985), did not analyze standing at all, and the cases are inapposite. The other cases Plaintiffs cite involved qualitatively different harms, like trading on a person's familiarity to others, as each entailed the nonconsensual public use of identities to advertise or promote separate products.[2]

Unable to show the sort of intangible harm required by *TransUnion*, Plaintiffs attempt to divert the analysis to whether they suffered harms recognized under "privacy torts." Opp'n at 8. Of course, Plaintiffs do not allege privacy violations. Tellingly, the sole case Plaintiffs cite for this point—*Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017)—involved Michigan's Preservation of Personal Privacy Act ("PPPA"), which is not a right-of-publicity statute and is modeled after the federal Video Privacy Protection Act. *See* Opp'n at 10. The PPPA, unlike the ROP Laws, makes it unlawful for a person "engaged in the business of selling at retail . . . written materials . . . [to] disclose to *any person*, other than the customer, a record or

---

[2]  *See, e.g., Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) ("The complaint alleges that Whitepages used Lukis's identity—reflected by her name, age range, and city of domicile, along with the names of some of her relatives—in free previews used to advertise, promote, and offer for sale its monthly subscription services."); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806, 809 (N.D. Cal. 2011) (traditional right-of-publicity injury from purported "personal endorsement[s] of Facebook advertisers' products"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1211 (N.D. Cal. 2014) (plaintiffs' names "used to endorse or advertise a product to the individuals' friends and contacts"); *Martinez v. ZoomInfo Tech. Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *3–4 (W.D. Wash. Apr. 11, 2022) (traditional right-of-publicity injury involving unauthorized use of plaintiff's name and photo in advertisements where, unlike here, plaintiff alleged mental injury and that she was "denied the economic value from defendant's non-consensual" advertising use); *Sessa v. Ancestry.com Operations Inc.,* No. 220CV02292, 2021 WL 4245359, at *5–6 (D. Nev. Sept. 16, 2021) (use of plaintiffs' "names and likenesses to motivate a decision to purchase a particular product or service" through "targeted email advertising to Plaintiffs' relatives to advertise Ancestry's subscription services") (citation omitted).

information that personally identifies the customer as having purchased, leased, rented, or borrowed those materials from the person engaged in the business." Mich. Comp. Laws § 445.1712 (emphasis added). Unlike the ROP Laws, the PPPA is designed to protect privacy harms, which the Complaint does not allege.[3] This argument should be rejected for the additional reason that courts should ignore new allegations and legal theories asserted for the first time in an opposition. *See A.L. ex rel. Limkemann v. Jake's Fireworks, Inc.*, 456 F. Supp. 3d 1074, 1081 (S.D. Iowa 2020) ("Plaintiffs cannot expand their claims in their resistance based on facts and a theory of liability they fail to plead in their complaint.").

Plaintiffs also fail to address that the bare statutory violation itself—Plaintiffs' only alleged injury—rests exclusively on a sequence of speculative inferences with no factual support. Even the inference that Meredith sold mailing lists containing Plaintiffs' names rests on the faulty syllogism that, because each Plaintiff allegedly subscribed to a Meredith magazine, and because Meredith is alleged to sell lists containing subscriber names, Meredith *must* have put each Plaintiff's name on a list, and a direct mail marketer *must* have purchased those lists. *See, e.g.*, Opp'n at 1, 3, 6; Mot. at 9. Plaintiffs have alleged no factual basis for the Court to draw these inferences. Nor do they explain why it would be reasonable to infer that "malevolent actors" will "target" Plaintiffs. *See* Mot. at 9 (citing *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410 (2013)).

Plaintiffs' attempt to distinguish *Verde v. Confi-Chek, Inc.*, No. 21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021), is unavailing. While Plaintiffs suggest that *Verde* is

---

[3] The distinction between the ROP Laws and the PPPA is stark, and had the legislatures of California, Ohio, Puerto Rico, South Dakota, or Washington wanted to enact a similar law, they certainly could have done so. Plaintiffs' attempt to stretch the ROP Laws to cover conduct they were never intended to cover is a misguided attempt to override the legislative process by judicial fiat.

distinguishable because "plaintiff did not plead that . . . her information [was] disclosed to a third party," Opp'n at 10, the same is true here. As in *Verde*, Plaintiffs do not allege that a specific third party purchased or even saw a list bearing their names. Mot. at 8–9; *Verde*, 2021 WL 4264674, at *3. *See also Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893, at *4 (N.D. Cal. June 15, 2021) (rejecting plaintiffs' analogy to traditional "right of privacy" injuries because "the rights protected by § 3344 are not analogous to [those] fundamental and historical privacy rights [and] 'Article III standing requires a concrete injury even in the context of a statutory violation'") (quoting *Spokeo*, 578 U.S. at 341)).

Plaintiffs do not allege a concrete, non-speculative injury, much less one that could be fairly described as traditionally recognized. The Court should dismiss the case for lack of standing.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE RIGHT-OF-PUBLICITY LAWS

Plaintiffs' claims also fail on the merits as a matter of law. Their interpretation of the ROP Laws is contrary to case law, the plain statutory language, and legislative intent. Plaintiffs also fail to overcome Meredith's incidental use and First Amendment defenses. Each of these defects warrants dismissal.

### A.   Plaintiffs' Construction of the ROP Laws' Commercial Use Terms is Contrary to Case Law and the Plain Meaning of the Statutory Text

Plaintiffs urge the Court to ignore decades of precedent holding that the private sale of subscriber lists does not violate the right of publicity on the grounds that those cases did not consider what the Plaintiffs call the "on or in" prong of the ROP Laws. Opp'n at 11–12. The problem with this argument is that no matter what "prong" Plaintiffs seek to rely on, the ROP Laws *all* uniformly require that the plaintiff's identity be used on or in, or in connection with, a separate product. *See* Mot. at 10–13, 15–20. Tellingly, Plaintiffs cite no authority holding that

the ROP Laws (or any statutory or common-law right of publicity) prohibits the private sale of subscriber lists, i.e., the identities themselves. Mot. at 11–13.

All the "on or in" cases cited by Plaintiffs support the separate product requirement. For example, *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 21 P.3d 797, 801 (Cal. 2001), involved the sale of lithographs and t-shirts depicting defendant's charcoal drawings of the Three Stooges. *Id.* at 800. While the California Supreme Court noted that § 3344's advertising prong and "on or in" prong is "not synonymous," *id.* at 802, the court still conducted the separate product analysis for the "on or in" prong, as it was required to do. *See id.* (stating that defendant "sold more than just the incorporeal likeness of The Three Stooges" by selling lithographs and t-shirts, which are "tangible personal property"). Far from endorsing Plaintiffs' theory that the separate product requirement does not apply to the "on or in" prong, the *Comedy III* court applied this requirement in reaching its decision. Similarly, Plaintiffs spend an entire page seeking to evade the holding of *Brooks v. Thomson Reuters Corp.*, which construed the word "product" in § 3344 to mean "separate product" and held that the plaintiffs failed to state a claim where they alleged "the product *is* their name, likeness, and personal information." No. 21-CV-01418-EMC, 2021 WL 3621837, at *5 (N.D. Cal. Aug. 16, 2021) (emphasis in original) (cited in Opp'n at 20–21).

*Bosley v. Wildwett.com*, 310 F. Supp. 2d 914 (N.D. Ohio 2004), is on all fours with *Comedy III,* as it involved the use of an identity—images of the plaintiff and her recorded performance in a wet t-shirt contest—to sell separate products: videos and a "members only" website subscription service. *Id.* at 922. The *Bosley* court clearly explained its separate product analysis: "Defendants are using the images of [the plaintiff] to directly promote the sale of *videos*

*and memberships.*" *Id.* (emphasis added).[4] The other cases Plaintiffs rely on, including those brought under the so-called "on or in" prong, all involved drawing attention to some *other* product. *See* Mot. at 15–20.[5]

Plaintiffs' reliance on *In re Clearview AI, Inc., Consumer Privacy Litigation*, No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022) ("*Clearview II*"), merely confirms the failure of their claims. *See* Opp'n at 12–13, 15. Like the preceding cases, *Clearview II* reinforces the "separate product" requirement in § 3344 and in each of the ROP Laws. In *Clearview II*, plaintiffs alleged that defendants had "covertly scraped over three billion photographs of facial images from the internet and then used artificial intelligence algorithms to scan the face geometry of each individual depicted," from which defendants then "harvested" unique biometric identifiers. *Id.* at *1, 3. Clearview allegedly included the biometric identifiers within a *separate* subscription service so customers could upload an image to identify the person depicted. *Id.* at *3. The *Clearview II* court allowed a § 3344 claim to proceed based on these specific allegations, where the "product" clearly was not the identities themselves; it was Clearview's proprietary matching application—a separate product. *See id.* at *10–11; *Brooks*, 2021 WL 3621837, at *5 (dismissing § 3344 claim for failure to meet the separate product requirement).

Fundamental principles of statutory construction support the conclusion that the ROP

---

[4] The *Bosley* court also held that the "use of images of [the plaintiff] in the 'Spring Break 2003' video and the 'members only portion' of SexBrat.com constitute direct promotion of Defendants' *products or services.*" *Id*. at 922.

[5] *See, e.g.*, *Callahan v. PeopleConnect, Inc.,* No. 20-CV-09203-EMC, 2021 WL 5050079, at *16 (N.D. Cal. Nov. 1, 2021) (observing that "all § 3344 claims seem to involve an advertising element (*i.e.*, promotional aspect)" and holding that allegations of use of plaintiffs' names and likenesses to advertise yearbooks and website subscriptions stated a claim).

Laws are publicity statutes that prohibit the non-consensual use of identities or likenesses to publicize *separate* products or services, which names on subscriber lists are not. This interpretation is consistent with the history of the right of publicity, *see* Mot. at 10–13 (explaining how the tort evolved to prevent use of a non-consenting person's likeness to draw attention to other products), and the plain meaning of the prepositions "on" and "in," which express the relationship of one thing *to something else*, as for example "the man on the bus" or "the cat in the house."[6] The phrase "in connection with," as used in the Ohio, Puerto Rico, and South Dakota statutes, expresses the same concept and is defined as "linked or associated with *something else*."[7] *See* Ohio Rev. Code § 2741.01; P.R. Laws Ann. tit. 32, § 3151; S.D. Codified Laws § 21-64-1. These simple definitions explain why courts have not found an ROP violation unless the identity is used "on or in" or "in connection with" a separate product.

> **B.      Plaintiffs Fail to Explain Why the Court Should Disregard Decades of Mailing List Cases Dismissing Analogous Claims**

Plaintiffs fail to meaningfully distinguish *Huston* and *Avrahami*, which hold that the private sale of subscriber lists does not violate the right of publicity. *See* Opp'n at 14–18 (discussing *Huston v. Hearst Commc'ns, Inc.,* No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb 7, 2022), and *U.S. News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996)). While Plaintiffs contend that the Illinois Right of Publicity Act ("IRPA") construed in *Huston* "has no bearing here," the IRPA is not materially distinguishable from the ROP Laws, and *Huston* involved nearly identical allegations crafted by the same counsel who brought this case. *See* Opp'n at 15–17, 41. In *Huston*, as here, the plaintiff argued

---

[6] "*In*," prep., Lexico.com, https://www.lexico.com/en/definition/in (last visited May 11, 2022); "*On*," prep., Lexico.com, https://www.lexico.com/en/definition/on (last visited May 11, 2022).
[7] "*Connection*," n., Lexico.com, https://www.lexico.com/en/definition/connection (last visited May 11, 2022).

that the private sale of mailing lists violated the first "prong" of the statute, which covers "the public use or holding out of an individual's identity . . . on or in connection with the offering for sale or sale of a product, merchandise, goods, or services[.]" *Huston*, 2022 WL 385176, at *2.[8] The *Huston* court soundly rejected this argument and held that making "mailing lists of its subscribers available for others to purchase" did not state a claim under the IRPA because the identities were not used to promote a separate product and were part of the product offered for sale. *Id.* at *3. *See also Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) (using plaintiffs' identity as the product itself does not violate IRPA). The same conclusion is dictated here.

And while Plaintiffs make much of the IRPA's inclusion of the supposedly limiting words "on or in connection with the *offering for sale or sale of* a product," Opp'n at 14, they do not explain how the phrase "offering for sale or sale of" changes the meaning of the IRPA compared to the ROP Laws, which contain the same language: "on or in products" or "on or in connection with [a] product."[9] *See* Cal. Civ. Code § 3344(a); Ohio Rev. Code § 2741.01(B)(1);

---

[8] Far from "fail[ing] to appreciate" the IRPA's prohibition on "use of a name in connection with the 'sale' of a product," as Plaintiffs argue, Opp'n at 16, the *Huston* court unambiguously considered and rejected a mailing list claim based on Plaintiffs' same legal theory grounded "entirely" on the IRPA's "first 'commercial purpose' prong, which specifically concerns public use or holding out of an individual's name 'on or in connection with the offering for sale or sale of a product . . . .'" 2022 WL 385176, at *3  (citation omitted).

[9] Plaintiffs' attempt to construe the IRPA as limiting the statutory prohibition to the context of sales or offers for sale is simply wrong as a matter of statutory construction. The IRPA defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on *or* in connection with the offering for sale or sale of a product, merchandise, goods, or services . . . ." 765 Ill. Comp. Stat. 1075/5 (emphasis added). The only way to read "or" without rendering 1075/5 nonsensical is as referring disjunctively to two separate things: the public use or holding out of an individual's identity (1) "on . . . a product, merchandise, goods, or services"; *or* (2) "in connection with the offering for sale or sale of a product, merchandise, goods, or services." *Id.* There is no such thing as "on . . . the offering for sale or sale of a product . . . ."

P.R. Laws Ann. tit. 32 § 3151(h); S.D. Codified Laws § 21-64-1(1); Wash. Rev. Code § 63.60.050. Considering that a "product" is "an article or substance that is manufactured or refined for *sale*," the IRPA's reference to "sale" does not result in any meaningful distinction between it and the ROP Laws.[10] [11]

Nor can Plaintiffs overcome *Avrahami*, yet another case that dismissed a right-of-publicity claim premised on the sale of mailing lists. 1996 WL 1065557, at *1. Contrary to Plaintiffs' contention, the Virginia statute in *Avrahami* sweeps at least as broadly as the ROP Laws and prohibits using an identity "for advertising purposes or for the purposes of trade," i.e., for a commercial purpose. Va. Code Ann. § 8.01-40. *See* Opp'n at 17–18. Though Plaintiffs misleadingly cherry-pick from *Avrahami* to argue that the court "conflate[d] the 'advertising' and 'purposes of trade' prongs of the statute as both covering advertising and nothing else," (Opp'n at 18), the decision does not bear this out. Far from "conflating," the *Avrahami* court diligently analyzed *both* prongs of the Virginia right-of-publicity statute and concluded that the private sale of mailing lists did not violate either of them. *Avrahami*, 1996 WL 1065557, at *6–7 ("The inclusion of a name as part of a larger mailing list for purposes of a direct mail solicitation does not constitute use of that name in the promotion of an actual product or service itself"). Consequently, the use of Avrahami's name on a mailing list did not "not invade any property right." *Id.* at *6. The same holds true here.

---

[10] "*Product*," n., Lexico.com, https://www.lexico.com/en/definition/product (last visited May 11, 2022)

[11] Plaintiffs admit that Puerto Rico's "commercial purpose" definition shares language with the IRPA and fail to distinguish the two statutes. Opp'n at 15–16.

**C.     The ROP Laws Must Be Construed in Light of the Common Law, Which Requires Public Use**

Without support, Plaintiffs urge the Court to ignore common law right-of-publicity cases requiring public use as "fundamentally inapposite" based on the misguided theory that the ROP Laws "sweep[] far more broadly." Opp'n at 18–19. These common law decisions directly bear on the meaning of the ROP Laws (which either explicitly or implicitly codify common law principles[12]) because each state at issue has a canon requiring that statutes be construed in harmony with common law unless there is a "clear statement" to the contrary. *See, e.g.*, *Shaw v. Railroad Co.*, 101 U.S. 557, 565 (1879) ("No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.").[13] Plaintiffs cite no authority to support their

---

[12] *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (construing § 3344 to share four of six elements with the California common law right of publicity) (citation omitted); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 929 n.15 (6th Cir. 2003) (observing that Ohio codified "the right of publicity" "in the provisions of Ohio Revised Code Chapter 2741"); P.R. Law No. 139-2011 (July 13, 2011) (codified at P.R. Laws Ann. tit. 32, § 3154), ECF No. 24-3 (Ex. A. at 4) ("explanatory statements" of S.B. 1750 discussing the scope of the right with reference to the "common law" "right of publicity as an independent right" and "case law in several states"); Hearing on South Dakota H.B. 1225 Before the House Judiciary Committee at 41:48–42:23, 90th Leg. Sess. (S.D. 2015), https://sdpb.sd.gov/sdpbpodcast/2015/hju23.mp3 (proponent referring to the common law of other states and explaining that South Dakota's "statute codifying [it] makes it more certain for the public as well as the people that deserve and have earned [its] protection"); *Revolutionar, Inc. v. Gravity Jack, Inc.*, 13 Wash. App. 2d 1044 at *13 (2020) (observing that Wash. Rev. Code § 63.60 *et seq.* "codified and modified common law principles").

[13] *See Leider v. Lewis*, 394 P.3d 1055, 1064 (Cal. 2017) ("We do not presume [the legislature] meant to overthrow long-established principles of law, unless such an intention is clearly expressed or necessarily implied.") (citation omitted); *State v. Vorys*, 56 Ohio St. 2d 107, 112 n.3 (1978) ("It is not to be presumed that the General Assembly intended to modify a common law rule further or otherwise than the act expressly declares, or clearly and unmistakenly imports.") (citation omitted); *Johnson v. Rapid City Softball Ass'n*, 514 N.W.2d 693, 696 (S.D. 1994) (employing the canon to interpret S.D. Codified Laws §§ 20-9-12 and 20-9-13, which "limit common law tort liability" for outdoor recreational activities—"we refuse to expand the list absent clear legislative intent that the list was intended to include summer sports and softball"); *In re Parentage of L.B.*, 122 P.3d 161, 170 n.11 (Wash. 2005) ("[I]t must not be presumed that

argument that even though the sale of mailing lists would be *permitted* under the common law (as every decision holds), it somehow would be *prohibited* under the ROP Laws (as no decision holds). *See* Opp'n at 19–20; Mot. at 18–19. Nor do Plaintiffs point to any indication that the legislatures of California, Ohio, Puerto Rico, South Dakota, or Washington intended to write out the well-understood public use requirement inherent in the common law right of publicity. Opp'n at 19–20.

Consistent with the common law, the ROP Laws require publicity, plain and simple. *See* Mot. at 20–23. That is why Plaintiffs cannot cite a single right-of-publicity case that survived a motion to dismiss where no person, not even the plaintiff, observed the identity's commercial use. *See, e.g.*, *Brooks*, 2021 WL 3621837, at *2 (dismissing § 3344 claim where plaintiffs alleged that dossiers containing their information were only sent to a limited number of subscribers); *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534, 551–52 (D.S.C. 2020) (while "publicity is not explicitly stated as an element per se, it is still a fundamental requirement of the cause of action of wrongful appropriation of personality").[14]

Plaintiffs' argument that the ROP Laws do not require public use because a few of the

---

the legislature intended to make any innovation on the common law without clearly manifesting such intent.") (citing *Green Mountain Sch. Dist. No. 103 v. Durkee*, 351 P.2d 525 (Wash. 1960)); *see also People v. Escambrón Beach Club*, 63 P.R. Dec. 761 (1944) (construing Puerto Rico public nuisance statutes "passed in this jurisdiction in response to . . . common law influences" after "examin[ing] briefly the history and development of the law of common nuisances").

[14] To avoid this deficiency, Plaintiffs ask the Court to rely on *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017), a case involving a *pro se* plaintiff, for the proposition that Plaintiffs are entitled to "'the benefit of imagination" on the publicity element "so long as the hypotheses are consistent with the complaint.'" Opp'n at 25. This "benefit of imagination" pleading standard does not exist for plaintiffs represented by counsel (or in the Eighth Circuit), and rightly so, as it flies in the face of *Twombly* and *Iqbal*'s requirement that "a complaint [does not] suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 544, 557 (2007)).

statutes do not contain the word "public" is specious. As Plaintiffs acknowledge, the Ohio and

South Dakota statutes define the term "Right of Publicity" and Puerto Rico's ROP Law

specifically references "publication." Opp'n at 21–22. Without a clear statement that the

legislatures intended to omit the "public" requirement from the "right of publicity," it must be

presumed that "legislative silence" on the element means it "was so inherent in the idea of the

offense that it required no statutory affirmation." *See State v. Tolliver*, 19 N.E. 3d 870, 873 (Ohio

2014) (discussing, for example, courts' willingness to recognize the *mens rea* requirement of

criminal statutes despite no express statutory *mens rea* element) (citation omitted).

Plaintiffs cite a single inapposite case in support of their argument that Ohio's ROP Law

expands liability beyond the common law by purportedly dispensing with the publicity element:

*Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021). However, *Knapke*

actually involved a public use of the plaintiff's name and photo to advertise the defendant's

products and services. *Id.* at 872 ("Knapke alleges she 'discovered that Classmates uses her name

and photo on the Classmates website to advertise and/or actually sell Defendant's products and

services.'"). *Knapke* did not hold that Ohio's ROP Law requires no publicity; the case simply

stated that the plaintiff need not to allege that *another* member of the public (besides the

plaintiff) had seen "the offending image." *Id.* at 876. The *Knapke* court also confused the

commercial misappropriation branch of the common law right to privacy with the false light

branch, as evidenced by the court's statement that "Classmates fails to explain why this element

from common law *false light* claims should be imputed into the Right of Publicity Law." *Id.*

(emphasis added). Finally, *Knapke* failed to consider Ohio's clear statement rule when

interpreting the statute. This Court need not reach the same incorrect result.

Because Plaintiffs do not allege a public use of their identities, their claims must be

dismissed.[15]

### D.     Plaintiffs Lack Statutory Standing

On statutory standing, Plaintiffs attempt to divert the inquiry to whether they have

experienced *an injury*. Opp'n at 25–30. As demonstrated above, Plaintiffs have not suffered a

cognizable Article III injury, but the presence of injury *vel non* is not the proper inquiry for

statutory standing in any event. The question is whether Plaintiffs assert the *type of interest* the

legislature intended to protect against injury. Mot. at 24–29. They have not. The ROP Laws

protect economic incentives to promote productive use and are designed to compensate for

misappropriation of the value of a person's identity. Plaintiffs do not allege either type of harm.

*See id.* at 24–29.

Plaintiffs concede that, to have statutory standing, their interests must fall "within the

zone of interests protected by the law," and the Court must consider "the purposes implicit in the

statute" to determine whether Plaintiffs' interests fall within that zone. *See Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 572 U.S. 118, 129–30 (2014); Opp'n at 26 (citing same).

Plaintiffs incorrectly insist, however, that the Court should look *only* to the text of the ROP Laws

to determine that interest. Opp'n at 26. It is well-established that courts should also consider the

statutes' legislative histories and common-law forebears. *Goodman v. Lozano*, 223 P.3d 77, 80

(Cal. 2010) (Statutory text alone "does not prohibit a court from determining whether the literal

meaning of a statute comports with its purpose or whether such a construction of one provision is

consistent with other provisions of the statute. To determine the most reasonable interpretation of

---

[15] While Plaintiffs are entitled to "reasonable inference[s]" based on the "plead[ed] factual content," *Iqbal*, 556 U.S. at 678, a plaintiff's "failure to plead the essential elements of a claim is a fatal deficiency warranting dismissal of the claim." *Gatlin ex Rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004); *see Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief *above* the speculative level") (emphasis added).

a statute, we look to its legislative history and background.") (citations and quotation marks omitted); *see also* Section I above.

The first case Plaintiffs cite on statutory standing is *Coulter-Owens v. Time Inc.*, 695 F. App'x at 121, which involved the PPPA, a privacy statute that protects a fundamentally different interest than the ROP Laws: the "*privacy* in one's reading materials." *Id.* (emphasis added); Opp'n at 26. As discussed above, Plaintiffs do not allege a privacy violation, and the ROP Laws are not designed to protect privacy. *See* Mot. at 25–26; *see, e.g.*, *Brooks*, 2021 WL 3621837, at *5. They are designed to protect economic incentives and the right to receive the fruits of one's labor, regardless of fame. *See* Mot. at 12–13, 25–29; *see also C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.,* 505 F.3d 818 (8th Cir. 2007) ("*CBC*") (recognizing that the right of publicity was "intended to promote only economic interests and that noneconomic interests are more directly served by so-called rights of privacy"). The only interest Plaintiffs allege here is the purported right to exclude their names from directories containing hundreds of thousands of other names, and the only injury they allege is the denial of their ability to exercise this bare right. None of the cases Plaintiffs cite supports the proposition that the ROP Laws are designed to protect this interest.

Plaintiffs' reliance on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806, 809 (N.D. Cal. 2011)—which involved a traditional right-of-publicity injury from ads that falsely conveyed the plaintiffs' personal endorsement of Facebook's advertisers, products, and services—is unavailing. In *Fraley*, the plaintiffs alleged they "were economically injured when denied compensation" for the use of their identities in Sponsored Stories ads. *Id.* at 797, 806. This sort of injury *is* within the zone of interests § 3344 was designed to protect. The alleged injury here—

17

excluding truthful information—is not, and *Fraley* does not hold otherwise.[16]

*Martinez v. ZoomInfo Technologies, Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *3–4 (W.D. Wash. Apr. 11, 2022), is on the same footing as *Fraley*. There, the plaintiff pleaded a traditional right-of-publicity claim alleging that the defendant used her name, photo, and likeness without her consent to advertise subscriptions to its paid service. The court did not analyze statutory standing at all, and instead focused on Article III standing, a separate inquiry. *Id.* at *3–4; *see Tovar v. Essentia Health*, 857 F.3d 771, 778 (8th Cir. 2017). Even so, the *Martinez* plaintiff alleged she was denied economic value from the non-consensual use of her name and likeness to advertise the defendant's products, a theory of liability and injury comfortably within the zone of interests the ROP Laws were designed to protect. *Martinez*, 2022 WL 1078630, at *4. The same is true for *Sessa v. Ancestry.com Operations Inc.*, which also concerned Article III standing and where plaintiffs explicitly alleged (unlike here) that the defendant "has harmed and continues to harm Plaintiffs and the class by denying them the economic value of their likenesses." Compl. ¶ 14, *Sessa*, No. 2:20-CV-02292, 2021 WL 4245359, at *6 (D. Nev. Sept. 16, 2021).

In sum, none of the cases on which Plaintiffs rely to assert statutory standing demonstrate that the ROP Laws were designed to protect the barely discernable interests alleged here.[17]

---

[16] *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974), was a common law right of publicity case and therefore did not touch on statutory standing. The case involved a famous race car driver whose likeness and uniquely designed car were used without his consent to advertise cigarettes. *Id.* at 825–27 & n.11. The court recognized that the injury the plaintiff alleged—misappropriation of the commercial value of his identity—was protected. The footnote in the decision cited by Plaintiffs was *dicta*. Opp'n at 29 (citing 498 F.2d at 824 n.11).

[17] *Del Amo v. Baccash* involved a traditional right-of-publicity injury from unauthorized use of models' photos to advertise a business; the case did not discuss which interest § 3344 protects and instead analyzed proof of actual damages at trial. CV 07-663-PSG, 2008 WL 4414514, at *1 (C.D. Cal. Sept. 16, 2008). The case is inapposite. *Canessa v. J. I. Kislak, Inc.*, 235 A.2d 62, 75 (N.J. Super. Ct. Law. Div. 1967), involved non-celebrities whose likenesses were used in

### E.   Any Alleged Use of Plaintiffs' Names Was a Non-Actionable Incidental Use

Plaintiffs "common sense" argument that the incidental use rule should not apply at the pleadings stage ignores the many decisions dismissing ROP claims where, as here, the defense is clear from the face of the complaint. *See* Mot. at 29–33 (citing *Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994) (dismissing on the pleadings under the incidental use defense). *See also C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) ("If an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)."); *Stayart v. Google Inc.*, 710 F.3d 719, 723 (7th Cir. 2013) (applying incidental use defense as an independent ground to dismiss a misappropriation of likeness claim at the pleading stage) (cited in Opp'n at 31).

Instead of engaging with the *Aligo* factors, pertinent caselaw, and the text of the ROP Laws, Plaintiffs resort to the blunderbuss argument that the incidental use rule cannot apply on the pleadings. *See* Opp'n at 33–34. But each case Plaintiffs cite either: (1) involved allegations that, on their face, weighed against the defense due to the value of the identity or prominence of the alleged use;[18] or (2) is procedurally distinguishable with no bearing on the defense at this

---

advertising. *Davis v. Facebook, Inc. (In re Facebook, Inc. Internet Tracking Litig.)*, 956 F.3d 589, 597 (9th Cir. 2020), was not a right-of-publicity case and is irrelevant to the statutory standing question.

[18] *See Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 986 (S.D. Cal. 2020) (allegations defendant "intentionally included images of [Michael] Jordan into the background of its cards to take advantage of Jordan's enormous brand value and as a result, the cards drive[] product sales . . . and bestow[] on [defendant] the goodwill associated with the most famous athlete on the planet"); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 75 (S.D.N.Y. 1988) (allegations a product "mislabeling was deliberately undertaken as part of defendant's scheme to exploit commercially plaintiffs' goodwill and reputation and to pass off defendant's 'Backtrack' as plaintiffs' program"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1226–34,

stage.[19] Alternatively, Plaintiffs urge the Court to consider the importance of the *aggregate* of all names on the mailing lists. Opp'n at 31–33. This approach would swallow the incidental use defense, which fundamentally requires the court to compare the *individual* use complained of to the work as a whole. *See* Mot. at 30–31 (citing *Aligo*, 1994 WL 715605, at *3; *Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio Ct. App. 1990); Wash. Rev. Code. §63.60.070(6); P.R. Laws Ann. tit. 32, §§ 3151(g), 3157(d). Plaintiffs simply cannot overcome the problem that any use of their individual names on a vast digital subscriber list is too "fleeting and inconsequential" to be actionable. *Aligo*, 1994 WL 715605, at *3–4.

## III.  THE FIRST AMENDMENT BARS PLAINTIFFS' PROPOSED APPLICATION OF THE ROP LAWS

Plaintiffs' expansive construction of the ROP Laws would violate the First Amendment no matter what level of scrutiny is applied. Plaintiffs also ignore the balancing test mandated by *CBC*, 505 F.3d at 818, and contend that Meredith's mailing lists are commercial speech, without explaining why. None of these arguments solves the fundamental issues that mailing lists are informational speech and that Plaintiffs' proposed expansion of the ROP Laws to cover mailing lists runs afoul of the First Amendment.

To start, Plaintiffs do not apply the correct First Amendment test for informational speech

---

1255 (N.D. Cal. 2014) (allegations that "LinkedIn's reminder emails," which included only one person's likeness, "serve as personalized endorsements for LinkedIn's services").

[19] In *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 (9th Cir. 2015), the incidental use defense was not raised in district court, and the court had no occasion to decide whether it applied on the pleadings. Similarly, *Zoll v. Jordache Enterprises Inc.*, No. 01 CIV. 1339 (CSH), 2003 WL 1964054, at *20 (S.D.N.Y. Apr. 24, 2003), concerned a motion for reconsideration of denial of summary judgment; it did not hold that the defense cannot apply on a motion to dismiss. In *Doe v. Darien Lake Theme Park & Camping Resort, Inc.*, 715 N.Y.S.2d 825, 826 (App. Div. 2000), the court applied New York procedural law to hold that the incidental use defense involved a question of fact in that particular case. The decision does not speak to whether a federal court may consider the affirmative defense on the face of the pleadings, which it clearly can. *See Lobrano*, 695 F.3d at 764.

in right-of-publicity actions. While they try to distinguish *CBC* on the theory that it involved

"entertainment," the case holds that "speech that entertains" deserves the *same* protection as

"speech that informs."[20] *Id.* at 823 (citation omitted); *see also* Opp'n at 37–38; Mot. at 33–36.

Next, Plaintiffs falsely characterize *CBC*'s First Amendment holding as being limited to "highly

compensated" public figures; the case is not so limited. *See* Opp'n at 38; *CBC*, 505 F.3d at 824

(holding that right of publicity is "meant to protect against the loss of financial gain, not mental

anguish,' and finding the right's protective economic incentives "barely, if at all, implicate[d]"

where plaintiffs did not show loss within the scope of the right) (citation omitted). Critically,

Plaintiffs fail to come to grips with *CBC's* conclusion that the "right of publicity is intended to

promote only economic interests and . . . noneconomic interests are more directly served by so-

called rights of privacy"—a crucial distinction where, as here, Plaintiffs allege no damage to

their economic interests. *Id.* at 824 (citation omitted). Nor do Plaintiffs grapple with *CBC*'s

holding that there is a First Amendment right to "use information that is available to everyone,"

i.e., names and observable facts about a person. *See id.* at 823.

Instead, Plaintiffs jump to the conclusion that Meredith's subscriber lists are "commercial

speech" without applying the test mandated by *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S.

60, 66–67 (1983), which plainly shows that subscriber lists are *not* commercial speech. *See*

Opp'n at 35-38. *Bolger* states that speech *may* be classified as "commercial" for First

Amendment purposes depending on: (1) whether it is an advertisement; (2) whether it refers to a

specific product or service; and (3) whether the speaker has an economic motivation for making

---

[20] Contrary to Plaintiffs' contention, Meredith does not take the position that strict scrutiny applies, nor does Meredith cite *Reed v. Town of Gilbert* for this proposition. Opp'n at 38. Meredith cites *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (which cites *Reed*) for the proposition that right-of-publicity laws are content based and that here, as in *Sarver*, application of the ROP Laws would not advance the property interests animating them. *See* Mot. at 33–35.

the statement. *Id.* "The presence of *all three* factors provides 'strong support' for the conclusion that the speech in question is commercial." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120 (8th Cir. 1999) (emphasis added); *see Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 959 (9th Cir. 2012) (applying *Bolger* to hold that "telephone listings" are "noncommercial speech").

None of the three *Bolger* factors even arguably supports Plaintiffs' position. *First*, Plaintiffs do not allege that subscriber lists are advertisements or propose a commercial transaction. "Expression . . . is not commercial speech if it does not advertise another *unrelated* product, and speech is not transformed into commercial speech merely because the product at issue is sold for profit." *C.B.C. Distribution & Mktg. v. Major League Baseball Advanced Media, L.P.*, 443 F. Supp. 2d 1077, 1094 (E.D. Mo. 2006) (emphasis added), *aff'd*, *CBC*, 505 F.3d at 827. *Second,* Plaintiffs do not allege that the mailing lists promote a specific product. And even if Plaintiffs had so alleged, this would not be enough as a matter of law to convert Meredith's lists into commercial speech. *See Bolger*, 463 U.S. at 66 ("reference to a specific product does not by itself render the pamphlets commercial speech"). *Third*, Meredith's economic motive in renting its lists is irrelevant because the lists are not "expression related solely to the economic interests of the speaker and its audience." Opp'n at 35 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,* 447 U.S. 557, 561 (1980)). Indeed, the First Amendment value of Meredith's mailing lists is broader than pecuniary gain. *See* Restatement 3d of Unfair Competition ("Rest. 3d") § 47 cmt. b (1995) ("[T]he informational content of the particular merchandise or its utility to purchasers as a means of expression may justify the conclusion that the use is protected under the [F]irst [A]mendment."); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 185 (1999) ("[E]ven if the broadcasters' interest in conveying these

messages is entirely pecuniary, the interests of, and benefit to, the audience may be broader.").[21]

     *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016), and cases

analyzing consumer credit reports, are inapposite to the First Amendment analysis for two

reasons. *See* Opp'n at 35–36. *First*, *Boelter* relied on three cases—*Trans Union Corp. v. FTC*,

267 F.3d 1138 (D.C. Cir. 2001), *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S.

749 (1985), and *King v. Gen. Info. Servs., Inc.*, 903 F. Supp. 2d 303 (E.D. Pa. 2012)—involving

consumer credit reports, which are subject to the Fair Credit Reporting Act ("FCRA"). *See*

*Boelter*, 192 F. Supp 3d at 446–49; *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 2 (2007)

(observing "Congress enacted FCRA . . . to ensure fair and accurate credit reporting, promote

efficiency in the banking system, and protect consumer privacy"). *Trans Union* and the other

FCRA cases establish that FRCA-regulated reports are subject to the commercial speech test, not

that all reports *concerning consumers* are "commercial speech."[22] *Second*, *Boelter* did not

consider the downstream First Amendment interest in the right to receive information or speech

---

[21] The First Amendment has long recognized the right to receive information as the necessary counterpart to the right to speak. *See Martin v. Struthers*, 319 U.S. 141, 146–48 (1943) ("Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved."); *Van Nuys Pub. Co. v. City of Thousand Oaks,* 5 Cal.3d 817, 821 (Cal. 1971) ("The right to speak freely must encompass inherently the right to communicate; it contemplates *effective* communication. This freedom of speech and press embraces the right to distribute literature, and necessarily protects the right to receive it.") (citation and quotation marks omitted); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (The "right to receive information and ideas, regardless of their social worth, is fundamental to our free society.") (citation omitted).

[22] *United Reporting Publishing Corp. v. California Highway Patrol*, 146 F.3d 1133 (9th Cir. 1998), was reversed on the issue of whether the speech was commercial because the Supreme Court held that a law regulating access to police arrest records did not regulate "speech" at all. *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999) ("California could decide not to give out arrestee information at all without violating the First Amendment.") (cited in Opp'n at 36–37).

as a means to further expression, as exists here. Rest. 3d § 47 cmt. b; *see Greater New Orleans*, 527 U.S. at 185.

Plaintiffs' commercial speech analysis also fails because it misidentifies the governmental interests behind the ROP Laws and fails to show they substantially advance the animating interests as applied. *See Missouri Broadcasters Ass'n v. Schmitt*, 946 F.3d 453, 459–61 (8th Cir. 2020). The governmental interests behind the ROP Laws are to protect economic incentives and prevent misappropriation of the value an individual creates in their identity. *See* Mot. at 12, 28, 34–36. These laws do not, as Plaintiffs contend, confer a "natural right[]" to exclude oneself from an informational list. *See* Mot. at 24–29, 34–36 & n.22; Opp'n at 38.

Nor do the ROP Laws directly advance any purported right to exclude oneself from informational subscription lists. To meet the direct advancement test, the law must actually advance the governmental interest, and there must be a "reasonable fit" between the interest and the resulting burden on speech. *City of Cincinnati v. Discovery Network*, 507 U.S. 410, 416 & n.12 (1993) (citations omitted).

Plaintiffs' overly expansive interpretation of the ROP Laws fails the "reasonable fit" test. First, Plaintiffs do not identify anything in the legislative history of the ROP Laws to suggest they were enacted to advance a governmental interest in preventing one's name from appearing on a subscriber list—and the absence of any analogous common-law protection strongly suggests there was no such interest. Second, even assuming the ROP Laws could be interpreted to cover such an interest, there is no "reasonable fit" between this interest and the resulting burden on speech. The ROP Laws exempt all uses of identifying information *except* "commercial" uses and

contain many exceptions for certain favored commercial contexts.[23] These exceptions contradict

Plaintiffs' argument that the ROP Laws advance a "natural right[]" to exclude oneself from a

subscriber list or a "right to control" the use of an identity in such a list. *See* Opp'n at 38, 39;

*City of Cincinnati*, 507 U.S. at 428 (ordinance banning "commercial" news racks but allowing

"noncommercial" ones did not reasonably fit with city's interests in reducing "safety concerns

and visual blight" when all news racks equally contributed to the problems); *Missouri*

*Broadcasters,* 946 F.3d at 461 (statute regulating advertising was 'so pierced by exemptions and

inconsistencies' that they render the Statute as applied irrational and ineffective" and could not

directly advance government's interests) (quoting *Greater New Orleans*, 527 U.S. at 190

(overturning on "reasonable fit" grounds federal regulations of casino advertising containing

speaker- and content-based exceptions that undermined advancement of purported governmental

interests)).

    *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 557–58 (2011) (cited in Opp'n at 34–35), shows

why, under the commercial speech inquiry, the ROP Laws cannot bear the weight Plaintiffs seek

---

[23] Besides applying only to "commercial" uses of an identity, each ROP Law contains a host of exceptions based on a commercial communication's contents. These exceptions concern matters such as **sports reporting** (Cal. Civ. Code § 3344(d); Ohio Rev. Code § 2741.02(D)(1); P.R. Laws Ann. tit. 32, § 3157(a); Wash. Rev. Code § 63.60.070(2)(b)); **literature, film, and music** (Ohio Rev. Code § 2741.09(A)(1)(a); S.D. Codified Laws § 21-64-6(1); Wash. Rev. Code § 63.60.070(2)(b)); **radio, television, and other audio-visual programs** (*id.*; P.R. Laws Ann. tit. 32, § 3157(a)); **fine art** (Ohio Rev. Code § 2741.09(A)(1)(c); S.D. Codified Laws § 21-64-6(3); Wash. Rev. Code § 63.60.070(2)(a)); **news and public affairs** (Cal. Civ. Code § 3344(d); Ohio Rev. Code § 2741.02(D)(1); P.R. Laws Ann. tit. 32, § 3157(a); Wash. Rev. Code § 63.60.070(2)(b)); **political campaigns** (Cal. Civ. Code § 3344(d); Ohio Rev. Code § 2741.02(D)(1); Wash. Rev. Code § 63.60.070(2)(b)); **parody or satire** (P.R. Laws Ann. tit. 32, § 3157(b); Wash. Rev. Code § 63.60.070(1)); **academia and research** (P.R. Laws Ann. tit. 32, § 3157(c)); **advertising for a permitted use** (Ohio Rev. Code § 2741.09(A)(1)(d); S.D. Codified Laws § 21-64-6(4)–(5); Wash. Rev. Code § 63.60.070(2)(d)). California, Ohio, and Washington also have explicit speaker-based exceptions for some media distributors and owners. *See* Cal. Civ. Code § 3344(f); Ohio Rev. Code § 2741.02(E); Wash. Rev. Code § 63.60.070(4). Ohio offers higher education institutions their own exception. *See* Ohio Rev. Code § 2741.09(A)(5).

to place on them. In *Sorrell*, the Supreme Court struck down a Vermont law similar to the ROP Laws that restricted the "sale, disclosure, and use" of "prescriber-identifying information" (i.e., lists of doctors and which drugs they prescribed) for marketing purposes without the prescriber's consent. *Id.* at 558. At the same time, the statute exempted the use of such information for research, educational communications, patient care, law enforcement, and insurance purposes. *Id.* at 573. Pharmacies and other providers allegedly sold this information "to 'data miners,' firms that analyze prescriber-identifying information and produce reports on prescriber behavior," which in turn "lease[d] these reports to pharmaceutical manufacturers" who "use[d] the reports to refine their marketing tactics and increase sales." *Id* at 558. The pharmaceutical companies and so-called data miners challenged the law on First Amendment grounds. *Id.* at 564–66. The Court held that the sale of prescriber-identifying information was "protected expression . . . justify[ing] application of heightened scrutiny," "even assuming . . . that prescriber-identifying information is a mere commodity." *Id.* at 571. The Court also found that the law, despite purportedly protecting "medical privacy" and "physician confidentiality," was structured to make "prescriber-identifying information available to an almost limitless audience," and its burden on speech was not proportional to the privacy interests it sought to advance. *Id.* at 572–74.

The same reasoning applies here. The ROP Laws, as Plaintiffs seek to expand them, fail the "reasonable fit" test because they would exempt all non-commercial lists as well as a host of favored commercial lists, excluding too many uses to directly advance the claimed interests.[24]

---

[24] *Boelter* does not speak to whether the ROP Laws directly advance the governmental interest here, as the governmental interest in *Boelter*, which involved a privacy statute, was "protection of consumer privacy" and had nothing to do with advancing the property right of publicity. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 447 (S.D.N.Y. 2016).

Plaintiffs also fail the "reasonable fit" test because they fail to show that their interests are "proportional to the resulting burdens" the ROP Laws place on speech. *See id.* at 572. Plaintiffs' proposed interpretation would effectively ban the exchange of truthful information, foreclosing businesses from disseminating or receiving it—all in service to some newly minted "right" not to appear on a line in a mile-long list of magazine subscribers. *See, e.g.*, Rest. 3d § 47 cmt. b. The First Amendment should not give way to such insubstantial or imagined concerns.

## CONCLUSION

For the reasons stated above, the Court should dismiss the case with prejudice: (1) for lack of subject-matter jurisdiction under Rule 12(b)(1); (2) for failure to state a claim under Rule 12(b)(6); and (3) because Plaintiffs' claims are barred by the incidental use doctrine and the First Amendment, as applied. The Court should also award Meredith attorney's fees, costs, and expenses under Cal. Civ. Code § 3344(a), Ohio Rev. Code § 2741.07(D)(1), and Wash. Rev. Code § 63.60.060(5).


Dated: May 16, 2022                    Respectfully submitted,

                                       **COOLEY LLP**

                                       By: */s/ Tiana A. Demas*
                                       Tiana A. Demas (*pro hac vice*)
                                       110 N. Wacker Drive, Suite 4200
                                       Chicago, IL 60606
                                       Tel: (312) 881-6500
                                       tdemas@cooley.com

David E. Mills (*pro hac vice)*
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 842-7800
dmills@cooley.com

Joseph D. Mornin (*pro hac vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: (415) 693-2000
jmornin@cooley.com

**BELIN MCCORMICK, P.C.**

David L. Charles (Bar No. AT0001440)
666 Walnut Street
Suite 2000
Des Moines, IA 50309
Tel: (515) 243-7100
dlcharles@belinmccormick.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2022, I caused a true and correct copy of the foregoing **Reply Memorandum in Support of Defendant Meredith Corporation's Motion to Dismiss the Consolidated Class Action Complaint** to be filed through the Court's CM/ECF System and served the below Counsel of Record via electronic mail:

| | |
|---|---|
| J. Barton Goplerud<br>goplerud@sagwlaw.com<br>Gary W. Kendall<br>kendell@sagwlaw.com<br>SHINDLER, ANDERSON, GOPLERUD &<br>WEESE P.C.<br>5015 Grand Ridge Drive<br>Suite 100<br>West Des Moines, IA 50265<br><br>Frank S. Hedin<br>fhedin@hedinhall.com<br>Arun G. Ravindran<br>aravindran@hedinhall.com<br>HEDIN HALL LLP<br>1395 Brickell Avenue, Suite 1140<br>Miami, Florida 33131 | Michael W. Ovca<br>movca@edelson.com<br>EDELSON PC<br>350 N. LaSalle St.<br>Suite 1400<br>Chicago, IL 60654<br><br>Philip L. Fraietta<br>pfraietta@bursor.com<br>BURSOR & FISHER, P.A.<br>888 7th Avenue, 3rd Floor<br>New York, NY 10019<br><br>Carey Alexander<br>calexander@scott-scott.com<br>Joseph P. Guglielmo<br>jguglielmo@scott-scott.com<br>Sean Masson<br>smasson@scott-scott.com<br>SCOTT & SCOTT ATTORNEYS AT LAW<br>LLP<br>The Hemsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br><br>Erin Green Comite<br>ecomite@scott-scott.com<br>SCOTT + SCOTT ATTORNEYS AT LAW<br>LLP<br>156 S. Main Street<br>P.O. Box 192<br>Colchester, CT 06415 |

*/s/ Tiana A. Demas*
Tiana A. Demas